UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **VICTOR T. CONTE,** | : |
| **Plaintiff,** | : |
| **v.** | : |
| | : |
| **US ALLIANCE FEDERAL CREDIT UNION,** | : |
| **AFFINA BROKERAGE SERVICES, INC.,** | : |
| **ROBERT AMBROSE, and JOHN WALSH,** | : |
| **Defendants.** | : |

**Civil Action No.
3:01 CV 463 (EBB)**

**April 7, 2004**

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION IN LIMINE

This Memorandum of Law is respectfully submitted in support of Plaintiff

Victor Conte's Motion in Limine seeking the following relief:

(a)    An order prohibiting Defendant US Alliance Federal Credit Union

(referred to herein as "Defendant" and/or "US Alliance") from, in the presence of

the jury (i) offering or soliciting any evidence or testimony from the incomplete

tape recordings it produced during discovery to Plaintiff Victor Conte (referred to

herein as "Plaintiff" and/or "Conte"); and (ii) using in any manner at trial the

incomplete tape recordings it produced to Plaintiff during discovery;

(b)    In the alternative, in the event that US Alliance is permitted to use

such tape recordings at trial, that the jury be given an adverse inference

instruction as follows:  (i) that US Alliance failed to safeguard, and destroyed /

permitted to be destroyed, tape recordings of conversations between Conte and

various US Alliance representatives; (ii) that the jury may thus conclude that US

Alliance's destruction of the tape recordings was in bad faith, or at a minimum

was grossly negligent; and (iii) that US Alliance destroyed those recordings because an examination of the destroyed recordings would have revealed evidence that is unfavorable to US Alliance and favorable to Plaintiff.

## FACTUAL STATEMENT

The facts at issue are set forth in detail in the Affirmation of Elisabeth Seieroe Maurer, Esq. dated April 7, 2004 ("Maurer Aff.") accompanying this memorandum, the contents of which are incorporated herein by reference.

In summary, this motion seeks relief from the extreme prejudice caused to Conte by US Alliance's wrongful spoliation of tape recordings crucial to this case, which were created by US Alliance. The tape recordings that US Alliance destroyed, lost and/or otherwise caused to be unavailable, contain records of conversations between Conte and US Alliance representatives during all of 1998, which is a time period crucial to this case because it is the year during which the wrongdoing at issue occurred.[1] Moreover, this motion seeks to prevent US Alliance from using for any purpose at trial the tape recordings it produced during discovery of certain conversations between Conte and US Alliance representatives, on the grounds that US Alliance cannot establish those recordings' authenticity and accuracy, and on the grounds that US Alliance engaged in wrongful spoliation of tape recorded evidence despite being on notice

---

[1] This action concerns wrongdoing committed by US Alliance in 1998 with respect to assets held by Conte in his credit union brokerage account. Conte maintained a brokerage account with US Alliance and its corporate predecessors, and actively used other financial services offered by US Alliance and its corporate predecessors, since he first joined IBM Credit Union, a corporate predecessor of US Alliance, as an IBM employee in 1970. (Maurer Aff., Exhibit "H" thereto, ¶¶3, 4, 5. )

2

since 1998 of its obligation to preserve such evidence. In the event that the Court permits US Alliance to use at trial the tape recordings it produced during discovery, Plaintiff requests in the alternative, that the Court give the jury an adverse inference instruction as a sanction for US Alliance's prejudicial spoliation of tape recorded evidence.

As set forth in further detail in the Maurer Aff. accompanying this memorandum, US Alliance maintained a system during all of 1998 that recorded all of US Alliance's incoming and outgoing phone calls. (Maurer Aff., ¶¶5 and 12.) Plaintiff first requested those recordings in September of 1998, at which time Plaintiff's counsel informed US Alliance in writing that Plaintiff's counsel had commenced an investigation into the activity that occurred in Conte's US Alliance account, and requested that US Alliance provide a number of documents including but not limited to all records of conversations between Conte and US Alliance. (Maurer Aff., ¶2.) During discovery herein, Plaintiff twice served discovery requests upon US Alliance that sought recordings of all conversations occurring between Conte and US Alliance representatives. More than two and one half years ago, on July 13, 2001, Plaintiff served US Alliance with his first discovery request, which sought, *inter alia*, recordings of all conversations between Conte and US Alliance. (Maurer Aff., ¶3.) Plaintiff again requested those recordings from US Alliance on October 23, 2002. (Maurer Aff., ¶12.) Both of those discovery requests instructed US Alliance to identify the custodian of such recordings, and in the event any such recording was destroyed or otherwise unavailable, to provide various information concerning, *inter alia,* the

3

unavailable recording's distributees, custodians and the identity of the persons who caused such loss, destruction and/or unavailability.  (Maurer Aff., ¶¶3 and 12.)

