# EXHIBIT A

ELISABETH SEIEROE MAURER

ATTORNEY AT LAW

46 NOD HILL ROAD

RIDGEFIELD, CONNECTICUT 06877

TELEPHONE: (203) 438-1388

TELECOPIER: (203) 431-0357

September 28, 1998

BY FAX: 914-921-5600
Robert Ambrose
Vice President Member Services
IAG Federal Credit Union
600 Midland Avenue
Rye, NY  10580-3999

Albert L. Menard
Affina Brokerage Services, Inc
600 Midland Avenue
Rye, NY  10580-3999

RE:    Victor Conte
       Acct No: 00011883800

Gentlemen,

This firm has been retained to investigate the recent activity in Victor
Conte's accounts with your firm.  Victor Conte's signature at the bottom of this
letter authorizes you to release the following information to me.

To assist in my analysis,  please send me copies of the following
documents at your earliest convenience:

- All opening account forms including those related to purchases
  on margin.

- All broker records regarding the above mentioned account
  dated after January 1, 1998 including but not limited to; holding
  pages, notes of conversations, correspondence with customer
  or regulators, analyses of trading activity, activity reports,
  commission runs, and supervisory logs.

- Compliance manuals as to the liquidation of margin accounts or
  the collateral maintained pursuant to customer borrowing on
  margin.

- All order tickets or other documentation of transactions related to Victor Conte's accounts between July 1, 1998 and the date of this letter.

   If you have any questions regarding these directions, please feel free to call me.  Thank you for your prompt attention to this matter.


                                    Very Truly Yours,


                                    Elisabeth Seieroe Maurer


_____
      Victor Conte


ESM/ls

ELISABETH SEIEROE MAURER

ATTORNEY AT LAW

46 NOD HILL ROAD

RIDGEFIELD, CONNECTICUT 06877

TELEPHONE: (203) 438-1388

TELECOPIER: (203) 431-0357

October 14, 1998

BY FAX and USMAIL: 914-921-5600

Robert K. Ambrose
Vice President- Member Services
IAG Federal Credit Union
One Interstate Terrace
600 Midland Ave
Rye, New York 10580-3999

RE:    Victor Conte,
       Member No. 00011883600

Dear Mr. Ambrose,

I appreciate your prompt response to my letter requesting information regarding Mr. Conte's account. Enclosed is the requested $250.00 for research fees. If additional funds are necessary, contact me before proceeding. Also, add to my list of requested materials a copy of your firm's policy regarding account research fees.

To limit the damage to Mr. Conte's account, please respond no later than ten days from the date of this letter. Thank you.

Sincerely,

Elisabeth Seieroe Maurer

ESM/ls

ELISABETH SEIEROE MAURER

ATTORNEY AT LAW

46 NOD HILL ROAD

RIDGEFIELD, CONNECTICUT 06877

TELEPHONE: (203) 438-1388

TELECOPIER: (203) 431-0357

October 14, 1998

BY FAX and USMAIL: 914-921-5600

Robert K. Ambrose
Vice President- Member Services
IAG Federal Credit Union
One Interstate Terrace
600 Midland Ave
Rye, New York 10580-3999

RE: Victor Conte,
Member No. 00011883600

Dear Mr. Ambrose,

On October 14, 1998, I sent $250.00 on Mr. Conte's behalf requesting various documents relating to his account. At that time, I requested that the documents be provided promptly to allow me to provide Mr. Conte an analysis of his claim. As of today, I have had no response.

Please let me know at your earliest convenience when I may expect the documents.

Sincerely,

Elisabeth Seieroe Maurer

ESM/ls

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR T. CONTE,<br>    Plaintiff,<br>v.<br><br>US ALLIANCE FEDERAL CREDIT UNION,<br>AFFINA BROKERAGE SERVICES, INC.,<br>ROBERT AMBROSE, and JOHN WALSH,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.<br>3:01 CV 463 (SRU)<br><br>July 13, 2001 |

## PLAINITFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

The Plaintiff, Victor T. Conte, (hereinafter "Conte"), pursuant to Rule 34 of the

Federal Rules of Civil Procedure hereby requests that the Defendants, US Alliance

Federal Credit Union, (hereinafter, "Credit Union"), Affina Brokerage Services, Inc.,

(hereinafter, "Affina"), Robert Ambrose, (hereinafter, "Ambrose"), and John Walsh,

(hereinafter, "Walsh"), produce the following requested documents that are within the

possession, custody or control of themselves, their agents, employees, attorneys,

investigators, or any persons acting on their behalf.

