UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————X

VICTOR T. CONTE,

|  |  |
|---|---|
| Plaintiff, | Civil Action No. 3:01 CV 463 (EBB) |
| v. | |
| US ALLIANCE FEDERAL CREDIT UNION, AFFINA BROKERAGE SERVICES, INC., ROBERT AMBROSE and JOHN WALSH, | OPPOSITION AFFIDAVIT OF MARTIN P. UNGER |
| Defendants. | |

———————————————————X

STATE OF NEW YORK      )
                                        ) ss.:
COUNTY OF NASSAU      )

MARTIN P. UNGER, being duly sworn, deposes and says:

1.    I submit this affidavit in opposition to plaintiff's motion in limine dated April 7, 2004. Because (a) to the extent the motion involves pre-trial discovery issues it is untimely; the time for discovery and for motions concerning discovery is long over; and (b) it contains unsubstantiated allegations of spoliation of evidence, the subject matter is not suitable for a motion in limine. For these reasons alone, the motion must be denied.

2.    Rather, plaintiff's arguments, to the extent they are meritorious, if at all, go to the weight a jury will place on the contemporaneous audio recordings, not on their admissibility. Plaintiff's counsel's "testimony" in her supporting affirmation and the "spin" counsel places therein are irrelevant and immaterial. Issues of admissibility concerning audio recordings and the "spoliation" of evidence charged, albeit without rational support, can only be raised at trial. The

Court can then hear the necessary factual testimony, take the necessary proofs, and thereupon determine admissibility.

3.     The simple fact is that the gambit to keep the jury from hearing plaintiff's contemporaneous admissions contained on the audio tapes evidenced by plaintiff's motion is necessary to avoid potential issues regarding plaintiff's untruthful (a) pre-trial deposition testimony and (b) statements contained in sworn affidavits submitted to the Court, as well as sanctions, all of which is alluded to in my letter to the Court of April 7, 2004.

4.     In connection with the arguments concerning pre-trial discovery contained in the moving papers, this Court should be aware that while plaintiff brought a motion to compel certain discovery in this action, which was denied, as untimely, by ruling dated April 30, 2003, plaintiff failed to bring a motion to compel regarding the audio tapes. This failure, to the extent that any such motion would have had any merit, which it would not, cannot be cured by a motion in limine, nor should this Court determine admissibility of evidence based on pre-trial discovery issues not properly raised.

5.     I do not intend in this affidavit to respond to plaintiff's counsel's representation or misrepresentation (*see* (f), *infra*) of the facts. Rather, I intend to provide the Court with a complete version of the facts without any "spin". The facts follow:

(a)     This action was commenced on April 3, 2001. Plaintiff's counsel's letter of September 28, 1998 seeking documents, not audio tapes, is irrelevant. However, it should not go unnoticed that the documents sought by plaintiff's counsel at that time were provided. Further, the aforementioned letter made no mention of future litigation, notwithstanding plaintiff's

2

iManage:1549990.1

counsel's representation to the contrary. *See* Maurer Moving Affirmation, dated April 7, 2004, par. 17.

(b)    Plaintiff served his first request for document production on July 13, 2001 (Exhibit A hereto). USAlliance responded on September 20, 2001 (Exhibit B hereto). Among the objections in USAlliance's response was its preservation of the right "to correct, amend, supplement and/or clarify any response herein when other or additional information becomes available through further discovery or otherwise." USAlliance also included objections to plaintiff's document request "insofar as it is vague, ambiguous, overly broad and/or unduly burdensome" as well as regarding relevancy and materiality. During that time period the audio recordings could not be found. Moreover, while plaintiff sought audio recordings from January 1, 1995 through January 1, 2000, because any relevant audio recordings would be limited to the period of September 8, 1998 through September 11, 1998, and because of the sheer impossibility of recovering audio conversations involving plaintiff over the period of time demanded, the general objections as to burdensomeness and relevance and materiality were not only applicable, but proper. Significantly, plaintiff neither made a motion to compel the production of any recordings, nor took any objection to the Court regarding USAlliance's response. Testimony at trial, if called for, will explain the reasons why the audio recordings were

3

iManage:1549990.1

not initially located. Plaintiff failed to explore this avenue in pre-trial discovery; even after the audio recordings were located and produced.

(c)     Audio recordings for September 10 and September 11, 1998 were located and produced in September 2002, one and a half years ago. Thus, there can be no prejudice or surprise to plaintiff. Plaintiff was also advised that due to a systems failure, audio tapes for September 8, 1998 which were located, contained garbled voices and that the conversations, accordingly, could not be retrieved. Correspondence regarding the production of the audio tapes is annexed hereto as Exhibit C. My letter of September 12, 2001, which is part of that exhibit, advises plaintiff's counsel of the problem with the September 8, 1998 audio recording. Not only did plaintiff not complain, but interestingly, plaintiff's counsel in an affirmation dated May 16, 2003, utilized transcripts of the conversations contained on the audio cassettes produced by USAlliance as Exhibits G and H thereto. The audio cassettes produced were extracted from the originals and, accordingly, have no date or time. This information, however, is available on the original audio tapes which, I am advised, requires special equipment to play. That equipment will be available at trial. It is significant that plaintiff has never requested to review the original audio recordings (*see* (f) and (h) *infra*.

