## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **VICTOR T. CONTE,** | : |
| **Plaintiff,** | : **Civil Action No.** |
| **v.** | : **3:01 CV 463 (EBB)** |
| **US ALLIANCE FEDERAL CREDIT UNION, AFFINA BROKERAGE SERVICES, INC., ROBERT AMBROSE AND JOHN WALSH** | : |
| | : **May 5, 2004** |
| **Defendants** | : |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## PLAINTIFF'S MOTION IN LIMINE

Law Offices of Elisabeth Maurer, P.C.
Attorneys for Defendant
871 Ethan Allen Highway, Suite 202
Ridgefield, Connecticut   06877
(203) 438-1388

## TABLE OF CONTENTS

Page

I.    DEFENDANT HAS NOT AND CANNOT ESTABLISH
      THE PRODUCED RECORDINGS' ADMISSIBILITY
      OR AUTHENTICITY ……………………………………………….…….    1

II.   DEFENDANT IGNORES THIS COURT'S HOLDINGS
      THAT DEFINE THE RELEVANT TIME PERIOD
      HEREIN, AND MISSTATES PLAINTIFF'S POSITION
      REGARDING SAME……………………………………………………    5

III.  PLAINTIFF'S MOTION IN LIMINE WAS PROPERLY
      BROUGHT BEFORE THE COURT AT THIS STAGE
      OF THE PROCEEDING………………………………………………    6

IV.   DEFENDANT HAS FAILED TO REFUTE THAT IT HAS
      ENGAGED IN SPOILATION OF CRUCIAL EVIDENCE……………    7

V.    DEFENDANT WITHOUT BASIS OBJECTED TO
      PLAINTIFF'S SECOND "FORMAL" REQUEST
      FOR THE RECORDINGS AT ISSUE…………………………………    9

CONCLUSION………………………………………………………………    10

Plaintiff Victor Conte ("Plaintiff" or "Conte") respectfully submits this reply brief in further support of his Motion In Limine.[1]

## I.   DEFENDANT HAS NOT AND CANNOT ESTABLISH THE PRODUCED RECORDINGS' ADMISSIBILITY OR AUTHENTICITY

In an attempt to establish the authenticity and admissibility of the recordings at issue, Defendant quotes the following statement contained in an affidavit of Robert Ambrose (US Alliance's Senior Vice-President of Member Support) ("Ambrose Affidavit", submitted to the Court last year in support of Defendant's summary judgment motion) (attached as **Exhibit "A"** hereto):  "[t]hese electronic recordings can be identified by US Alliance as to date, time, conversation commenced and time conversation ceased and length of conversation".  (See Exhibit "A" hereto, Ambrose Affidavit, ¶4.  See also Memorandum of Law in Opposition to Plaintiff's Motion in Limine ("Mem. Opp."), p. 2 and Affidavit of Martin Unger in Opposition to Plaintiff's Motion in Limine ("Aff. Opp."), ¶5(h).)  That conclusory statement from the Ambrose Affidavit fails to establish the recordings' admissibility and authenticity as required by Federal Rule of Evidence 901.  Moreover, Defendant did not attach to that affidavit, or otherwise produce, a single shred of evidence illustrating how the recordings' time, date, or length could be authenticated in any reliable fashion.

Defendant tries to establish the recordings' authenticity and admissibility by referring to "discussions between counsel for the respective parties" that occurred during Ambrose's deposition, which "referenced specific dates, times, and durations of various taped conversations".  (Mem. Opp., Point I, p. 8, referencing Maurer Aff.,

---

[1] Plaintiff, however, declines to respond to the personal attacks and inflammatory statements contained in the affirmation and memorandum that Defendant's counsel submitted in opposition to Plaintiff's Motion In Limine.

¶16(b)(I).).  A review of the transcript of those "discussions" between counsel, (which is restated verbatim in the Affirmation of Elisabeth Maurer submitted in support of Plaintiff's Motion in Limine, and is contained in Exhibit "J" thereto, p. 144, lines 9-25; p. 145, lines 1-10), reveals that those 'discussions' were nothing more than unsubstantiated statements that Defendant's counsel made to Plaintiff's counsel during a deposition about the time, length and date of conversations contained in the produced recordings.  No evidence was or ever has been provided regarding how those tapes could be authenticated as to time, date or duration.