Despite the fact that Conte maintained regular, and often daily contact with US Alliance during 1998 (Maurer Aff., ¶10) and that US Alliance has admitted that it maintained a recording system that recorded all of its incoming and outgoing phone calls during all of 1998 (Maurer Aff., ¶12), it took almost four years after Plaintiff first requested those recordings in September of 1998 for US Alliance to admit that it had possession of those recordings and to produce any portion of such recordings (Maurer Aff., ¶9).

On September 20, 2001, US Alliance first responded to Plaintiff's request for those recordings by asserting in writing, in its response to that request  that it has **"...no such documents in its possession"**.  (Maurer Aff., ¶4.)  US Alliance deliberately failed to address whether the requested recordings were in its custody or control, or who specifically at US Alliance was the custodian of such records.

Finally, in September of 2002, four years after Plaintiff first requested those recordings, US Alliance's counsel notified Plaintiff's counsel that tape recordings containing what US Alliance represented to be conversations between Conte and US Alliance representatives in September of 1998, had been "found". (Maurer Aff., ¶9.)  Upon receipt and review of those recordings, Plaintiff's counsel discovered that the recordings produced by US Alliance were incomplete and deficient.  For example, the recordings produced by US Alliance did not contain

4

any time or date stamp. (Maurer Aff., ¶10.) Therefore, the time and date of those recordings could not be reliably and conclusively ascertained. Id. Moreover, the produced recordings did not include the majority of the conversations[2] that occurred between Plaintiff Victor Conte and Defendant US Alliance representatives during 1998 (the year during which, as indicated above, Conte maintained regular, and sometimes daily, contact with US Alliance). (Maurer Aff., ¶10.)

In September of 2002, Plaintiff's counsel by letter asked US Alliance's counsel for answers to the many questions and concerns Plaintiff's counsel had (and still has) regarding the lack of authenticity of the recordings produced and regarding US Alliance's continuing failure to produce recordings of the majority of the conversations that occurred between Conte and US Alliance in 1998. (Maurer Aff., ¶11.) Counsel for US Alliance failed to respond to that letter. (Maurer Aff., ¶11.)

In October of 2002, about one month after Plaintiff sent that letter of inquiry to counsel for US Alliance, Plaintiff served another discovery request upon US Alliance, which once again requested that US Alliance produce all recordings of conversations between Conte and US Alliance. (Maurer Aff., ¶12.) US Alliance responded to this request with the vague and evasive written assertion that "Defendant has no such document that can be recovered from its computer data base at this time covering the period July 1998 through September 11, 1998". (Maurer Aff., ¶13.) Once again, US Alliance failed to

---

[2] Some of the pertinent conversations that Conte had with US Alliance are contained in the Maurer Aff., ¶16a and b.

provide any information whatsoever about the reasons behind its claim that it was supposedly unable, more than one year after those recordings were initially requested, to retrieve and produce those recordings to Plaintiff.

As indicated below, US Alliance representatives and employees, like US Alliance's counsel, responded in a vague and evasive fashion when asked to answer the many questions and concerns that Plaintiff's counsel had, and continues to have, regarding US Alliance's continuing failure to produce the remaining recordings of conversations between Conte and US Alliance.

For example, Barry Moseley, who was one of US Alliance's employees during the relevant period (Maurer Aff., ¶6), represented during his July 15, 2002 deposition that John Walsh was the individual responsible for retrieving recordings from US Alliance's files (Maurer Aff., ¶6 and Exhibit "D" thereto, p. 67). US Alliance represented during discovery that Walsh was its "Records Retention Manager". (Maurer Aff., ¶7). However, during John Walsh's deposition testimony on July 15, 2002, Walsh denied having any "control" whatsoever over US Alliance's tape system, and offered the vague explanation that "it was a new installation" when asked to explain US Alliance's failure to retrieve and produce the remaining recordings. (Maurer Aff., ¶7 and Exhibit "E" thereto, p. 76.)