All documents shall be produced within thirty (30) days from the date of service.

If you cannot produce the requested documents or any part thereof, after exercising due

diligence to secure the documents, than so state and produce the remainder of the

documents as fully as possible.

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Defendants are under a continuing duty to promptly supplement their production with documents obtained subsequent to the preparation and filing of a response to each request. Thus, these Requests for Production are to be considered continuing. Therefore, Defendants are requested to provide, by way of supplementary production, such additional documents as they or any person acting on their behalf may obtain which will augment or modify their initial compliance. Such supplementary compliance is to be served upon Plaintiff's counsel within thirty (30) days of the receipt of such documents.

### A.    DEFINITIONS:

1.    "Document(s)": The term "document", as used throughout this particular document, refers to any kind of written, typewritten, printed or graphic material or matter, e-mail, reproduction, xerographic reproduction or photocopy thereof, or any other tangible means of recording or memorializing any form of communication, intelligence, or representation however produced or reproduced, of every kind and description in the actual or constructive possession, custody or control or producing parties, their agents, attorneys, accountants, and/or any other person authorized to act on behalf of said party, wherever located, including specifically, but without limiting the generality of the foregoing, the originals (or copies where originals are not available)

2

and all copies that are not identical to the original, of file indices, file folders, notes, memoranda, letters, telegrams, books, accounts, microfilm, microfiche, ultrafiche, papers, certificates, notices, computer tapes, computer cards, computer print-outs, inter-office communications, intra-office communications, visual recordings, motion pictures, videotapes, audio tapes, photographs, reports, drafts, calendars, appointment books, diaries, minutes of meetings of boards of directors, notices of meetings or conversations, catalogues, written agreements, plans, charts, maps, diagrams, contracts, checks, check registers, passbooks, books of account, statements, confirmations, financial statements, statements of income, receipts, invoices, bills, cables, leases, or any other form of writing or other material similar to the foregoing, however denominated by Defendants.

2.     "Communication": The term "communication" means the transmittal of information, the information transmitted, and any process by which information is transmitted.

3.     "Plaintiff": The term "Plaintiff" refers to Victor T. Conte, who shall be referred to as "Conte" throughout this document.

4.     "Defendants": The term "Defendants" refers to US Alliance Federal Credit Union, Affina Brokerage Services, Inc., Robert Ambrose, and John Walsh and their officers, directors, employees, members, partners, corporate parents, subsidiaries,

affiliates, or any similar person. This definition is not intended to impose a discovery obligation on any person who is not a party or an agent of a party to this litigation.

5.    "Person": The term "person" is defined as any natural person or business, legal or governmental entity or association.

6.    "Regarding": The term "regarding" means concerning, relating to, referring to, describing, evidencing or constituting.

7.    "Relate(s)": The term "relate(s)" means concerning, reflecting, regarding, referring to, describing, evidencing or constituting.

8.    "Relevant Time Period": The phrase "relevant time period" as used throughout this document shall be construed to encompass the time period from January 1st, 1995 through January 1st, 2000.

9.    Conte's Accounts: The phrases "Conte's accounts", "Conte accounts", or "accounts", shall be construed to encompass any accounts held by Victor T. Conte and/or Doris Conte, both individually and/or together, whether at Credit Union or Affina and any transaction that, although done in Credit Union, was later reported to Conte's accounts.

10.    Customer/Investor: Any person maintaining an account for the purpose of purchasing and selling investment vehicles.

4

11.    Transaction: The term "transaction", refers to any transaction in Conte's accounts or any transaction later credited or reported to Conte's accounts without regard to the name under which the transaction is undertaken or consummated. Further, the term "transaction" shall include any sale or purchase of securities ordered by Conte through Credit Union without regard to what entity executed the transaction.

12.    Affina Brokerage Services, Inc.: Referred to throughout this document as "Affina", shall be read to include any predecessor, successor, or any and all other organizations related to Affina, without regard to its organizational structure.