(d)     Plaintiff's examination before trial was given on October 22, 2002. Deposition Exhibits 15 and 16 are cassette tapes made from the master

4                          iManage:1549990.1

audio recordings of conversations between plaintiff and USAlliance personnel on September 10, 1998 and September 11, 1998. Plaintiff specifically identified his voice on both exhibits (*see* Exhibit F hereto).

(e)  Plaintiff served a second document request on October 23, 2002 (Exhibit D hereto) (notwithstanding a certificate of service bearing date July 11, 2002). That request included specific requests for recordings during the time period January 1, 1995 through January 1, 2000, notwithstanding that the relevant audio tapes had been produced.

(f)  USAlliance responded on November 21, 2002 to the Requests (numbers 12 and 21) that it "objects to this Request on the grounds that it is unduly burdensome and seeks documents which are irrelevant and immaterial to the issues in this action and/or not reasonably calculated to lead to the discovery of admissible evidence." In addition, as to Request 21, USAlliance added "Notwithstanding, the 'logs' of telephone calls consist only of the trunk number, date, time and length of conversations and cannot be reproduced" (Exhibit E hereto). Again plaintiff failed to proceed further or to move to compel, in effect waiving any claim of non-production of audio recordings for any of the dates above set forth; nor did plaintiff request to listen to the original audio tapes so as to confirm the date, time and length of conversation.

(g)  In paragraph 13 of her affirmation, plaintiff's counsel refers to an alleged incomplete statement by USAlliance concerning audio recordings:

5

"Defendant has no such document that can be recovered from its computer data base at this time covering the period July 1998 through September 11, 1998." (*See* Ex. E hereto)  Counsel is either careless or is attempting intentionally to mislead the Court.  In light of the wild, unsubstantiated charges contained in the pending motion in limine, I am constrained to believe the latter.  The Request to which the quoted response replies is as follows:

"7)  Any document that either notifies Conte of his under-secured position or that refers to his under-secured position from August 1, 1998 to January 1, 1999 including without limitation all "Infograms" or records of notifications sent to Conte."  *See* Exhibit D hereto.  The appropriate Requests covering audio recordings are numbers 12 and 21 referred to in (e) and (f) above.

(h)     The affidavit of Robert Ambrose, sworn to April 3, 2003, specifically explains the recording system and that "these electronic recordings can be identified by USAlliance as to date, time conversation commenced and time conversation ceased and length of conversation."

(i)     This court's "Ruling on Defendant's Motion for Summary Judgment," dated February 20, 2004, contains quotations from the transcripts of the conversations contained in the audio recordings produced and attached as exhibits to USAlliance's moving papers.  I thus conclude that the Court has recognized the value in the search for truth of the contemporaneous

6                    iManage:1549990.1

statements contained therein (as previously noted, the parties have referred to transcripts of the audio recordings during the course of this litigation. See (c), above).

6.      The Court should also be aware that the only relevant time period involved here as far as conversations between plaintiff and USAlliance personnel is concerned is September 8, 1998 through September 11, 1998, *i.e.*, from the date of David Brody's contact with plaintiff through the sales of securities by plaintiff on September 11, 1998. I am advised by USAlliance that all recorded conversations between plaintiff and any personnel at USAlliance or its broker-dealer affiliate at the time, Affina Brokerage Services, Inc., that can be located, have been produced. I have further been advised by USAlliance that it believes it has located all such conversations during that time period. Nonetheless, if plaintiff wants to listen to the thousands of conversations recorded on those days and an appropriate confidentiality agreement is entered into and agreeable arrangements made, the originals of those audio recordings will be made available for plaintiff to listen to.

7.      In sum, the audio recordings in issue have been referred to and quoted by plaintiff, by USAlliance, and by the Court. Plaintiff cannot now compensate for his failure to bring to the Court's attention putative discovery issues concerning partial or late production of audio recordings or alleged "spoliation" of evidence through a motion in limine. Indeed, as to the "spoliation" issue, the only evidence plaintiff can muster is that USAlliance was "unable to retrieve anything on that when running through the machine. The machine thing is a blank tape." *See* Maurer Moving Affirmation, dated April 7, 2004, Exhibit J. This is not spoliation. It is a defective audio tape or equipment.

7

iManage:1549990.1

8.    For the reasons above set forth, the motion in limine pending before the Court

should be denied in all respects.

_____
MARTIN P. UNGER

Sworn to before me this
27th day of April 2004.

Notary Public

REBECCA BELVEDERE
Notary Public, State of New York
No. 5053371
Qualified in Nassau County
Commission Expires December 18, 2004

8

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the foregoing Opposition Affidavit of Martin P. Unger was mailed, via First Class U.S. Mail, postage prepaid on April 27, 2004 to:

Elisabeth Seieroe Maurer, Esq.
871 Ethan Allen Highway, Suite 202
Ridgefield, CT 06877

Attorney for Victor T. Conte

Martin P. Unger, Esq.

iManage:1415319.1