Defendant cites DeKwiatkowski v. Bear Stearns & Co., Inc., et al., 2000 U.S. Dist. LEXIS 5364 (S.D.N.Y. 2000) (see Mem. Opp., pp. 2-4 .), in support of its claim that the recordings at issue are authentic and admissible.  Defendant's reliance on DeKwiatkowski is misplaced.  In DeKwiatkowski, Plaintiff sought to exclude a recording produced by Defendant Bear Stearns, on the grounds that it could not be properly authenticated and did not satisfy the Best Evidence Rule.  The Court disagreed and admitted the tapes.  However, DeKwiatkowski is distinguishable from the case here in several crucial respects.

Unlike here, there was no evidence presented in DeKwiatkowski that the recordings at issue were destroyed due to any improper or bad faith reason. DeKwiatkowski , 2000 U.S. Dist. LEXIS at *8.  Rather, the Defendant Bear Stearns provided proof that long prior to any knowledge of a dispute with DeKwiatkowski, and in the normal, regular course of business, pursuant to its well established, proven policy (that was industry wide at brokerage firms) it would keep master tapes for a period of thirty days, and then reuse them.  Id., at *13.  In contrast to DeKwiatkowski, Plaintiff has shown that US Alliance acted culpably in destroying or rendering "unavailable" the

recorded evidence at issue. Such spoliation was certainly not inadvertent. (Pl. Mem., pp. 16-17.) [2]

In further contrast to the circumstances here, in DeKwiatkowski the Court also noted that a duty did not arise for Bear Stearns to preserve the recorded evidence, because the parties had no reason to believe that litigation could possibly be anticipated. DeKwiatkowski , 2000 U.S. Dist. LEXIS at *14-15. No mention is made that any party in the DeKwiatkowski case was, at the time of the re-use of the tapes, represented by counsel or could foreseeably anticipate that litigation might occur in the future. (See Plaintiff's Memorandum of Law submitted in support of Plaintiff's Motion in Limine ("Plaintiff's Memorandum"), pp. 13-14.[3]  In contrast, as established by the Affirmation of Elisabeth Maurer submitted in support of Plaintiff's motion in limine ("Maurer Aff.") and in Plaintiff's Memorandum, US Alliance clearly had a duty to preserve the recordings now at issue. (See Maurer Aff., ¶2, and Pl. Mem, 14-15.)  For example, Plaintiff's counsel was already retained by Plaintiff and was in frequent, regular contact with US Alliance verbally and in writing, beginning just after the 'sell off' at issue occurred on September 10, 1998, and continuing through the date the complaint was filed. (Maurer Aff., ¶2.)  At that time, an immediate request was made by

---

[2] As illustrated by pages 16 and 17 of the Memorandum of Law submitted in support of Plaintiff's Motion in Limine,  a party does not have to be found to be intentionally or recklessly in order to be held responsible for evidence that it failed to preserve; rather a negligent failure to preserve such evidence suffices under the law to hold that party responsible for such spoliation. See also, Maurer Aff., ¶¶4, 7, 8, 9, 10, 11, 12, 13.

[3] As noted in pp. 13 and 14 of Plaintiff's Memorandum,  an "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation…but also…in other circumstances, as for example when a party knew or should have known that the evidence may be relevant to future litigation" that has not yet begun (emphasis added) (citing Kronisch v. US, 150 F.3d 112, 1998 U.S. App. LEXIS 29363, at*36-37 (2d Cir. 1998) As also illustrated by Plaintiff's Memorandum, courts in our circuit will hold that a duty to preserve evidence, such as a tape recording, arises where the prospect of litigation is foreseeable, see Barsoum v. NYC Housing Authority, 202 F.R.D. 396 (S.D.N.Y. 2001), such as when a party was receiving assistance of counsel at the time when the recording existed. Id.

3

Plaintiff's counsel for the recordings now at issue. (Maurer Aff., ¶2.) Under the circumstances explained by Plaintiff, US Alliance had a duty to preserve such evidence.

Defendant also tries to establish the recordings' admissibility by mentioning that "plaintiff's counsel in an affirmation dated May 16, 2003 utilized transcripts of the conversations contained on the audio cassettes produced by US Alliance...". (Aff. Opp., ¶5(c).) Defendant's counsel fails to inform the Court, however, of the clearly stated reasons for which those transcripts were used in that May 16, 2003 affirmation. As that May 16, 2003 affirmation clearly indicates, Plaintiff's counsel included excerpts of those transcripts in her May 16, 2003 affirmation in order to <u>object</u> to US Alliance's use of those recordings and transcripts on the grounds that they lack foundation, are incomplete and unreliable. (<u>See</u> **Exhibit "B"** hereto, which contains the Affirmation of Elisabeth S. Maurer dated May 16, 2003, ¶29 and pp. 4-6 thereto, and letter to this Court enclosing and explaining same dated April 1, 2004).