Similarly, Robert Ambrose, who US Alliance during discovery represented was an officer and Vice President of Member Services of US Alliance at all times relevant (Maurer Aff., ¶8), failed to offer during his July 16, 2002 deposition (more than three and ½ years after Plaintiff first requested the recordings at issue), any

6

credible reason or justification whatsoever for US Alliance's failure to preserve and produce all of the requested recordings. For example, when asked whether US Alliance's inability to produce those recordings was due to the volume of messages on the tape, Ambrose responded "I don't know" and explained how the calls are routed between two call centers and that without knowing the date and time of a call he is "not sure how we would ever find a call.....". (Maurer Aff., ¶12 and Exhibit "J" thereto, p. 143.) Ambrose also admitted for the first time on October 23, 2002 (the second day of his deposition testimony) that US Alliance's tape recordings are not indexed, stating "...those are not time-stamped. It does not help us to find when the call has been taped". (Maurer Aff., ¶12 and Exhibit "J" thereto, p. 144, lines 2-3.) Ambrose also admitted for the first time during that second day of his deposition testimony that a recording that US Alliance once had of incoming and outgoing phone calls occurring on September 8, 1998 is blank. (Maurer Aff., ¶12.) Again, Ambrose's testimony on US Alliance's failure to preserve, locate and produce the recordings evidences an apparent deliberate effort to evade Plaintiff's questions and inquiries in this regard.

In light of the foregoing, US Alliance cannot prove the authenticity and accuracy of the recordings it produced to Plaintiff.

Moreover, as indicated herein and in the Maurer Aff. accompanying this memorandum, US Alliance has, to Conte's great prejudice, failed to produce recordings of conversations that occurred on a regular, and sometimes daily basis between Conte and representatives of US Alliance in 1998. Those recordings would contain evidence of conversations that lie at the heart of the

dispute between Conte and US Alliance, and are directly relevant to Conte's claims of breach of fiduciary duty and negligence. While it is impossible for Plaintiff to recount all conversations for which no recording was produced, Plaintiff has summarized some of those conversations in the Maurer Aff. accompanying this memorandum, using deposition testimony and other evidence as a guide. (See Maurer Aff., ¶16a and b.) As indicated in the Maurer Aff., those conversations contain evidence of the parties' course of dealing near and on the crucial date on which US Alliance wrongfully liquidated Conte's account.

Particularly, US Alliance has failed to produce any tapes of discussions between Conte and US Alliance occurring on September 8, 1998. (Maurer Aff., ¶16a.) These conversations are critical as they would substantiate US Alliance's failure to provide notice to Conte of his purported under collateralized position, the amount he needed to either provide or reduce his loan to bring his loan to collateral ratio back into compliance with US Alliance's requirements, as well as Conte's repeated efforts to get that information from the member services and brokerage departments of US Alliance. (See Maurer Aff., ¶16a.) Further, US Alliance has failed to produce tapes or transcripts of several discussions between Conte and US Alliance representatives on September 10, 1998 including, among other things, conversations where John Walsh acknowledged that US Alliance had not considered or were not aware that Conte had other assets in US Alliance's possession. (See Maurer Aff., ¶16b.)

US Alliance clearly had a duty to maintain and preserve the recordings of all conversations between Conte and US Alliance representatives, because US

Alliance was on immediate notice in September of 1998 that the recordings of those conversations would be relevant to possible future litigation. Plaintiff's counsel was in frequent and regular contact with US Alliance officials on Plaintiff's behalf, beginning just after the "sell off" at issue occurred on September 10, 1998 and continuing through the date the complaint was filed. For example, US Alliance was informed by Plaintiff's counsel in September of 1998 that an investigation had been commenced into the activity that occurred in Conte's account at US Alliance. (Maurer Aff., ¶2). At that time, Plaintiff's counsel requested that US Alliance provide Plaintiff's counsel with, among other things, all records of communications between Conte and US Alliance. (Maurer Aff., ¶2). Thus, ever since just after US Alliance engaged in the wrongful sale of Conte's assets on September 10, 1998, US Alliance was on notice that future litigation would be possible. US Alliance nonetheless breached its duty to preserve and produce those recordings by permitting their loss and/or destruction.

## ARGUMENT

## I.    The Recordings Produced by US Alliance Cannot Be Used For Any Purpose At Trial Because Foundation For Their Admissibility Cannot Be Established

Rule 901(a) of the Federal Rules of Evidence requires the proponent of

any evidence to submit "evidence sufficient to support a finding that the matter in

question is what it proponent claims".  The 2nd Circuit has recognized that

"recorded evidence is likely to have a strong impression upon a jury and is

susceptible to alteration" and thus "adopted a general standard, namely,

that...'clear and convincing evidence' of authenticity and accuracy" of the

recording be established as a foundation for the admission of such recordings.

United States v. Ruggiero, 928 F2d 1289, 1303 (2d Cir. 1991), citing United

States v. Fuentes, 563 F.2d 527, 532 (2d Cir. 1977).  See also, United States v.