13.    US Alliance Federal Credit Union: Referred to throughout this document as "Credit Union", shall be read to include any predecessor, successor, or any and all other organizations related to Credit Union, without regard to its organizational structure.

**B.    RULES OF CONSTRUCTION:**

1.    "All/Any": The terms "all" and "any" shall be construed to include all and any of what may be requested.

2.    "And/Or": The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

### C.    INSTRUCTIONS:

1.    With respect to any document requested which was once in the possession, custody or control of Defendants, but no longer is, please indicate the date the document ceased to be in possession, custody or control, the manner in which it ceased, and the name and address of the present custodian.

2.    Whenever a description of a document or information is requested, it is the intention that the answer shall state the following information with respect to each such document:

(a)    The title, heading or caption of such document, if any.

(b)    The identifying number(s), letter(s), or combination thereof, if any and the significance or meaning or such number(s), letter(s), or combinations thereof.

(c)    The inclusive dates of each such document.

(d)    The general nature of such documents (i.e. whether it is a letter, memorandum, minutes of a meeting, etc.) and the number of pages of which it consists.

(e)    The name of the person to whom such document was addressed and the name of each person, other than such

addressee, to whom such document or a copy thereof, was

sent.

(f)     The identity of the person who has custody of such

document.


The foregoing information shall be given in sufficient detail to enable a

party or person to whom subpoena is directed to identify fully the document to be

produced and to enable a party to determine that such document then produced is in

fact the document so desired.

3.     The documents produced in this request shall include all

attachments and enclosures.

4.     In the event any document called for by this request has been

destroyed, discarded, misplaced or otherwise disposed of, or is otherwise presently

unavailable to Defendants, the unavailable document is to be identified as follows:

addresser, addressee, indicated or blind copies, date, subject matter, number of pages,

attachments or appendices, all persons to whom the document was distributed shown

or explained, date of destruction or disposal and name and business title of person who

destroyed, discarded, misplaced or disposed of such document.

5.     In the event Defendants decline to produce any document on the

7

ground of evidentiary privilege or discovery exclusion: (1) state the basis for assertion of the privilege or exclusionary principle and (2) give a summary statement of the document's title, date, author, recipient, custodian and subject matter in sufficient detail to permit the Panel to reach a determination in the event of a motion to compel the production of the requested documents.

6.    The document requests shall be deemed to be continuing and it is requested that you promptly supplement your production to include documents subsequently located or acquired.

7.    Each request shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall produce the any portion of the document to the extent the interrogatory is not objectionable.

8.    All grounds for an objection to a request shall be stated with specificity.

## REQUESTS FOR PRODUCTION

1.     All agreements between Conte and the Defendants, including but not limited to, account opening documents, cash, margin, and option agreements, trading authorizations, powers of attorney, and/or discretionary authorization agreements, notes, mortgages, deeds of trust, loan agreements, and membership agreements.

2.     All monthly and annual account statements for Conte's accounts, during the relevant time period and/or relating to the transactions at issue.

3.     All confirmations for transactions in Conte's accounts from July through December of 1998.

4.     All holding and/or posting pages for Conte's accounts and transactions, or if not available, any electronic equivalent, created during the relevant time period.

5.     All correspondence between Conte and the Defendants and their associated persons, exchanged during the relevant time period.

6.    All notes by Defendants and their associated persons, including but not limited to, entries in any diary or calendar that relate to Conte's accounts and transactions, during the relevant time period.

7.    All recordings and notes of telephone calls or conversations regarding Conte's accounts and transactions between Conte or any person acting on his behalf and Defendants or any associated persons of Defendants, regarding Conte's accounts and transactions, during the relevant time period.

8.    All Forms RE-3, U-4, and U-5, for any Defendant or associated person having had contact with Conte, including all amendments, all complaints identified in such forms and all complaints of a similar nature against the Defendants and/or their associated persons.

9.    All sections of Defendant's Compliance Manual(s) related to investment polices and procedures, including any separate or supplemental manuals governing the duties and responsibilities of Defendants and/or their associated persons and supervisors, any bulletins (or similar notices) issued by the Defendants and the entire table of contents and index to each such Manual.