Along that same vein, it is untrue, as Defendant claims, that Plaintiff did not present objections to the Court regarding the produced recordings. (<u>See</u> Aff. Opp., , ¶5(b).) Plaintiff began questioning and expressing his concerns and objections to the produced recordings' admissibility and authenticity, immediately upon review of those recordings, by, among other things, informing Defendant's counsel that certain conversations were not included therein, (Maurer Aff., Exhibit "I", and Exhibit "B" hereto, ¶29), informing Defendant's counsel that those recordings lacked a time or date stamp or other means of authentication  (Maurer Aff., ¶12 and Exhibit "J" thereto, p. 143) and asserting objections to Defendant's use of those recordings on the grounds that they lack foundation, and are incomplete and unreliable (<u>see</u> Exhibit "B" hereto).

## II.    DEFENDANT IGNORES THIS COURT'S HOLDINGS THAT DEFINE THE RELEVANT TIME PERIOD HEREIN, AND MISSTATES PLAINTIFF'S POSITION REGARDING SAME

Defendant also claims that the only time period relevant to this case is September 8, 1998 through September 11, 1998  (Aff. Opp., ¶6), and that Plaintiff "asserts that the recordings of September 8, 1998…lie at the heart of the case" (Mem. Opp., p. 4.)  These statements mischaracterize Plaintiff's position and ignore this Court's express holdings that define the relevant period at issue in this case.

As Plaintiff has indicated, Conte was in regular, if not daily contact with US Alliance during much of 1998, especially August and September of 1998.  (Maurer Aff., ¶10.)  Thus, as Plaintiff has repeatedly asserted, and as this Court has agreed (see below) those conversations, as well as other conversations that occurred between Conte and US Alliance during their 30 year relationship, are relevant in this proceeding, and relate to matters directly at issue, such as, by way of example, US Alliance's breach of the fiduciary duty it owed to Plaintiff, and US Alliance's negligence. (See Maurer Aff., ¶15.)

By Order and Decision dated on March 11, 2004, this Court held, inter alia, that "[a] reasonable person may find Conte's previous dealings [noted by the Court to be over a 30 year period] with US Alliance created a fiduciary duty". ("Amended Ruling on Defendant's Motion for Summary Judgment" dated March 11, 2004, p. 15 (stating also that "there is enough evidence to convince this court that a factual issue remains as to whether Conte and US Alliance had a regular arms-length debtor-creditor relationship, or whether US Alliance assumed a fiduciary duty in its ongoing relationship with Conte".)  This Court also held in that Order and Decision that the prior dealings between Conte and US Alliance during their 30 year relationship are relevant to the

5

inquiry as to whether such a fiduciary duty existed, such as, by way of example, the circumstances relating to the loan receipts received by Conte during his 30 year relationship with US Alliance. (See "Amended Ruling on Defendant's Motion for Summary Judgment" dated March 11, 2004, p. 16.)

Thus, Defendant's effort to ignore the time period that is truly relevant in this case, contrary to this Court's explicit holdings, has no credence whatsoever, and is nothing more than an effort to avoid addressing its failure to preserve and produce recordings of conversations that occurred during the entire time period relevant to this case.

## III.    PLAINTIFF'S MOTION IN LIMINE WAS PROPERLY BROUGHT BEFORE THE COURT AT THIS STAGE OF THE PROCEEDING

Defendant also argues that Plaintiff has somehow "waived" the issues he now presents in this Motion In Limine. (See e.g., Mem. Opp., pp. 7, 8, and Aff. Opp., ¶5(f).) That argument has no merit. Not surprisingly, Defendant cites no legal authority in support of its 'waiver' argument. As illustrated by the cases Plaintiff cited in Plaintiff's Memorandum, the relief sought herein has not been waived and is properly brought by use of a motion in limine after discovery has been completed. See e.g., Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.2d 99 (2d Cir. 2002) (Court held on appeal that the lower Court had broad discretion in fashioning an appropriate sanction for spoliation of evidence, where such relief was sought during trial); and Reilly v. Natwest Markets Group., Inc., 181 F.2d 253, 261, 268 (2d Cir. 1999) (upheld lower Court's granting of adverse inference sanctions requested during trial on party who (1) initially insisted that "every relevant document 'that is in our possession...has been produced'"; (2) after making that representation, produced the documents at issue, after

6

an exorbitant delay; (3) the produced files were "sanitized" i.e., selective production of documents occurred that omitted documents that may be favorable to Plaintiff.)