Griffin, 1999 U.S. App. LEXIS 24370 (2d Cir. 1999).    See generally, State of

Connecticut v. Michael Chiarizio, 8 Conn. App. 673 (1986) (*reviewing factors that

established authenticity of tape recording at issue, i.e, proof that recording was a

fair and accurate reproduction of conversations it purports to depict; and proof of

chain of custody, which precludes likelihood of tampering*).

The following elements are used by the 2nd Circuit in determining whether

a party has proven foundation for a recording's admissibility:

> (1) That the recording device was capable of taping the conversation now offered in evidence;
> (2) That the operator of the device was competent to operate the device;
> (3) That the recording is authentic and correct;
> (4) That changes, additions or deletions have not been made in the recording;

10

      (5) That the recording has been preserved in a manner that is
          shown to the court;
      (6) That the speakers are identified; and
      (7) That the conversation elicited was made voluntarily and in good
          faith, without any kind of inducement.

Fuentes, 563 F.2d at 531 n. 3.

Plaintiff repeatedly asked for information from counsel for US Alliance regarding the nature and circumstances under which the produced recordings were made, the custodian of such recordings and the like.  Counsel for US Alliance failed to respond to Plaintiff's requests for that information (Maurer Aff., ¶¶3, 4, 12 and 13) and failed to inform Plaintiff of the circumstances under which the recordings were created, preserved or maintained.

Foundation for the recordings' admissibility cannot be established.  For example, the produced recordings contain no date or time stamp from which one could conclusively and accurately determine the time and date of conversations contained therein.  (Maurer Aff., ¶12.)  Moreover, the recordings produced were not complete, because they did not contain a complete record of conversations that occurred on or about the September 1998 dates that US Alliance alleged were depicted therein.  Many other pertinent conversations occurring between Conte and US Alliance, such as the September 1998 conversations summarized in the attorney affirmation accompanying this motion (see Maurer Aff., ¶16a and b) were not included in the produced recordings.  US Alliance has conceded that certain conversations were deleted.  Robert Ambrose testified at his deposition that all of the conversations that took place on September 8, 1998 were either not recorded or were deleted because the tape for that date is now blank.

11

(Maurer Aff., ¶12.) Further, US Alliance has conceded that it has no way to determine whether it has produced all of the conversations between Conte and itself on September 10 and 11, 1998 because its "system" is not indexed in any manner and thus, US Alliance may have overlooked other recordings. (Maurer Aff., ¶12.) Finally, US Alliance has offered no proof whatsoever that the conversations it has produced are complete and untampered with. Because there are no time stamps on the conversations it has produced (Maurer Aff., ¶12), the Court cannot compare the length of the taped conversation with the time stamp of that conversation and the following conversation to determine whether portions of the tape have been altered. Therefore, the recordings produced by US Alliance are not a true, accurate and complete depiction of all conversations occurring between Conte and US Alliance at that time.

Moreover, no information has been provided establishing the exact whereabouts of the produced recordings during the almost four year period between the time Plaintiff first requested such recordings and the time any of those records were produced. US Alliance, therefore, cannot prove the recordings were at all times preserved, untampered with, and cannot provide evidence establishing those recordings' complete chain of custody.

Thus, the required foundation for admissibility of the produced recordings cannot be established.

**II.    US Alliance Has Caused Grave Prejudice to Plainitff and Must Be Appropriately Sanctioned For Its Spoilation of Crucial Evidence**

In order to establish that sanctions for spoliation of evidence are warranted, a Plaintiff must show: (1) that Defendant had an duty or obligation to preserve the evidence; (2) that defendant acted "culpably" in destroying the evidence; and (3) that the evidence would have been relevant to Plaintiff's case, in that a reasonable jury could conclude that the evidence would have been favorable to Plaintiff. Residential Funding Corp. v. Degeorge Funding Corp., 306 F.2d 99, 107 (2d Cir 2002). While Courts have broad discretion in determining the sanction for an offending Defendant for spoliation of evidence, Reilly v. Natwest Markets Group., Inc., 181 F.3d 253, 267 (2d Cir. 1999), the Courts must give careful consideration to the facts particular to the case, keeping in mind the fundamental purpose of any sanction is to protect the innocent party's opportunity to litigate by placing the risk that the evidence would have been unfavorable on the party whose fault led to the evidence's unavailability. Id.; Kronisch v. United States, 150 F.3d 112, 1998 U.S. App. LEXIS 29363, at *36-37 (2d Cir. 1998).

a) US Alliance Has a Duty to Maintain and Preserve Recordings of Conversations between Mr. Conte and US Alliance