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

————————————————————— X

VICTOR T. CONTE                                     :

                                                    :    Civil Action No.
                          Plaintiff,                :    3:01 CV 463 (SRU)

                                                    :

          v.                                        :

                                                         **DEFENDANTS' RESPONSE**
US ALLIANCE FEDERAL CREDIT UNION, AFFINA     :          **TO PLAINTIFF'S FIRST**
BROKERAGE SERVICES, INC., ROBERT AMBROSE,              **REQUEST FOR**
and JOHN WALSH,                                     :    **PRODUCTION OF**
                                                         **DOCUMENTS**
                          Defendants.               :

————————————————————— X

      Defendants, US Alliance Federal Credit Union ("Credit Union") and Affina Brokerage

Services, Inc. ("Affina"), by their attorneys Blank Rome Tenzer Greenblatt LLP and Shipman &

Goodwin LLP, hereby state their responses and objections to Plaintiff's First Request for

Production of Documents as follows:

## GENERAL OBJECTIONS

    (A)    Defendants' response or answer to any demand does not constitute an admission

of relevance, materiality or admissibility of the subject matter or documents referred to therein.

    (B)    These responses are made without waiver of, and with preservation of, the right to

correct, amend, supplement and/or clarify any response herein when other or additional

information becomes available through further discovery or otherwise.

    (C)    Defendants object to Plaintiff's Request to the extent that it requires production of

documents which were prepared in anticipation of litigation, which constitute attorneys' work-

product, contain privileged attorney-client communications, or which are otherwise privileged.

    (D)    Defendants object to Plaintiff's Request to the extent it seeks documents not in

their possession, custody or control.

(E)     Defendants object to Plaintiff's Request insofar as it is vague, ambiguous, overly broad and/or unduly burdensome.

(F)     Defendants object to Plaintiff's Request to the extent it seeks documents which are irrelevant and immaterial to the issues in this action and/or not reasonably calculated to lead to the discovery of admissible evidence.

(G)     Defendants object to Plaintiff's Request insofar as it is related to the period prior to or beyond July through September 1998.

(H)     Each response below is made subject to and without prejudice to the foregoing general objections.

## RESPONSES

(1)     Subject to the General Objections, Defendants have previously produced documents responsive to this request. Notwithstanding, Defendants hereby produce additional documents in response to this Request.

(2)     Subject to the General Objections, Defendants have previously produced documents responsive to this request. Notwithstanding, Defendants hereby produce additional documents in response to this Request.

(3)     Subject to the General Objections, Defendants hereby produce documents in response to this Request.

(4)     Defendants object to this Request on the grounds that it is vague and unclear and seeks documents not in plaintiffs' possession, custody or control. Subject to the foregoing objection and the General Objections, Plaintiffs hereby assert they have no such documents in their possession.

-2-

(5)    Subject to the General Objections, Defendants have previously produced documents responsive to this request.  Notwithstanding, Defendants hereby assert they have no such additional documents in their possession, except for documents produced herewith in response to other Requests contained herein.

(6)    Subject to the General Objections, Defendants hereby assert they have no such documents in their possession.

(7)    Subject to the General Objections, Defendants hereby assert they have no such documents in their possession.

(8)    Defendants object to this Request on the grounds that it is unduly burdensome and seeks documents which are irrelevant and immaterial to the issues in this action and/or not reasonably calculated to lead to the discovery of admissible evidence.

(9)    Subject to the General Objections, US Alliance hereby asserts it has no such documents in its possession.  Affina objects to the Request on the grounds that it seeks documents which are irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

(10)    Subject to the General Objections, Defendants hereby assert they have no such documents in their possession.

(11)    Defendants object to this Request on the grounds that it is duplicative and unduly burdensome.

-3-

# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CONNECTICUT

----------------------------------------x

VICTOR T. CONTE,                              :

                         Plaintiff,      :

            -against-                     :

US ALLIANCE FEDERAL CREDIT UNION,            :

AFFINA BROKERAGE SERVICES, INC.,

ROBERT AMBROSE AND JOHN WALSH,               :

                   Defendants.      :

----------------------------------------x

                 600 Midland Avenue

                 Rye, New York

                 July 15, 2002

                 10:30 A.M.

         EXAMINATION BEFORE TRIAL of BARRY

MOSELEY, a witness on behalf of the Defendants

herein, taken by the Plaintiff, pursuant to

Court Order.