## IV. DEFENDANT HAS FAILED TO REFUTE THAT IT HAS ENGAGED IN SPOILATION OF CRUCIAL EVIDENCE

Defendant has failed to refute that it spoilated crucial recorded evidence. The following matters have been shown:   (1) Defendant has admitted that it maintained and recorded all conversations occurring in 1998 (see Maurer Aff., ¶12) (a period of time during which time Conte was in frequent, and many times daily contact with US Alliance (Maurer Aff., ¶10)) ; (2) Defendant has produced only a fraction of conversations that have occurred between Conte and US Alliance (see e.g., Maurer Aff., ¶16a and b); (3) Defendant, arguably in bad faith, persists in its refusal to produce the remainder of those recordings, and will not inform the Court where those missing recordings are.

Defendant addresses these matters only through the hearsay statements of its counsel Martin Unger, which report what an unidentified person at US Alliance told Attorney Unger. Specifically, Attorney Unger in his affidavit states as follows: "I am advised by US Alliance that all recorded conversations between plaintiff and any personnel at US Alliance...that can be located, have been produced...I have further been advised by US Alliance that it believes it has located all such conversations during that time period...". (Aff. Opp., ¶6 (emphasis added).)   It is disingenuous for Defendant to suggest that the conclusory statements in its attorney's affidavit constitute a serious effort to address the troubling issues raised in Plaintiff's Motion In Limine.

Curiously, Defendant's counsel does not include in his affidavit any statement that specifically denies that any recording was lost or destroyed. Defendant has chosen to avoid addressing this specific issue under oath, instead choosing to state in Defendant's memorandum of law that "US Alliance never lost or destroyed even one

7

single tape recording". (Mem. Opp., p. 8, Point II.) Assuming for the sake of argument that Defendant's claim is true that those recordings were not lost or destroyed, then those tapes must still exist. Defendant remains silent about exactly where those recordings are, and why Defendant still refuses to produce them. Instead Defendant in is submissions simply states without any real explanation whatsoever that it has not produced those recordings due to the "sheer impossibility" of doing so. (Aff. Opp., ¶5(b).) Defendant is clearly avoiding the real issues here, and has not met its obligations to preserve and produce this crucial evidence.

Defendant next claims that the cases cited by Plaintiff in support of his request for sanctions for spoliation of evidence, Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.2d 99 (2d Cir. 2002), Reilly v. Natwest Markets Group., Inc., 181 F.2d 253 (2d Cir. 1999) and Barsoum v. N.Y.C. Housing Authority, 202 F.R.D. 396 (2001) are inapplicable here. (See Mem. Opp., p. 9.) That claim is inaccurate. Those cases clearly illustrate that a Court has broad discretion (as set forth in Rule 37 of the Federal Rules of Civil Procedure) to impose sanctions for the spoliation of evidence, which is exactly on point to what occurred here. (See Pl. Mem, pp. 13-24.)

Defendant also disputes a duty arose for it to preserve the recordings at issue, by claiming that Plaintiff's counsel's communications to Defendant in 1998 "make no reference to litigation whatsoever". (Mem. Opp., p. 9, first full paragraph.) Defendant is misstating the clear guidelines set by the 2nd Circuit regarding when a duty to preserve evidence arises. As stated in further detail in Plaintiff's Memorandum, Courts in this circuit hold that such a duty arises when a party "knew or should have known that the evidence may be relevant to future litigation that has not yet begun" (Pl. Mem., p. 14, citing Kronisch v.US, 1998 U.S. App. LEXIS 29363, at *38 (2d Cir. 1998)), or "where the

prospect of litigation is <u>foreseeable"</u> (Pl. Mem., p. 14, <u>citing</u> Barsoum, 202 F.R.D. at 396).  This duty has been held to arise "where a party was receiving assistance of counsel at the time when the recording existed" (Pl. Mem. P. 14, <u>citing</u> Barsoum, 202 F.R.D. at 396.)  Thus, Defendant had a duty to maintain and preserve the evidence it admittedly created and maintained.

Defendant's claim that "<u>Plaintiff</u> has never identified, much less demonstrated, that any particular tape has been lost or destroyed" (Mem. Opp., p. 8.) (emphasis added) is inapposite.   Plaintiff has presented what was said during a multitude of conversations that were not produced on tape, through use of deposition testimony and other evidence (Maurer Aff., ¶16a and b), but has been deprived of the opportunity to recount the many other conversations that occurred because Defendant has destroyed or made 'unavailable' the remaining recordings it once had, or still has but refuses to produce.  This is the very reason why Courts sanction parties for spoliation of evidence.  As Plaintiff has illustrated, Plaintiff easily satisfied the Second Circuit's standard of proof of the likely contents of the spoiled evidence.  (<u>See</u> Pl. Mem, pp.18-19.)