In order to sanction a party for spoliation of evidence, a party must have a duty to preserve it. See e.g., Residential Funding, 306 F.2d at 107. An "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation....but also...in other circumstances, as, for

example when a party <u>knew or should have known that the evidence may be</u> <u>relevant to future litigation</u>" that has not yet begun. <u>Kronisch</u>, 1998 U.S. App. LEXIS 29363, at *38 (underscore added).  Thus, for example, the Second Circuit has held that a party is considered to have known that evidence may be relevant to future litigation, before such litigation has begun, where the culpable parties had in mind a "fear that the documents would become the subject of [future] litigation", and/or "feared the prospect of litigation against them individually" during the time they negligently and/or recklessly destroyed and/or failed to preserve such evidence.  <u>Id.</u> at *39-40.  Similarly, courts in our Circuit will also hold that a duty to preserve evidence arises where the prospect of litigation is foreseeable.  <u>See</u> <u>Barsoum v. NYC Housing Authority</u>, 202 F.R.D. 396 (S.D.N.Y 2001).  The Court in <u>Barsoum</u> thus held that litigation is considered foreseeable and thus a duty to preserve a tape recording arose, where a party was receiving assistance of counsel at a time when the recording existed.  <u>Id.</u>

US Alliance clearly had a duty to preserve the recordings it created of conversations between Conte and US Alliance representatives.  US Alliance was on prompt, immediate notice that those recordings would certainly be relevant to future litigation.  Plaintiff's counsel was in frequent and regular contact with US Alliance officials on Conte's behalf, verbally and in writing, beginning just after the "sell off" at issue occurred on September 10, 1998 and continuing through the date the complaint was filed.  (Maurer Aff., ¶2.)    US Alliance was informed by Plaintiff's counsel in late September of 1998 that an investigation had been commenced into the activity that occurred in Conte's account at US Alliance.

(Maurer Aff., ¶2). At that time, Plaintiff's counsel requested that US Alliance

provide Plaintiff's counsel with, among other things, all records of

communications between Conte and US Alliance. (Maurer Aff., ¶2). Thus, ever

since September 28, 1998, US Alliance has been on notice that future litigation

was possible and foreseeable. US Alliance nonetheless breached its duty to

preserve and produce those recordings by permitting their loss, destruction

and/or unavailability, much to Plaintiff's prejudice.


b) US Alliance Acted Culpably In Destroying, And/or Rendering "Unavailable"
   The Recordings At Issue

The Second Circuit does not require bad faith or intentional misconduct to

impose sanctions upon a party for spoliation of evidence. See e.g., Reilly, 181

F.3d at 267. Rather, the Second Circuit has held that sanctions for spoliation of

evidence are appropriately imposed upon a party who has been grossly

negligent, based upon an evaluation of the facts at hand. Id. The Court in

Reilly described the reasoning behind the Second Circuit's approach:

> Trial judges should have the leeway to tailor sanctions to insure that spoliators do not
> benefit from their wrongdoing - a remedial purpose that is best adjusted according to the
> facts and evidentiary posture of each case. [Citation omitted]. As other Circuits have
> recognized, it makes little sense to confine promotion of that remedial purpose to cases
> involving [*268] only outrageous culpability, where the party victimized by the spoliation
> is prejudiced irrespective of whether the spoliator acted with intent or gross negligence.
> See Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995); Glover v. BIC
> Corp., 6 F.3d 1318, 1329 (9th Cir. 1993); Pressey v. Patterson, 898 F.2d 1018, 1023-24
> (5th Cir. 1990); Welsh, 844 F.2d at 1246. Thus, we hold that a finding of bad faith or
> intentional misconduct is not a sine qua non to sanctioning a spoliator....

Reilly, 181 F.3d at 267-268.

The Court in Reilly held that the Defendant therein exhibited, at a minimum,

gross negligence in its spoliation of evidence for which it must be sanctioned.

15

Tellingly, the Court noted that the timing and manner of Defendant's production of documents, through the following actions, was sufficient evidence that the Defendant spoilated evidence through gross negligence: (1) Defendant initially insisted that "every relevant document 'that is in our possession...has been produced'"; (2) after making that representation, Defendant produced the documents at issue, after an exorbitant delay; (3) the items missing from Defendant's production implied that the produced files were "sanitized" i.e., Defendant selectively produced documents so as to omit documents that may be favorable to Plaintiff.   Reilly, 181 F.3d at 261, 268.