          NEW YORK REPORTING SERVICE

            192 Lexington Avenue

         New York, New York 10016

             (212) 233-6797

```
 1                    B. Moseley
 2   that member's telephone number --
 3            MR. UNGER:  This is about '98?
 4            MS. MAURER:  I'm sorry.
 5       Q.   -- in about '98?
 6       A.   Yes.
 7       Q.   If that member informed you that they
 8   were going to be temporarily at another location,
 9   would that also be entered into the account file
10   in the computer?
11       A.   I don't know.
12       Q.   In 1998, was the brokerage services
13   department taping its conversations with the
14   members?
15       A.   Yes.
16       Q.  Did you tape every conversation?
17       A.   I don't know.
18       Q.   Was the taping at the control of the
19   brokerage services workers or was it automatic?
20       A.   Automatic.
21       Q.   So did it tape every incoming telephone
22   call?
23       A.   Yes.
24       Q.   In 1998, did the brokerage services
25   department have an 800 number?
```

1                    B. Moseley

2        A.   Yes, we do.

3        Q.   Did you tape the calls that came in on

4    the 800 number?

5        A.   Yes.

6        Q.   If someone dialed locally into the

7    brokerage services department, would those calls

8    have been taped as well?

9        A.   Yes.

10       Q.   What happened to those tapes?

11       A.   Some retention are retained.

12       Q.   To your knowledge, are there other units

13   within the credit union that also tape their

14   calls?

15       A.   I do not know.

16       Q.   When an incoming call is taped, is the

17   person answering the call asked to identify who

18   the caller is in some manner?

19       A.   Would you mind repeating that, please.

20       Q.   Let me give an example, because I am not

21   technically very capable.

22            When you make a call to certain

23   brokerages, the person sees the phone number that

24   is coming in to them and that's recorded on the

25   tape as well as they enter the customer's I.D.

1                    B. Moseley

2    number.

3              Did the brokerage services department in

4    1998 have some way to identify where the incoming

5    calls came from?

6        A.    I don't know.

7        Q.    Have you ever had any reason to listen

8    to any of the retained tapes?

9        A.    Yes.

10       Q.    How did you find the tapes you needed?

11       A.    We would instruct management that there

12   was a discrepancy and he would pull them.

13       Q.    Who was "he?"

14       A.    John Walsh.

15       Q.    How did you tell John Walsh what tape

16   you needed?

17       A.    Letting him know the day and the

18   approximate time.

19       Q.    Would you let him know what client you

20   were concerned with?

21       A.    Yes.

22       Q.    In 1998, did AFFINA Corporation generate

23   confirmation slips?

24       A.    No, I do not know.  I don't remember.

25       Q.    In 1998, were members provided with

NEW YORK REPORTING SERVICE  (212) 233-6797

# EXHIBIT E

2      UNITED STATES DISTRICT COURT

       EASTERN DISTRICT OF CONNECTICUT

3      --------------------------------------x

4      VICTOR T. CONTE,                          :

5                             Plaintiff,         :

6                   -against-                    :

7      US ALLIANCE FEDERAL CREDIT UNION,         :

       AFFINA BROKERAGE SERVICES, INC.,

8      ROBERT AMBROSE AND JOHN WALSH,            :

9                             Defendants.        :

10     --------------------------------------x

11                          600 Midland Avenue

                             Rye, New York

12

                             July 15, 2002

13                           2:15 P.M.

14              EXAMINATION BEFORE TRIAL of JOHN WALSH,

15     a witness on behalf of the Defendants herein,

16     taken by the Plaintiff, pursuant to Court

17     Order.

18

19

20

21

                   NEW YORK REPORTING SERVICE

22                      Suite 802

                   192 Lexington Avenue

23              New York, New York 10016

                      (212) 233-6797

24

25

1                            J. Walsh

2        A.    Not readily available, no.

3        Q.    Where are those tapes kept?

4        A.    They are kept in the vault and we would

5   have to go back and search through the

6   conversations.

7        Q.    You would not destroy that tape, though,

8   no?

9        A.    No.

10       Q.    How are those tapes catalogued?

11       A.    By date.

12       Q.    Are they in any way --

13       A.    Again, the computer system tracks it and

14   it tracks the time, the extension the call went to

15   and the date.