## V.    DEFENDANT WITHOUT BASIS OBJECTED TO PLAINTIFF'S SECOND FORMAL REQUEST FOR THE RECORDINGS AT ISSUE

Plaintiff wishes to call the Court's attention to Defendant's response to the second 'formal' request that Plaintiff made during discovery in this case (in October

2002) for the recordings at issue. [4] Defendant <u>objected</u> to that request as follows:

> Defendant objects to this Request on the grounds that it is unduly burdensome and seeks documents which [sic] are irrelevant and immaterial...and/or not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding, the "logs" of telephone calls consist only of the trunk number, date, time and length of conversation and cannot be reproduced".

(See Aff. Opp., Exhibit E thereto, p. 6, ¶21.)

Defendant's response illustrates that Defendant has been engaged in an ongoing refusal without basis to produce recordings relevant to this proceeding, and logs related thereto. Plaintiff's Motion <u>In Limine</u> quoted the incorrect response that Defendant made to this request. Plaintiff appreciates the opportunity to correct that error, which was brought to Plaintiff's attention by Defendant in its submissions opposing Plaintiff's Motion <u>In Limine</u>.

## **CONCLUSION**

For the reasons stated above, and in all submissions made to the Court in support of Plaintiff's application herein, and for the reasons stated during any hearing thereon, Plaintiff respectfully requests that his Motion <u>In Limine</u> be granted in its entirety.

PLAINTIFF,
VICTOR T. CONTE

BY: _____
Elisabeth Seieróe Maurer (ct11445)
Law Offices of Elisabeth Seieroe Maurer, PC
871 Ethan Allen Hwy., Suite 202
Ridgefield, CT 06877
Phone (203) 438-1388
Fax (203) 431-0357
e-mail: esmaurer@snet.net

---

[4] This request was contained in Request No. 21 of Plaintiff's Second Request for Production Documents dated October of 2002). It is also described in Maurer Aff., ¶13, and Pl. Memo, p. 5 (bottom of page).

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **VICTOR T. CONTE,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No.** |
| **v.** | : | **3:01 CV 463 (EBB)** |
| | : | |
| **US ALLIANCE FEDERAL CREDIT UNION,** | : | |
| **AFFINA BROKERAGE SERVICES, INC.,** | : | |
| **ROBERT AMBROSE AND JOHN WALSH** | : | **May 5, 2004** |
| | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff's Reply Memorandum in Further

Support of Plaintiff's Motion <u>in Limine</u>, was served, via Federal Express, on this 5th

day of May, 2004, on the following counsel :

U.S. Alliance Federal Credit Union
Martin P. Unger, Esq.
Certilman Balin
90 Merrick Avenue
East Meadow, NY 11554

U.S. Alliance Federal Credit Union
Andrew M. Zeitlin, Esq.
Shipman & Goodwin LLP
300 Atlantic Avenue
Stamford, CT 06901-3522


Elisabeth Seieroe Maurer

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____X

VICTOR T. CONTE,

                    Plaintiff,                  Civil Action No.
                                        3:01 CV 463 (EBB)

        v.

US ALLIANCE FEDERAL CREDIT UNION,      AFFIDAVIT OF
AFFINA BROKERAGE SERVICES, INC.,        ROBERT AMBROSE
ROBERT AMBROSE and JOHN WALSH,

                  Defendants.

_____X

STATE OF NEW YORK        )
                          ) ss.:
COUNTY OF WESTCHESTER   )

      ROBERT AMBROSE, being duly sworn, deposes and says:

      1.      I am the Senior Vice President of Member Support at USAlliance Federal Credit Union ("USAlliance"). In August and September 1998 I was Vice President of Member Services. In those capacities I was fully familiar with the procedures and records relating to USAlliance's members and the accounts they maintained, including those discussed herein. I submit this affidavit in support of USAlliance's motion for summary judgment.

      2.      USAlliance maintains a recording system for all telephone calls to USAlliance's offices and personnel. Each caller is notified at the beginning of the call that the telephone call may be recorded. The recording system was in effect during all of 1998.

      3.      These electronic records are made and kept in the regular course of USAlliance's

iManage:1392143.1

business activity, and it was during 1998, and continues to be, the regular course of USAlliance's business activity to make and maintain such recordings.

4.    These electronic recordings can be identified by USAlliance as to date, time conversation commenced and time conversation ceased and length of conversation.

5.    The electronic recordings, and the date, time and length thereof, transcripts of which are annexed to the Affidavit of Martin P. Unger, sworn to April 16, 2003 ("Unger Aff'd"), as Exhibits F, G and H, were made and maintained in the manner described herein. The original electronic recordings as well as relevant excerpts thereof are available to the Court for review on request.