US Alliance's loss and/or destruction of relevant recordings of conversations between Conte and US Alliance was certainly not inadvertent. The evidence clearly establishes that US Alliance's loss and/or destruction of those recordings was done with deliberate indifference or gross recklessness. As in Reilly, US Alliance at first insisted it did not have possession of any of the recordings at issue (Maurer Aff., ¶4), and then, almost four years after the recordings were first requested, after an undue delay produced a small portion of those recordings (See Maurer Aff., ¶¶9 and 10). Like the sanctioned party in Reilly, US Alliance has engaged in the selective production of evidence after an exorbitant, inexcusable and prejudicial delay, while failing to produce and destroying other discoverable recordings that would be greatly favorable to Plaintiff's case.

Moreover, as indicated in further detail in the Maurer Aff. accompanying this memorandum, US Alliance's representatives were unjustifiably vague,

evasive and conflicting when they testified during their depositions about efforts made to locate and retrieve those recordings. (See Maurer Aff., ¶¶7-9, 12.) US Alliance, through its counsel, failed to respond in good faith to Plaintiff's inquiries, questions and concerns regarding the recording produced, and the many recordings US Alliance did not produce. (See Maurer Aff., ¶¶4, 11 and 13.)

Even if it could be credibly argued that US Alliance's loss and/or destruction of that crucial evidence was not done with deliberate indifference or gross recklessness, it remains clear that US Alliance was, at a minimum, grossly negligent in failing to preserve and produce this crucial evidence. As indicated above, a party does not have to be found to have acted intentionally or recklessly in order to be held responsible for its failure to preserve evidence that it had a duty to preserve. Rather, a party will be held accountable for its negligent failure to maintain and preserve evidence, and must bear the risk of its own negligence in this regard. As such, US Alliance remains responsible, and must be accordingly held accountable, for its wrongful and prejudicial spoliation of that crucial evidence.

c) The Recordings That US Alliance Destroyed / Made Unavailable Are Relevant for The Prosecution of Plaintiff's Case

Before a party is sanctioned for wrongful spoliation of evidence, a showing must be made that the "destroyed evidence would have been relevant to [the] contested issue[s]". Kronisch, 1998 U.S. App. LEXIS 29363, at *41, citing Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 923-924 (2d Cir. 1981). As the 2nd Circuit noted in Kronisch,

we remain mindful of Wigmore's admonition that "care should be taken" not to require too specific a level of proof. [Citation omitted]. Indeed, holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference [or other sanction for spoilation], and would allow parties who have...destroyed evidence to profit from that destruction. Certainly, the level of proof that will suffice to...[impose sanctions].....in favor of the innocent party on a particular issue must be less than the amount that would suffice to survive summary judgment on that issue. Otherwise, innocent parties meant to benefit from...[such sanctions]... against offending parties would receive no benefit at all, having been deprived of evidence that may have been crucial to making their case.

Kronisch v. United States, 1998 U.S. App. LEXIS 29363 (U.S. App., 1998). See

also Residential Funding v. DeGeorge Financial Corp., et al., 306 F.3d 99, 108-9

(2d Cir. 2002) ("'Courts must take care not to hold the prejudiced party to too

strict a standard of proof regarding the likely contents of the destroyed [or

unavailable] evidence because doing so 'would subvert the purposes of the

adverse inference, and would allow parties who have...destroyed evidence to

profit from that destruction'". (citations omitted)).

The Court in Kronisch also noted Wigmore's rule in this regard:

The failure or refusal to produce a relevant document, or the destruction of it, is [*42] evidence from which alone its contents may be inferred to be unfavorable to the possessor, provided the opponent, when the identity of the document is disputed, first introduces some evidence tending to show that the document actually destroyed or withheld is the one as to whose contents it is desired to draw an inference. 2 Wigmore, Evidence in Trials at Common Law § 291, at 228 (emphasis in original).

Kronisch, 1998 U.S. App. LEXIS 29363 at* 41-42.

As noted the 2nd Circuit in Kronisch, where the destruction of evidence

deprives the prejudiced party the opportunity to identify with specificity each

particular item of evidence destroyed, the prejudiced party will nonetheless

satisfy his burden to prove the likely contents of such evidence "as long as he

has produced some evidence suggesting that....[an item or items of evidence]

relevant to substantiating his claim have been included among the destroyed

[evidence]".  Kronisch, 1998 U.S. App. LEXIS 29363 at *42-43. (Underscore added.)