16       Q.    I have noticed in some brokerage

17   companies that it also records the incoming phone

18   number.

19             Does your system record the incoming

20   phone number?

21       A.    Yes.

22       Q.    Is there a mechanism for the person who

23   referred that call to indicate what member they

24   are speaking with?

25       A.    No.

1                           J. Walsh

2        Q.   Do you also tape outgoing calls?

3        A.   Yes.

4        Q.   Do they in any way indicate the number

5    that you're dialing?

6        A.   I am not sure.

7        Q.   If it was a long distance call, would

8    you have a record of that?

9        A.   Of an outgoing call?

10       Q.   Yes.

11       A.   A record of it?  I am not sure how the

12   system works.  I have not used it in quite awhile.

13       Q.   When you place a long distance call, do

14   you have to indicate in some way on the phone

15   system what department it is being charged to or

16   what member?

17       A.   No.

18       Q.   When you spoke to Mr. Conte on

19   September 8th, was that an incoming or outgoing

20   call?

21       A.   I would say I had called him.

22       Q.   What was the purpose of that call?

23       A.   At that time, I understand that the loan

24   was under collateralized and Mr. Conte had been

25   concerned with regard to the position of his

 1                          J. Walsh

 2        Q.    When this claim was first filed, did you

 3   read the complaint?

 4        A.    Yes.

 5        Q.    Do you remember that Mr. Conte alleged

 6   that you had a conversation on September 11th?

 7        A.    That would have been the day after?

 8              MR. UNGER:   The question is:  Do you

 9        remember him alleging that?

10        A.    If there was a call on September 11th?

11   I don't recall.

12        Q.    Do you recall the complaint containing

13   the allegation that the two of you had spoken to

14   him about wiring money?

15        A.    That we had previously spoke about it?

16        Q.    No.  That you had spoken about it on the

17   11th?

18        A.    My recollection is that prior to the

19   account being liquidated, we had a conversation

20   regarding -- the wiring of funds on the 11th?  No,

21   I don't recall.

22        Q.    Have you pulled that tape and reviewed

23   it from the September 8th conversation?

24        A.    I had tried to obtain some of the

25   recordings and have not been able to obtain it.  I

 1                          J. Walsh

 2   have tried, yes.

 3        Q.   Why is that?

 4        A.   At that time, it was a new installation

 5   and, again, at that time there was hundreds of

 6   calls that day that came in and it was a

 7   particular trunk and it went to the extension and

 8   the little bit of technical knowledge that I had

 9   with the system and a matter of spending hours

10   going through one call at a time to verify the

11   specific member.

12        Q.   So other than the tape you really have

13   no documentation that this call happened on the

14   8th?  In fact, that call could have happened on

15   the 11th that Mr. Conte alleges in his

16   complaint -- accounts in his complaint?

17             MR. UNGER:  The complaint speaks for

18        itself.  We're only asking for your

19        recollection.

20        A.   Could you repeat the question?

21             MS. MAURER:  Probably not.  Read back

22        the question.

23             (Whereupon, the question was read back

24        by the reporter)

25        A.   Correct.

```
 1                              J. Walsh
 2     ticket journal to record daily orders; is that
 3     correct?
 4                MR. UNGER:   This is in '98?
 5                MS. MAURER: . In '98.
 6                MR. UNGER:   Thank you.  In 1998.
 7          A.    That the credit union used?
 8          Q.    Yes.
 9          A.    Right.  Correct.
10          Q.    Are those ticket journals retained?
11          A.    Yes, for a period of seven years.
12          Q.    So if I were to ask you to present to me
13     the ticket journals reflecting Mr. Conte's trades
14     from August until September of 1998, would you do
15     that for me?
16          A.    Yes, within a reasonable amount of time.
17          Q.    And you told me earlier that you could
18     also present within a reasonable amount of time
19     the tapes of your ingoing and outgoing
20     conversations with him, correct?
21          A.    Due to the fact that I have no control
22     over that system, I can only say that I will try
23     to make my best efforts to do it.
24          Q.    What other documents do you have
25     regarding Mr. Conte's conversations with your
```

# EXHIBIT F

ORIGINAL

1

2          UNITED STATES DISTRICT COURT

           EASTERN DISTRICT OF CONNECTICUT

3          ------------------------------------x

4      VICTOR T. CONTE,                          :

5                          Plaintiff,            :

6                    -against-                   :

7      US ALLIANCE FEDERAL CREDIT UNION,         :

       AFFINA BROKERAGE SERVICES, INC.,

8      ROBERT AMBROSE AND JOHN WALSH,            :

9                          Defendants.           :

10         ------------------------------------x

11                          600 Midland Avenue

                            Rye, New York

12

                            July 16, 2002

13                          1:20 P.M.