6.    The documents marked as Plaintiff's Deposition Exhibit 2 on October 23, 2002 (Exhibit A hereto) and those annexed as Exhibit B hereto, are Undercollateralized Stock Loan Reports  These Reports were made and kept in the regular course of USAlliance's business activity during 1998 and, during 1998, it was the regular course of USAlliance's business activity to make and maintain such documents.

7.    The documents annexed hereto as Exhibits A and B were made and maintained in the manner described in paragraph 6 above.

8.    The documents marked as Plaintiff's Deposition Exhibit 13 on July 16, 2002 (Exhibit C hereto) are known as Que 10 Reports and are printouts of a Que 10 computer screen produced by USAlliance's internal computer system. During 1998 these documents were made and kept in the regular course of USAlliance's business activity and it was during 1998, and is, the regular course of USAlliance's business activity to make and maintain such documents. These documents were available via the computer screen to the USAlliance Collection

–2–

iManage:1392143.1

Department, including David Brody, the Brokerage Department and Executive Officers, including myself, on a daily basis at least during the period from July 1, 1998 through September 16, 1998.

9.    Plaintiff's Deposition Exhibit 13 was made and maintained in the manner described in paragraph 8 above.

10.    The Que 10 Reports that are annexed to the Unger Aff'd as Exhibit D (and Exhibit B thereto), dated September 10, 1998 and September 11, 1998, were similarly made and kept in the regular course of USAlliance's business activity, and it was, and is, the regular course of USAlliance's business activity to make and maintain such documents. The documents referred to in this paragraph were made and maintained by USAlliance in such manner.

ROBERT AMBROSE

Sworn to before me this
___ day of April, 2003.

Notary Public

YVONNE BROESTLER
Notary Public, State of New York
No. 4939728
Qualified in Westchester County
Commission Expires Aug. 08, 2004

iManage:1392143.1

# EXHIBIT B

LAW OFFICES OF
**ELISABETH SEIEROE MAURER, PC**

ELISABETH SEIEROE MAURER: CT, NY, IL
EVA M. PUORRO: CT, NY, NJ

871 ETHAN ALLEN HIGHWAY, SUITE 202
RIDGEFIELD, CT 06877

DANIEL P. HUNSBERGER
Of Counsel

TEL: 203-438-1388
FAX: 203-431-0357
e-mail: esmaurer@esmlaw.net

Paralegals
GLORIA A. STEARNS
RITA L. CONCEPCION

April 1, 2004


The Honorable Ellen Bree Burns
United States District Court Senior Judge
United States District Court of Connecticut
141 Church Street
New Haven, CT 06510


      **RE:  Victor T. Conte v. US Alliance Federal Credit Union, et al.
              Civil Case No. 301 CV-463 (EBB)**


Dear Judge Burns:

This office represents the Plaintiff in the above-referenced case. We have received
the letter dated March 29, 2004 addressed to Your Honor from US Alliance's
counsel Martin Unger, Esq., and accompanying affidavit from the stenotype
recorder that transcribed a tape recording produced by US Alliance. Please accept
this letter as Plaintiff's objection to Attorney Unger's request that Your Honor's
Amended Ruling filed March 18, 2004 be changed to state that a conversation
between Plaintiff and Al Menard occurred on September 10, 1998, rather than on
September 11, 1998 as Your Honor's ruling states.

There is absolutely no basis for Attorney Unger's request. In purported support of
this request, Attorney Unger cites his own Moving Affidavit dated April 16, 2003
(submitted in support of US Alliance's motion for summary judgment), paragraph
18B thereto. Attorney Unger's affidavit purports to quote a transcript of recorded
conversation, allegedly between Menard and Conte. Attorney Unger's affidavit fails
to support his assertion that Menard and Conte spoke on <u>any</u> date in particular. In
fact, US Alliance has failed to produce a shred of evidence that establishes in a
reliable or admissible manner the exact date of any conversations contained in
recordings produced by US Alliance. Moreover, US Alliance has admitted through

The Honorable Ellen Bree Burns
United States District Court Senior Judge
April 1, 2004
Page 2

depositions in this proceeding that the recordings it created and maintained in 1998 have absolutely no time stamp or other indication of the day or time when they were created.