Recordings of conversations between Conte and US Alliance representatives, particularly those that occurred in 1998, are not only relevant but essential for this case.  While US Alliance's destruction of those recordings deprives Plaintiff of the opportunity to recount each and every such conversation verbatim, some of those conversations have been summarized in the attorney affirmation accompanying this memorandum, with the help of deposition testimony and other evidence.  (See Maurer Aff., ¶16a and b.)  As the content of those conversations illustrates, recordings of conversations between Conte and US Alliance representatives address events directly relating to Conte's claims that US Alliance breached its fiduciary duty to him and acted negligently in its dealings with him (through by way of example its failure to fully apprise Conte in a timely manner of the situation existing on or about September 10, 1998 regarding Conte's account).

Moreover, the evidence shows that for the most part, Conte and US Alliance communicated with each other by telephone.  Conte was in regular and sometimes daily contact with US Alliance in 1998, especially during the summer and spring of 1998 and September 1998, which is the month during which the most crucial interactions between the parties occurred.  (Maurer Aff, ¶10.)  Moreover, US Alliance admits that it maintained a system during all of 1998 that recorded all of US Alliance's incoming and outgoing phone calls.  (Maurer Aff., ¶¶7 and 12.)   Therefore, recordings of conversations between Conte and US

19

Alliance are not only relevant but crucial evidence for this case.   A thorough presentation of key conversations between the parties occurring in 1998, especially September 1998, and the chronology of events as they occurred during that time, is essential in this case.

Tragically, once one party has permitted verbatim records of such crucial conversations to be destroyed, lost or made 'unavailable', as US Alliance has done here, prejudice to the opposing party results because those recordings cannot possibly be replaced or recreated.  As a result, US Alliance must be held accountable for its spoliation of that relevant, crucial evidence.

### d)  US Alliance Must Be Sanctioned for Its Wrongful Spoilation of Evidence

The 2nd Circuit takes a "case-by-case approach" in determining what sanctions are appropriate against a party who has engaged in spoliation of evidence, and has noted that "[t]rial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing – a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case."  Reilly, 181 F.3d at 267 (citation omitted).   The power to impose such sanctions arises under a Court's "inherent power to manage its own affairs".  Residential Funding, 306 F.2d at 106-107, citing DLC Management Corp. v. Town of Hyde Park, 163 F3d 124, 135-36 (2d Cir. 1998), and citing generally Chambers v. NASCO, Inc., 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) ("It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,'

powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" (quoting United States v. Hudson, 11 U.S. 32, 7 Cranch 32, 34, 3 L. Ed. 259 (1912)). In exercising its inherent power to decide which sanction to impose on a party for its spoliation of evidence, the Court has "wide discretion". See e.g., Reilly, 181 F.3d at 267.

Such sanctions include an order barring use of documents as evidence and for purposes of impeachment at trial, in light of that party's delayed production of same, see Reilly, 181 F.3d at 269 (barring any use at trial of files produced prejudicially late, on eve of trial), barring use of one item of evidence at trial, where the remaining related evidence were unintentionally lost, unless an acceptable substitute for such lost evidence is provided. US v. Fishel, 324 F. Supp 429 (S.D.N.Y. 1971) (due to party's prejudicial but unintentional loss of two out of the three recordings of relevant conversations, Court suppressed and barred use in any fashion at trial the sole remaining 'available' tape, stating that a party "cannot pick and choose its evidence from among three tape recordings discoverable...and then offer only one of the tapes without providing an acceptable substitute for those that had been lost").

Courts may also sanction a party for spoliation of evidence by giving an adverse inference instruction to the jury that the evidence destroyed or otherwise made unavailable would have been unfavorable to the party responsible for its destruction or unavailability. See, e.g., Kronisch, 1998 U.S. App. LEXIS 19363, at *36-37 (stating that "the drawing of an adverse inference against parties who destroy evidence will deter such destruction, and will properly 'place the risk of

*an erroneous judgment on the party that wrongfully created the risk'"* (Citation

omitted) and stating that *"Courts have recognized a remedial rationale for the*

*adverse inference --- namely that an adverse inference should serve the function,*

*insofar as possible, of restoring the prejudiced party to the same position he*

*would have been in absent the wrongful destruction of evidence by the opposing*

*party"* (citations omitted)).  As with the other sanctions discussed in this section,

an adverse inference instruction can be imposed without a finding of bad faith or

recklessness, where a party's gross negligence caused spoliation of evidence.

See, e.g., Reilly, 181 F.2d at 267-268.

It would be well within the Court's discretion herein to bar US Alliance from

using for any purpose at trial the incomplete recordings it produced to Conte.  As

evidenced in further detail by the accompanying Maurer Aff. submitted in support

of this motion, US Alliance produced that evidence only after an unnecessary,

prejudicial delay of almost 4 years, and after it deliberately failed to respond in

good faith to Plaintiff's inquiries about whether and to what extent US Alliance

had those recordings in its possession, custody and control.  Moreover, after its

production of that recording, US Alliance and its counsel thereafter continually

failed to respond in good faith to Plaintiff's inquiries about the tape's authenticity

and completeness, and the reasons behind US Alliance's continuing failure to

produce all recordings of conversations between US Alliance and Conte.