14

15              EXAMINATION BEFORE TRIAL of ROBERT

16     AMBROSE, a witness on behalf of the Defendants

17     herein, taken by the Plaintiff, pursuant to

18     Court Order.

19

20

21

22

23              NEW YORK REPORTING SERVICE

                192 Lexington Avenue

24         New York, New York 10016

                (212) 233-6797

25

R. Ambrose

1

2    demand that this had to be rectified immediately?

3        A.    I don't know.  I do know David's

4    practice when he was making a call as a collector

5    was to demand for payment immediately, whether it

6    was a delinquent loan or a collateral loan.

7        Q.    Is it the practice of the collection

8    department to tape their conversations?

9        A.    I don't know and certainly I don't know

10   at that time.  We do have a telephone recording

11   system, but it has not been easy to -- we have

12   been unable to target and retrieve and I am still

13   trying to find calls from this time period,

14   because it is not an indexed system.

15           So incoming calls you need to know

16   whether the call went to Massachusetts or came

17   here and an 800 call could have been directed to

18   either place.  So that is the problem.  There is a

19   hundred phone lines and thousands of calls and we

20   have attempted to look, but we have not found

21   those calls.

22           (Plaintiff's Exhibit 12, check stub

23           from U.S. Alliance, marked for identification,

24           as of this date)

25       Q.    I show you what has been marked as

R. Ambrose

1

2    Exhibit Number 12.

3                Do you recognize what that is?

4        A.  It appears to be a check stub from U.S.

5    Alliance checking and this was an advance from a

6    secured loan for a thousand dollars.

7        Q.  I would like you to read the language

8    right here, demand loan outstanding balance,

9    callable on seven days notice?

10       A.  Correct.

11       Q.  This is a stock secured loan, correct?

12       A.  Correct.

13       Q.  Callable on seven days notice?

14       A.  Right.

15       Q.  So when there is a withdrawal, you tell

16   people that they got seven days notice, correct?

17   That is what this document says, seven days

18   notice?

19       A.  Yes, that is for the demand loan.  It is

20   different than the default.

21       Q.  So we're on the night of September 9th

22   and you get a report that comes in to you at night

23   or the following morning --

24       A.  All right.

25       Q.  -- and you see this loan is unsecured.

NEW YORK REPORTING SERVICE  (212) 233-6797

# EXHIBIT G



90 MERRICK AVENUE
EAST MEADOW, NY 11554
PHONE: 516.296.7000 • FAX: 516.296.7111
www.certilmanbalin.com

MARTIN P. UNGER
PARTNER
DIRECT DIAL: 516.296.7004
munger@certilmanbalin.com

September 10, 2002

**Via Airborne**
Elisabeth Seieroe Maurer, Esq.
871 Ethan Allen Highway, Suite 202
Ridgefield, CT 06877

Re:  Conte v. US Alliance
     Federal Credit Union, et al.

Dear Ms. Maurer:

Enclosed find the following documents Bates Stamp Nos. 000000 through 000065.  These include the front and back of the Secured Loan Application, a letter from the Contes dated September 15, 1998, order tickets, a copy of the computer screen from August 6, 2002, a letter from you to Richard Murray dated January 21, 1999, a letter from Richard Murray to you dated January 27, 1999, and a letter from Richard Murray to you dated October 13, 1998.

Further with regard to your letter of July 24, 2002, we will not be producing the documents requested in Items 1, 3, 10, 14, 15, 18 and 19.  I am still working on getting the other documents.  I am also awaiting the information and documents noted in my letter of July 18, 2002 from you.

I will be forwarding the taped conversations that were found shortly.

Very truly yours,

Martin P. Unger

MPU:ed
enc.

iManage:1295094.1