Moreover, Plaintiff at no time agreed to US Alliance's use of those recordings and transcripts as evidence of what transpired between Conte and US Alliance. In fact, in opposing US Alliance's summary judgment motion, Plaintiff promptly asserted objections to US Alliance's use of those recordings and transcripts on the grounds that they lack foundation, are incomplete and unreliable. (See attached affirmation; ¶29 and pp. 4-6 thereto.) For example, in my attached affirmation dated May 15, 2003 submitted in opposition to US Alliance's summary judgment motion, Plaintiff objected to US Alliance's presentation of those tapes (and transcripts thereof) as evidence of what transpired between Conte and US Alliance, noting that those tapes are at best an incomplete, suspect version of what occurred. As that affirmation also points out, US Alliance admitted during depositions that those recordings were neither indexed nor time stamped. In that affirmation, Plaintiff objected further that because US Alliance has only produced a fraction of the recordings it admittedly maintained throughout 1998 of conversations between Conte and US Alliance, an adverse inference should result that the contents of the missing recordings contain information harmful to US Alliance's position in this case.

Plaintiff's counsel drafted and intended to submit on the May 24th deadline set by Your Honor, a motion *in limine*, asking that the Court bar US Alliance's use of the recordings and transcripts produced by US Alliance, and alternatively issue an appropriate adverse inference instruction to the jury. However, in light of recent developments, we feel compelled to submit that motion before that deadline. Plaintiff therefore respectfully requests Your Honor's permission to deviate from Your Honor's scheduling order and have that motion submitted and considered by Your Honor before that May 24th deadline.

The Honorable Ellen Bree Burns
United States District Court Senior Judge
April 1, 2004
Page 3

For the reasons stated herein, in Plaintiff's other submissions herein, and in Plaintiff's motion *in limine*, which Plaintiff intends to submit to the Court shortly, Plaintiff respectfully requests that Attorney Unger's request to amend Your Honor's Amended Ruling filed March 18, 2004, be denied in its entirety.

Respectfully Submitted,

Law Offices of Elisabeth Seieroe Maurer, PC

Elisabeth Seieroe Maurer

cc: Martin P. Unger, Esq. by Federal Express 8455-2770-5498
    Andrew M. Zeitlin, Esq. by Federal Express 8455-2770-5502