By way of example, as indicated in the Maurer Aff., US Alliance

representatives and employees during their depositions, responded in a vague,

evasive and often conflicting fashion when asked to answer the many questions

22

and concerns that Plaintiff's counsel had and continues to have regarding US Alliance's continuing failure to produce all remaining recordings of conversations between Conte and US Alliance. Barry Moseley (a US Alliance employee during the relevant period) represented during his July 15, 2002 deposition that John Walsh was the individual responsible for retrieving recordings from US Alliance's files. (Maurer Aff., ¶6 and Exhibit "D" thereto, p. 67.) Moreover, during discovery US Alliance represented that John Walsh was its "Records Retention Manager". (Maurer Aff., ¶7.) However, during John Walsh's deposition testimony on July 15, 2002, Walsh denied having any "control" whatsoever over US Alliance's tape system, and offered the vague explanation that "it was a new installation" when asked to explain US Alliance's failure to retrieve and produce the remaining recordings. (Maurer Aff., ¶7 and Exhibit "E" thereto, p. 76.)

Similarly, Robert Ambrose (an officer and Vice President of Member Services at US Alliance at all times relevant) during his July 16, 2002 deposition (almost three and ½ years after Plaintiff first requested the recordings at issue), failed to offer any credible reason or justification whatsoever for US Alliance's failure to preserve and produce all of the requested recordings. For example, when asked whether US Alliance's inability to produce those recordings was due to the volume of messages on the tape, Ambrose responded "I don't know" and explained how the calls are routed between two call centers and that without knowing the date and time of a call he is "not sure how we would ever find a call.....". (Maurer Aff., ¶12 and Exhibit "J" thereto, p. 143.) Ambrose also admitted for the first time on October 23, 2002 (the second day of his deposition

testimony) that US Alliance's tape recordings are not indexed, stating "...those are not time-stamped. It does not help us to find when the call has been taped". (Maurer Aff., ¶12 and Exhibit "J" thereto, p. 144, lines 2-3.)  Ambrose also admitted for the first time on that second day of his deposition that a recording in US Alliance's possession of incoming and outgoing phone calls occurring on September 8, 1998, is blank.  (Maurer Aff., ¶12.)  Again, the events narrated above evidence a deliberate effort on the part of US Alliance and its counsel to evade and avoid answering Plaintiff's questions and inquiries regarding the evidence at issue.

US Alliance's deliberate failure to cooperate in good faith and produce such evidence, and its spoliation of that crucial evidence is inexcusable and extremely prejudicial to Plaintiff.  Thus, it would be appropriate to bar US Alliance from using at trial the incomplete recordings that it selectively "found" and produced to Plaintiff.

In the event US Alliance is permitted to use for any purpose at trial the recordings it produced, Plaintiff respectfully submits, in the alternative, that the Court would be well within its discretion to impose a sanction upon US Alliance for its spoliation of evidence in the form of an adverse inference instruction.  An adverse inference instruction to the jury, would indeed serve the remedial purpose of this sanction of "restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party".  See Residential Funding, 306 F.2d at 108. An adverse inference instruction to the jury in this case, setting forth the following points, would help

remedy the significant prejudice that US Alliance caused by its wrongful

spoliation of evidence: (i) that US Alliance failed to safeguard, destroyed /

permitted to be destroyed and/or otherwise permitted to become 'unavailable',

recordings containing conversations between Conte and US Alliance; (ii) that the

jury may thus conclude that the destruction of those tape recordings was in bad

faith, or at a minimum was grossly negligent, and (iii) that US Alliance destroyed

those recordings because an examination of those destroyed recordings would

have revealed evidence unfavorable to US Alliance and favorable to Conte.

### CONCLUSION

For the reasons stated herein, and in all submissions made to the Court in

support of Plaintiff's application herein, and for the reasons stated during any

hearing thereon, Plaintiff's Motion In Limine should be granted in its entirety.

PLAINTIFF,
VICTOR T. CONTE

BY: _____
Elisabeth Seieroe Maurer (ct11445)
Law Offices of Elisabeth Seieroe Maurer, PC
871 Ethan Allen Hwy., Suite 202
Ridgefield, CT 06877
Phone (203) 438-1388
Fax (203) 431-0357
e-mail: esmaurer@snet.net