Enclosure

By Federal Express 8455 2770 4528

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
------------------------------------------------------------X
VICTOR T. CONTE,                          :        Civil Action No.
        Plaintiff,                        :        3:01 CV 463 (EBB)
v.                                        :
                                          :
US ALLIANCE FEDERAL CREDIT UNION,         :        May 15, 2003
AFFINA BROKERAGE SERVICES, INC.,          :
ROBERT AMBROSE, and JOHN WALSH,           :
        Defendants.                       :
------------------------------------------------------------X
```

## <u>AFFIRMATION OF ELISABETH SEIEROE MAURER</u>

1.     Attached as Exhibit "A" is a copy of deposition excerpts of Victor T. Conte.

2.     Attached as Exhibit "B" is a copy of deposition excerpts of Robert Ambrose.

3.     Attached as Exhibit "C" is a copy of deposition excerpts of John Walsh.

4.     Attached as Exhibit "D" is a copy of deposition excerpts of David Brody.

5.     Attached as Exhibit "E" is a copy of deposition excerpt of John Petrie.

6.     Attached as Exhibit "F" is a copy of a tape transcript. (Speakers:. Vic Conte, Norman, John Petrie, Al Menard)

7.     Attached as Exhibit "G" is a copy of a tape transcript. (Speakers: Vic Conte, John Petrie, John Walsh, Norman)

8.     Attached as Exhibit "H" is a copy of tape transcript. (Speakers: Barry Moseley, Vic Conte, John Petrie)

9.     Attached as Exhibit "I" is a copy of a Cue-10 report dated September 8, 1998.

10.  Attached as Exhibit "J" is a copy of a Cue 10 report dated September.10, 1998.

11.  Attached as Exhibit "K" is a copy of a computer tickler system entry.

12.  Attached as Exhibit "L" is a copy of an undercollateralized report. (Stock Valued at 90%)

13.  Attached as Exhibit "M" is a copy of an undercollaterized report. (Stock Valued at 100%)

14.  Attached as Exhibit "N" is a copy of an account statement of Victor T. Conte for the period of 10/01/94 through 10/31/94.

15.  Attached as Exhibit "O" is a copy of a receipt for check disbursement from Mr. Conte's loan account.

16.  Attached as Exhibit "P" is a copy of correspondence from Charles Porten, CFA dated December 28, 2002.

17.  Attached as Exhibit "Q" is a copy of the NASD Exit Conference Summary Form.

18.  Attached as Exhibit "R" is a copy of correspondence from John Walsh to Dexter Tom, NASD dated February 15, 2000.

19.  Attached as Exhibit "S" is a copy of correspondence from John Walsh to Dexter Tom, NASD dated March 6, 2000.

20.  Attached as Exhibit "T" is a of the NCUA Examination Report.

21.  Attached as Exhibit "U" is a copy of Dorsa & Associates, Inc. Draft Policies and Procedures.

22.  Attached as Exhibit "V" is a copy of Defendant's Request for Admissions.

23. Attached as Exhibit "W" is a copy of Plaintiff's Response to Defendant's Request for Admissions.

24. Attached as Exhibit "X" is a copy of the secured loan application dated October 11, 1994.

25. Attached as Exhibit "Y" is a copy of the NCUA Policies and Procedures Part 712 and NCUA Letter to Credit Unions Number 150.

26. Defendant US Alliance asserts that Conte entered into a stock secured loan agreement in 1994 comprised of Exhibits 7a, 7b, and 7c to Conte's deposition that controls the resolution of this dispute. (Attached as Exhibit "X")

27. This assertion is in error for the following reasons.

    a. On October 11, 1994, Conte borrowed $25,000 from the credit to lend to his son, Damon Conte, for a truck loan. Attached as Exhibit "N" is Conte's credit union statement, showing the increase in his loan account and the cash disbursement. Also attached as Exhibit "O" is the receipt received by Conte with the $25,000 check, which says, "demand loan, callable on 7 days notice".

    b. In Conte's deposition, the relevant pages are attached as Exhibit "A", at page 63, line 13, Conte specifically testifies that he does not remember receiving 7a or 7b when he signed 7c.

    c. US Alliance admits in Ambrose's deposition at page 15, line 21, the relevant pages of which are attached as Exhibit "B", that

3

they have no record of Conte ever receiving 7a or 7b or that either
was in any file related to him.

28.    US Alliance asserts that David Brody gave Conte a dollar amount needed to
cure his undercollateralized position on September 8, 1998, and a demand that
Conte do so immediately. This assertion is also in error.

    a.    David Brody testified in his deposition, the relevant pages of which
are attached as Exhibit "D", that he did not remember telling Conte
the dollar amount necessary to cure the undercollateralized .
position. Further, the computer tickler system had no record of that
disclosure being made, but did indicate that Conte had offered to
resolve that matter in two days. (Attached as Exhibit "K")

    b.    Further Conte testified in his Affidavit submitted herewith that Brody
never provided that information or asked him to take any specific
action.

29.    US Alliance presents transcripts of certain tapes as evidence of the events which
transpired between Conte and the Credit Union. However, these tapes are at
best an incomplete version, and therefore, a suspect version of the events that
transpired.

    a.    Walsh testified that he spoke with Conte before September 10, 1998.
See Walsh deposition, the relevant pages of which are attached as
Exhibit "C". Further, Walsh testified that all incoming and outgoing calls

4

were taped recorded. However, US Alliance has never produced any evidence of Walsh's purported calls to Conte. Conte testified he had never spoken to Walsh before September 10.

b.  US Alliance asserts that Brody told Conte the dollar amount need to cure the undercollaterlized position on September 8, 1998, and that calls to and from Brody's department were also taped. Yet, no such tape has been produced.

c.  Conte describes in his deposition and in his affidavit a conversation with Walsh on the morning of September 10, 1998, during which Walsh expresses surprise that Conte has IRA assets in the credit union and says, "You're raising some very good issues" when Conte asks if the credit union has considered the tax impact of the liquidation in establishing the manner of the liquidation. No such taped conversation has been produced.

d.  Finally, Ambrose in his deposition describes the difficulty that US Alliance is having finding tapes because they are not indexed saying, "…those are not time-stamped. It does not help us find when the call has been taped". (See attached Exhibit "B" page 144, lines 2-3)

The failure to produce these critical conversations raises an inference that the contents of the tapes would be adverse to US Alliance's position.

Dated: May 15, 2003

Elisabeth Seieroe Maurer

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------X
VICTOR T. CONTE,                                  :    Civil Action No.
    Plaintiff,                                       :    3:01 CV 463 (EBB)
v.                                                :
                                                 :    **CERTIFICATION**
US ALLIANCE FEDERAL CREDIT UNION,  :
AFFINA BROKERAGE SERVICES, INC.,  :
ROBERT AMBROSE, and JOHN WALSH,  :    May 16, 2003
    Defendants.                                  :
-----------------------------------------------------X

    I hereby certify that a copy of the foregoing Affirmatioin of Elisabeth Seieroe

Maurer has been sent, via facsimile and Federal Express, on this 16th day of May,

2003, to the following counsel and pro se parties of record.

Martin P. Unger, Esq.
Certilman Balin Adler
90 Merrick Ave
East Meadow, NY 11554

Elisabeth Seieroe Maurer