## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| **VICTOR T. CONTE,** | : | |
| Plaintiff, | : | **Civil Action No.** |
| v. | : | **3:01 CV 463 (EBB)** |
| | : | |
| **US ALLIANCE FEDERAL CREDIT UNION,** | : | **Affirmation** |
| **AFFINA BROKERAGE SERVICES, INC.,** | : | |
| **ROBERT AMBROSE, and JOHN WALSH,** | : | |
| Defendants. | : | **May 7, 2004** |

Elisabeth Seieroe Maurer, being duly sworn, hereby affirms under penalties of perjury:

1.    I make this affirmation in support of Plaintiff Victor Conte's Motion for Sanctions seeking the following relief:

An order sanctioning Defendant US Alliance Federal Credit Union ("US Alliance") pursuant to Rule 37 of the Federal Rules of Civil Procedure due to US Alliance's failure to comply with this Court's Orders dated April 23, 2004 and April 27, 2004. An order sanctioning Defendant US Alliance Federal Credit Union ("US Alliance" or "Defendant") pursuant to Rule 37 of the Federal Rules of Civil Procedure due to US Alliance's failure to make the mandatory disclosures of insurance information as set forth in Rule 26(a)(1)(D).

2.    On or about June 21, 2001, Defendant submitted an "Initial Disclosure" (**Exhibit "A"**) pursuant to Rule 26(a)(1)(D), indicating among other things that "there are no relevant insurance agreements covering US Alliance or Affina". US Alliance has not produced any insurance documentation to date.

3.      On April 23, 2004, This Court issued an Order (attached hereto as **Exhibit "B"**) stating that Defendant is "three years tardy for compliance with" the disclosure mandated by Federal R. Civ. Procedure 26(a)(1)(D) of "any insurance Agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment". That Order directed Defendant to produce such information at the offices of Plaintiff's counsel on or before May 3, 2004. That Order also warned Defendant's counsel about the consequences of Defendant's further failure to comply with the Court's Order, stating "The Court will not tolerate such obstreperous conduct on the part of defense counsel". (See Exhibit "B" hereto, p. 1.)

4.      Defendant's counsel on or about April 26, 2004 submitted a letter (attached hereto as **Exhibit "C"**) to the Court, which requested that the Court withdraw its April 23, 2004 Order because "there are no…documents" to disclose as directed in the Court's April 23, 2004, Order.

5.      On April 27, 2004, this Court issued another Order (**Exhibit "D"**) mandating that Defendant on or before May 6, 2004, "submit an affidavit, for the Court's review" addressing various questions regarding whether and to what extent Defendant had insurance coverage as required by the National Credit Union Association.

6.      On April 28, 2004, I advised the Court in the attached letter (**Exhibit "E"** hereto) that The National Credit Union Administration's Rules and Regulations, and the National Credit Union Administration's *Federal Credit Union Handbook*

require federal credit unions like US Alliance to obtain adequate surety bond

coverage to protect it from direct losses resulting from dishonest and fraudulent

acts of credit union officials and employees, must secure other insurance to

protect the credit union's interest including fire, comprehensive, **liability** and

automobile insurance, and under certain circumstances must obtain coverage

above and beyond the minimum coverage defined in those regulations.

(Emphasis added)

7.      In response to the Court's April 27, 2004 Order, Defendant's counsel

Martin Unger submitted an affidavit dated May 5, 2004 (attached hereto as

**Exhibit "F"**).  A letter attached to that affidavit dated May 24, 2001 from US

Alliance's insurance carrier CUMIS, clearly indicates that as of June 21, 2001,

the date on which US Alliance made its Rule 26(a)(1) disclosure, CUMIS was

defending John Walsh and Robert Ambrose, employees of Defendant, who were

Defendants in this case at the time, pursuant to an insurance policy issued by

CUMIS.  That letter also discloses that bond coverage and other insurance

policies exist between CUMIS and US Alliance, such as by way of example,

"Business Liability Policy, CUMIS Credit Union Bond" and "other contract[s] of

insurance issued by CUMIS to the credit union" and that CUMIS had denied US

Alliance's request to defend and indemnify it against Plaintiff's claims.  (See

Exhibit "E" hereto, Unger Affidavit (Exhibit B attached thereto).  Other than the

above CUMIS letter, no other insurance documentation has been produced by

Defendant to Plaintiff or this Court.  Incredibly, Attorney Unger in that affidavit

states:

> I believe that the foregoing provides full and complete responses to the information sought by the interrogatories contained in the Order. Indeed, in an effort to accommodate the Court, <u>I have gone well beyond the bounds of the information sought by the Court in order to ensure that the Court has complete information on the subject.</u>

(Emphasis added).

8.    To date, Defendant has not produced any insurance agreements as required by this Court's Orders dated April 23 and 27, 2004, and Federal Rule of Civil Procedure 26(a)(1)(D).

9.    Plaintiff's receipt of attorney Unger's above-referenced affidavit dated May 5, 2004, was the first time that Plaintiff learned that bond coverage and other insurance policies existed between an insurance company and US Alliance other than the limited knowledge that Walsh and Ambrose were being defended by an unidentified insurance company.   Without having this knowledge at the time it was required to be disclosed almost 2 ¾ years ago, Plaintiff is now faced with the prospect of having to file a second suit to litigate coverage with the insurance carrier.

10.    Based on US Alliance's willful, continuing failure to comply with this Court's Orders dated April 23, 2004 and April 27, 2004, and with Rule 26(a)(1)(D) after 2 ¾ years, Plaintiff urges the Court to issue sanctions against US Alliance.

Dated:    May 7, 2004
          Ridgefield, Connecticut


_____
Elisabeth Seleroe Maurer (ct11449)

4

# EXHIBIT A

Bout 3 # 15

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

VICTOR T. CONTE,

               Plaintiff,

v.

US ALLIANCE FEDERAL CREDIT
UNION, AFFINA BROKERAGE
SERVICES, INC., ROBERT AMBROSE
and JOHN WALSH,

               Defendants.

Case No. 3:01 CV 463 (SRU)

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## INITIAL DISCLOSURE OF DEFENDANTS
## USALLIANCE FEDERAL CREDIT UNION
## AND AFFINA BROKERAGE SERVICES, INC.
## PURSUANT TO RULE 26(a)(1)

Defendants USAlliance Federal USAlliance ("USAlliance") and Affina Brokerage

Services, Inc. ("Affina"), by and through their undersigned counsel, hereby submit their initial

disclosure pursuant to Rule 26(a)(1).

**A.** The name and, if known, the address and telephone number of each individual likely

to have discoverable information relevant to disputed facts alleged with particularity in the

pleadings identifying the subjects of the information.

RESPONSE:

1.    **Victor T. Conte**, P.O. Box 6002, Erie, PA 16512; information regarding the

        allegations contained in his Complaint.

2.    **John Walsh**, 600 Midland Avenue, Rye, NY 10580; information regarding Affina's customers and his contacts with plaintiff.

3.    **Robert Ambrose**, 600 Midland Avenue, Rye, NY 10580; information regarding plaintiff's accounts and the activity therein at USAlliance as well as the basis for the decision to liquidate securities in plaintiff's Stock Secured Loan Account.

4.    **Michael Brody**, 600 Midland Avenue, Rye, NY 10580; contacts with plaintiff particularly on September 8, 1998 regarding the default in plaintiff's Stock Secured Loan Account.

**B.** A copy of, or description by category and location of, all documents, data compilations, and tangible things that are in possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings.

RESPONSE:

Copies of documents in the possession, custody or control of USAlliance and/or Affina that may be used to support defendants' defenses to the complaint are annexed hereto as Exhibits A through F.

**C.** A computation of any category of damages claimed by the disclosing party, making available for inspection and copying, as under Rule 34 of the Federal Rules of Civil Procedure, the documents or other evidentiary materials, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

RESPONSE:

Neither USAlliance nor Affina claim any damages.

**D.**    For inspection and copying, as under Rule 34 of the Federal Rules of Civil Procedure, any insurance Agreement under which any person carrying on an insurance business

2

may be liable to satisfy part or all of a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

RESPONSE:

    There are no relevant insurance agreements covering USAlliance or Affina.

Dated: New York, New York
       June 21, 2001

               Defendants USAlliance Federal Credit Union and
               Affina Brokerage Services, Inc.

               By:                                    
                  Martin P. Unger
                  Federal Bar No. ct 22624
          BLANK ROME TENZER GREENBLATT LLP
               The Chrysler Building
               405 Lexington Avenue
               New York, New York 10174
               (212) 885-5000
               and

               Frederick S. Gold
               Federal Bar No. ct 03560
               Andrew M. Zeitlin
               Federal Bar No. ct 21386
        SHIPMAN & GOODWIN LLP
               One Landmark Square
               Stamford, CT 06901-2676
               (203) 324-8111

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT    FILED

                                    APR 23   2 23 PM '04

VICTOR T. CONTE,                    U.S DISTRICT COURT
          Plaintiff    :            NEW HAVEN, CONN.
                       :
                       :
    v.                 :    3:01-CV-463 (EBB)
                       :
                       :
US ALLIANCE FEDERAL CREDIT  :
UNION, ET AL,          :
          Defendants   :


                        ORDER

    Federal Rule of Civil Procedure 26(a)(1) is entitled,

"Initial Disclosures" and provides, in pertinent part, that "a

party must, without awaiting a discovery request, provide to the

other parties", inter alios, that information set forth in

subsection (a)(1)(D)(emphasis added).

    Fed.R.Civ.P. 26(a)(1)(D) mandates the disclosure to

Plaintiff herein "for inspection and copying as under Rule 34 any

insurance agreement under which any person carrying on an

insurance business may be liable to satisfy part or all of a

judgment which may be entered in the action or to indemnify or

reimburse for payments made to satisfy the judgment."

    The Defendants are now three years tardy for compliance with

this mandated disclosure.  The Court will not tolerate such

obstreperous conduct on the part of defense counsel.

    Accordingly, it is hereby ORDERED that, on or before May 3,

2004, Defendants shall comply with this required disclosure by

bringing such documents to the law offices of Plaintiff's counsel

in order that she may inspect and copy the records. If the documents are voluminous, defense counsel shall prepare a complete list of all insurance agreements which fall within the purview of Rule 26(a)(1)(D), such list to include all parties to the insurance agreement, the contract identification number, the terms of coverage, and a summary of all coverage thereunder.

The Court shall make itself available on May 3, 2004, for conference call, if required.

This is a final ORDER, which shall not be modified by this Court, except for extraordinary good cause.

SO ORDERED

ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 23 day of April, 2004.

2

# EXHIBIT C



CERTILMAN BALIN
ATTORNEYS

90 MERRICK AVENUE
EAST MEADOW, NY 11554
PHONE: 516.296.7000 • FAX: 516.296.7111
www.certilmanbalin.com

MARTIN P. UNGER
PARTNER
DIRECT DIAL: 516.296.7004
munger@certilmanbalin.com

April 26, 2004

**Via Federal Express**
Hon. Ellen Bree Burns, Senior Judge
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

      Re:    Case No. 3:01-cv-463
               Conte v. US Alliance Federal Credit Union

Dear Judge Burns:

       I am in receipt of your Order of April 23, 2004 accusing USAlliance of failing to provide insurance agreements as required by Rule 26(a)(1)(D). I must say I was taken aback by the tone of Your Honor's Order particularly the portion that states: "The Court will not tolerate such obstreperous conduct on the part of defense counsel." Attached hereto (without exhibits), is a copy of the "Initial Disclosure of the Defendants USAlliance Federal Credit Union and Affina Brokerage Services, Inc. [then a party], pursuant to Rule 26(a)(1)" dated June 21, 2001, timely served at that time. "D" of that document relates specifically to Subsection (a)(1)(D) of Rule 26 of the Federal Rules of Civil Procedure, the response to which states: "There are no relevant insurance agreements covering USAlliance or Affina."

       Under the circumstances, I respectfully request that Your Honor withdraw the above Order, specifically making note that defense counsel has not engaged in the "obstreperous conduct," charged by the Court. Since there are no such documents, as was disclosed in the

iManage:1554252.1



Initial Disclosure, dated June 21, 2001, I shall assume that further compliance with the disclosure in that regard ordered by the Court in the Order discussed herein, is not required.

Respectfully,

Martin P. Unger

MPU:ed
enc.
cc: Elisabeth Seieroe Maurer, Esq.
    Andrew M. Zeitlin, Esq.

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT    FILED

VICTOR T. CONTE,                                    APR 29  12 01 PM '04
                    Plaintiff    :
                                 :                  U.S. DISTRICT COURT
                                 :                  NEW HAVEN, CONN
        v.                       :    3:01-CV-463 (EBB)
                                 :
                                 : .
US ALLIANCE FEDERAL CREDIT       :
UNION,                           :
                    Defendant    :

## ORDER

On or before May 6, 2004, defense counsel shall submit an
affidavit, for the Court's review, as to the following:

1) Is Defendant herein a member of the National Credit Union
Association ?

2) If so, the insurance offered, if any, to Defendant
through that Association.

3) If insurance does exist through the Association, why is
Defendant allegedly not seeking protection therefrom ?

4) In the Deposition of former Defendant, Robert Ambrose,
taken on October 23, 2002, the following question and response
were recorded:

> Q.  Referring to the Item Number 21, any
>     policy of insurance over access [sic]
>     that may provide coverage in this
>     matter
>
>     Did you look for those documents ?
>
> A. . . . Coverage has been denied by our

bond company. . . .

Deposition of Robert Andrews (October 23, 2002) at 122 L: 15-18;
20.

    5.  Defense counsel is hereby ordered to provide a copy of
the declination letter from the bond company, including the
reasons therefore.

    6.  Whether Defendant is being defended by any insurance
company or bond company under a reservation of rights. Defense
counsel is hereby ordered to provide a copy of such supporting
documentation, if any.

SO ORDERED



ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this _27_ day of April, 2004.

2

# EXHIBIT E

LAW OFFICES OF
**ELISABETH SEIEROE MAURER, PC**

ELISABETH SEIEROE MAURER: CT, NY, IL
EVA M. PUORRO: CT, NY, NJ

DANIEL P. HUNSBERGER
Of Counsel

Paralegals
GLORIA A. STEARNS
RITA L. CONCEPCION

871 ETHAN ALLEN HIGHWAY, SUITE 202
RIDGEFIELD, CT 06877

TEL: 203-438-1388
FAX: 203-431-0357
e-mail: esmaurer@esmlaw.net

April 28, 2004

The Honorable Ellen Bree Burns
United States District Court Senior Judge
United States District Court of Connecticut
141 Church Street
New Haven, CT 06510

    **RE:  Victor T. Conte v. US Alliance Federal Credit Union, et al.
          Civil Case No. 301 CV-463 (EBB)**

Dear Judge Burns:

I am writing with respect to the orders that Your Honor this week issued mandating that US Alliance produce documents and information concerning its insurance/bond coverage during the relevant period.

I enclose for Your Honor's reference Part 713 of the National Credit Union Administration's Rules and Regulations titled *Fidelity Bond and Insurance Coverage for Federal Credit Unions* (dated November 2001) (2 pages total), and excerpts (5 pages total) the National Credit Union Administration's *Federal Credit Union Handbook* (Rev. 1999), which provide further details regarding US Alliance Federal Credit Union's duties and responsibilities to obtain insurance and bond coverage.

The enclosed section of the *Federal Credit Union Handbook* (Rev. 1999) entitled "Surety Bond and Insurance Coverage", provides as follows:

> A federal credit union is <u>required</u> to obtain adequate surety bond coverage to protect it from direct losses resulting from dishonest and fraudulent acts of officials and employees from losses such a [sic] theft and holdup caused by persons outside the credit union.  Part 713

The Honorable Ellen Bree Burns
United States District Court Senior Judge
United States District Court of Connecticut
April 28, 2004
Page 2 of 3

> of the NCUA Rules and Regulations prescribes the required minimum
> coverage and provide that the board of directors must review and
> determine the adequacy of the credit union's bond protection at least
> annually.
>
> The board of directors also has the important responsibility of securing
> other insurance to protect the credit union's interest including fire,
> comprehensive, <u>liability</u> and automobile insurance.

*Federal Credit Union Handbook* (Rev. 1999), "Surety Bond and Insurance
Coverage" (emphasis added).

Part 713 of the Federal of the NCUA Rules and Regulations, titled "Fidelity
Bond and Insurance Coverage, is also instructive in this regard. This section
states, *inter alia*, that

> The board of directors of each Federal credit union must at least
> annually review its fidelity and other insurance coverage to ensure that
> it is adequate in relation to the potential risks facing the credit union
> and the minimum requirements set by the board.
>
> NCUA Rules and Regulations, §713.2.

Part 713 further states that:

> At a minimum...[Federal credit unions'] bond coverage must:
>
> > (a) Be purchased in an individual policy from a company holding
> > a certificate of authority from the Secretary of Treasury; and
> >
> > (b) include fidelity bonds that cover fraud and dishonesty by all
> > employees, directors, officers, supervisory committee
> > members, and credit committee members.
>
> NCUA Rules and Regulations, §713.3.

The Honorable Ellen Bree Burns
United States District Court Senior Judge
United States District Court of Connecticut
April 28, 2004
Page 3 of 3

As also indicated in this Part, "the minimum required amount of fidelity bond coverage for any single loss is computed based on a Federal Credit Union's total assets". NCUA Rules and Regulations, §713.5(a).

Part 713 also provides details about circumstances under which Federal credit unions should increase their coverage. For example, this part sets for the situations in which Federal credit unions should maintain coverage above the minimum coverage defined in Part 713. NCUA Rules and Regulations, §713.5(b) and (c). Along this same vein, Part 713 authorizes the NCUA Board to "require additional coverage when the Board determines that a credit union's coverage is inadequate". NCUA Rules and Regulations, §713.7.

Respectfully Submitted,

Law Offices of Elisabeth Seieroe Maurer, PC

Elisabeth Seieroe Maurer

Enclosure

BY FACSIMILE

cc: Martin P. Unger, Esq. (by facsimile)
    Andrew M. Zeitlin, Esq. (by facsimile)



National Credit Union Administration

# Federal Credit Union
# Handbook

Prepared by the Office of
Examination and Insurance

NCUA-8055 (Rev 1999) M-4035

## Table of Contents

|  |  | Page |
|---|---|---|
| **Foreword** |  | ii |
| Preface |  | iii |
| Part I | Federal Credit Unions | 1 |
| Part II | Organizational Structure and Control | 5 |
| Part III | Member Services | 11 |
| Part IV | Operational Requirements | 15 |
| Part V | Management | 19 |
| Part VI | NCUAFunds and Programs | 29 |
| Part VII | Other Laws Affecting Federal Credit Unions | 33 |
| Part VIII | Conflict of Interest | 39 |
| Part IX | Other Procedures and Supplemental Information | 43 |
| Index |  | 47 |
| Regional Offices |  | 57 |

i

## Foreword

The Federal Credit Union Handbook is intended to assist the board of directors in conducting the credit union's affairs. Since the Federal Credit Union Handbook covers a wide range of subjects, its contents should also prove useful to credit union employees and committee members in carrying out their duties and responsibilities.

The Handbook is intended as a general reference. Accordingly, the reader is encouraged to review and become familiar with other National Credit Union Administration publications and the laws and regulations that apply to federal credit unions.

## Preface

In the early twentieth century, credit needs of the urban working classes in the United States were largely neglected by established financial institutions. For the most part, the average worker had nowhere to turn except to the usurious money lenders of the day. This growing dependency complicated the economic life of the average consumer and gave rise to the development and formation of a cooperative credit system in the United States, an idea originating in Europe and imported to North America in 1900. In 1908, the first legally chartered cooperative credit society was established in Manchester, New Hampshire by a special act of the state's legislature. The following year, the first complete credit union act, the Massachusetts Credit Union Act, became law in Massachusetts. By 1933, enactment of state laws permitting formation of credit unions had been largely accomplished. In 1934, the Federal Credit Union Act was signed into law, giving further impetus to the movement.

The post World War II era gave rise to an enormous appetite for consumer goods and an attendant need for consumer credit. Credit unions met this need to an increasing extent and expanded rapidly. The credit union system became a recognized social and economic force in the United States. By the end of 1998, over 73.5 million people were members of credit unions.

Credit unions differ from other financial institutions in that they are cooperative associations organized to serve members with a common bond of employment, association, or residence. Another characteristic that sets them apart is voluntarism. The founders of the movement believed that the organization and operation of credit unions should be accomplished chiefly by volunteers.

Credit unions are organized under a dual-chartering system of federal and state laws. Both types are characteristically similar in purpose: to promote thrift among their members and to create for them a source of credit at reasonable interest rates.

iii

union should get in touch with the appropriate state agency for information and instructions.

## Surety Bond and Insurance Coverage

A federal credit union is required to obtain adequate surety bond coverage to protect it from direct losses resulting from dishonest and fraudulent acts of officials and employees and from losses such a theft and holdup caused by persons outside the credit union. Part 713 of NCUARules and Regulations prescribes the required minimum coverage and provides that the board of directors must review and determine the adequacy of the credit union's bond protection at least annually.

The board of directors also has the important responsibility of securing other insurance to protect the credit union's interest including fire, comprehensive, liability, and automobile insurance.

## Records Preservation Program

A federal credit union is required to establish a records preservation program for the off-site storage of duplicate vital records which can be used for reconstruction purposes in the event of a catastrophe. The minimum requirements are prescribed in Part 749 of NCUARules and Regulations.

## Security Program

Each federal credit union is required to institute a written security program in accordance with Part 748 of NCUARules and Regulations to protect the credit union from robberies, burglaries, larcenies, and embezzlements and to assist in the identification of persons who commit such crimes.

17

# Part 713

## § 713.1   What is the scope of this section?

This section provides the requirements for fidelity bonds for Federal credit union employees and officials and for other insurance coverage for losses such as theft, holdup, vandalism, etc., caused by persons outside the credit union.

## § 713.2   What are the responsibilities of a credit union's board of directors under this section?

The board of directors of each Federal credit union must at least annually review its fidelity and other insurance coverage to ensure that it is adequate in relation to the potential risks facing the credit union and the minimum requirements set by the Board.

## § 713.3   What bond coverage must a credit union have?

At a minimum, your bond coverage must:

(a) Be purchased in an individual policy from a company holding a certificate of authority from the Secretary of the Treasury; and

(b) Include fidelity bonds that cover fraud and dishonesty by all employees, directors, officers, supervisory committee members, and credit committee members.

## § 713.4   What bond forms may be used?

(a) The following basic bonds may be used without prior NCUA Board approval:

| Credit union form No. | Carrier |
| --- | --- |
| Credit Union Blanket Bond Standard Form 23 of the Surety Association of America (revised May 1950). | Various. |
| Extended Form 23 | USFG. |
| 100 | CUMIS (only approved for corporate credit union use). |
| 200 | CUMIS. |
| 300 | CUMIS. |
| 400 | CUMIS. |
| AIG 23 | National Union Fire Insurance Co. of Pitts., PA. |
| Reliance Preferred Form 23 | Reliance Insurance Company. |
| Form 31 | ITT Hartford. |
| Form 24 with Credit Union Endorsement. | Continental (only approved for corporate credit union use). |

## Fidelity Bond and Insurance Coverage for Federal Credit Unions

| Credit union form No. | Carrier |
| --- | --- |
| Form 40325 | St. Paul Fire and Marine. |
| Form F2350 | Fidelity & Deposit Co. Of Maryland. |
| Form 9993 (6/97) | Progressive Casualty Insurance Co. |
| Credit Union Blanket Bond (1/96). | Cooperativas de Seguros Multiples de Puerto Rico. |

(b) To use any of the following, you need prior written approval from the Board:

(1) Any other basic bond form; or

(2) Any rider or endorsement that limits coverage of approved basic bond forms.

## § 713.5   What is the required minimum dollar amount of coverage?

(a) The minimum required amount of fidelity bond coverage for any single loss is computed based on a Federal credit union's total assets.

| Assets | Minimum bond |
| --- | --- |
| $0 to $10,000 | Coverage equal to the credit union's assets. |
| $10,001 to $1,000,000 | $10,000 for each $100,000 or fraction thereof. |
| $1,000,001 to $50,000,000 | $100,000 plus $50,000 for each million or fraction over $1,000,000. |
| $50,000,001 to $295,000,000 | $2,550,000 plus $10,000 for each million or fraction thereof over $50,000,000. |
| Over $295,000,000 | $5,000,000. |

(b) This is the minimum coverage required, but a Federal credit union's board of directors should purchase additional coverage when circumstances, such as cash on hand or cash in transit, warrant.

(c) While the above is the required minimum amount of bond coverage, credit unions should maintain increased coverage equal to the greater

of either of the following amounts within thirty days of discovery of the need for such increase:

(1) The amount of the daily cash fund, i.e. daily cash plus anticipated daily money receipts on the credit union's premises, or

(2) The total amount of the credit union's money in transit in any one shipment.

(3) Increased coverage is not required pursuant to paragraph (c) of this section, however, when the credit union temporarily increased its cash fund because of unusual events which cannot reasonably be expected to recur.

(d) Any aggregate limit of liability provided for in a fidelity bond policy must be at least twice the single loss limit of liability. This requirement does not apply to optional insurance coverage.

(e) Any proposal to reduce your required bond coverage must be approved in writing by the NCUA Board at least twenty days in advance of the proposed effective date of the reduction.

## § 713.6   What is the permissible deductible?

(a)(1) The maximum amount of allowable deductible is computed based on a Federal credit union's asset size, as follows:

| Assets | Maximum deductible |
|---|---|
| $0–$100,000 ............................ | No deductibles allowed. |
| $100,001–$250,000 ................. | $1,000. |
| $250,001–$1,000,000 ............. | $2,000. |
| Over $1,000,001 ...................... | $2,000 plus 1/1000 of total assets up to a maximum deductible of $200,000. |

(2) The deductibles may apply to one or more insurance clauses in a policy. Any deductibles in excess of the above amounts must receive the prior written permission of the NCUA Board.

(b) A deductible may not exceed 10 percent of a credit union's Regular Reserve unless a separate Contingency Reserve is set up for the excess. In computing the maximum deductible, valuation accounts such as the allowance for loan losses cannot be considered.

## § 713.7   May the NCUA Board require a credit union to secure additional insurance coverage?

The NCUA Board may require additional coverage when the Board determines that a credit union's current coverage is inadequate. The credit union must purchase this additional coverage within 30 days.

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____X

VICTOR T. CONTE,

                  Plaintiff,                Civil Action No.
                                            3:01 CV 463 (EBB)

     v.

US ALLIANCE FEDERAL CREDIT UNION,        AFFIDAVIT OF
AFFINA BROKERAGE SERVICES, INC.,          MARTIN P. UNGER
ROBERT AMBROSE and JOHN WALSH,

                  Defendants.

_____X

STATE OF NEW YORK   )
                  ) ss.:
COUNTY OF NASSAU   )

      MARTIN P. UNGER, being duly sworn, deposes and says:

      1.      I am one of the counsel for USAlliance Federal Credit Union ("USAlliance") in

the above-captioned action. I make this affidavit pursuant to this Court's Orders, dated April 27,

2004 and filed April 28, 2004 (the "Order") and April 29, 2004 (the "Second Order").

      2.      While USAlliance and its counsel have always fully and timely complied with this

Court's Orders, as well as with the requirements of the Federal Rules of Civil Procedure and the

Local Civil Rules for the District of Connecticut, we find it curious that the Court seeks

information concerning insurance coverage and compliance with certain National Credit Union

Administration regulations, matters not in issue in the context of the case before the Court. As

the Court now knows, pursuant to my letter of April 26, 2004, and the enclosure therewith

(Exhibit A hereto), plaintiff's counsel was advised in June 2001 that "There are no relevant

insurance agreements covering USAlliance or Affina." Further, Robert Ambrose, a Senior Vice

President of USAlliance, in his deposition testimony of October 23, 2002 referred to by the Court

in the Order, also testified in the same place: "We're not aware of any insurance." Simply put,

insurance coverage vel non is not an issue in my view, in this case.

3.    While the Court refers to the "National Credit Union Association" in the Order,

and then propounds interrogatories to USAlliance respecting that "Association," there is no such

organization that either defense counsel or USAlliance is aware of. Rather, I presume the Court

is referring to the National Credit Union Administration, and shall answer the interrogatories

contained in the Order as if that were the case. The answers follow by the numbers contained in

the Order:

> (1)    USAlliance is not a "member" of the National Credit Union
> Administration.

> (2)    The National Credit Union Administration provides insurance for deposits
> at federal credit unions such as USAlliance substantially similar to that
> offered by the Federal Deposit Insurance Corporation.

> (3)    Other than the coverage referred to in response to interrogatory 2 above,
> the National Credit Union Administration does not offer any insurance. It
> should be obvious that the coverage referred to in number 2 above is
> inapplicable.

> (4)    Number 4 of the Court's Order is merely a reference to a question and
> portion of a response contained in the deposition of Robert Ambrose,
> taken on October 23, 2002. While no answer is therefore required, as

iManage:1556021.1

above noted, the first sentence of Mr. Ambrose's answer is: "We're not aware of any insurance."

(5)     While there exists no letter "from the bond company," a copy of a declination, dated May 24, 2001, from CUMIS Insurance Society, Inc. to USAlliance is annexed hereto as Exhibit B.

(6)     USAlliance is not being defended by any "insurance company or bond company" under a reservation of rights or otherwise. There is, therefore, no documentation in this regard. Counsel has been directly and solely retained by USAlliance to represent it in this action.

4.     With respect to the Second Order, the answers follow by the numbers contained in the Second Order:

(1)     Yes.

(2)     Yes.

(3)     Yes.

5.     I believe that the foregoing provides full and complete responses to the information sought by the interrogatories contained in the Order. Indeed, in an effort to

iManage:1556021.1

accommodate the Court, I have gone well beyond the bounds of the information sought by the

Court in order to ensure that the Court has complete information on the subject.

Martin P. Unger

Sworn to before me this
5th day of May, 2004.

_____
Notary Public

ANNE MARIE BEHRMAN
Notary Public. State of New York
No. 01BE4876600
Qualified in Nassau County
Commission Expires Nov. 10, ___2006

4

# EXHIBIT A

# CERTILMAN BALIN
## ATTORNEYS

90 MERRICK AVENUE
EAST MEADOW, NY 11554
PHONE: 516.296.7000 • FAX: 516.296.7111
www.certilmanbalin.com

MARTIN P. UNGER
PARTNER
DIRECT DIAL: 516.296.7004
munger@certilmanbalin.com

April 26, 2004

**Via Federal Express**
Hon. Ellen Bree Burns, Senior Judge
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

Re:    Case No. 3:01-cv-463
       Conte v. US Alliance Federal Credit Union

Dear Judge Burns:

I am in receipt of your Order of April 23, 2004 accusing USAlliance of failing to provide insurance agreements as required by Rule 26(a)(1)(D). I must say I was taken aback by the tone of Your Honor's Order particularly the portion that states: "The Court will not tolerate such obstreperous conduct on the part of defense counsel." Attached hereto (without exhibits), is a copy of the "Initial Disclosure of the Defendants USAlliance Federal Credit Union and Affina Brokerage Services, Inc. [then a party], pursuant to Rule 26(a)(1)" dated June 21, 2001, timely served at that time. "D" of that document relates specifically to Subsection (a)(1)(D) of Rule 26 of the Federal Rules of Civil Procedure, the response to which states: "There are no relevant insurance agreements covering USAlliance or Affina."

Under the circumstances, I respectfully request that Your Honor withdraw the above Order, specifically making note that defense counsel has not engaged in the "obstreperous conduct," charged by the Court. Since there are no such documents, as was disclosed in the

iManage:1554252.1

CERTILMAN BALIN ADLER & HYMAN, LLP
SUFFOLK OFFICE: 1393 VETERANS MEMORIAL HWY., SUITE 301S, HAUPPAUGE, NY 11788 • PHONE: 631.979.3000 • FAX: 631.979.7070

CERTILMANBALIN

Initial Disclosure, dated June 21, 2001, I shall assume that further compliance with the disclosure in that regard ordered by the Court in the Order discussed herein, is not required.

Respectfully,


Martin P. Unger

MPU:ed
enc.
cc:  Elisabeth Seieroe Maurer, Esq.
     Andrew M. Zeitlin, Esq.

# UNITED STATES DISTRICT COURT
## for the
### DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

VICTOR T. CONTE,

                Plaintiff,

v.

US ALLIANCE FEDERAL CREDIT
UNION, AFFINA BROKERAGE
SERVICES, INC., ROBERT AMBROSE
and JOHN WALSH,

                Defendants.

Case No. 3:01 CV 463 (SRU)

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

## INITIAL DISCLOSURE OF DEFENDANTS
## USALLIANCE FEDERAL CREDIT UNION
## AND AFFINA BROKERAGE SERVICES, INC.
## PURSUANT TO RULE 26(a)(1)

Defendants USAlliance Federal USAlliance ("USAlliance") and Affina Brokerage

Services, Inc. ("Affina"), by and through their undersigned counsel, hereby submit their initial

disclosure pursuant to Rule 26(a)(1).

A. The name and, if known, the address and telephone number of each individual likely

to have discoverable information relevant to disputed facts alleged with particularity in the

pleadings identifying the subjects of the information.

RESPONSE:

1.     **Victor T. Conte**, P.O. Box 6002, Erie, PA 16512; information regarding the

    allegations contained in his Complaint.

2.    **John Walsh**, 600 Midland Avenue, Rye, NY 10580; information regarding

Affina's customers and his contacts with plaintiff.

3.    **Robert Ambrose**, 600 Midland Avenue, Rye, NY 10580; information regarding

plaintiff's accounts and the activity therein at USAlliance as well as the basis for

the decision to liquidate securities in plaintiff's Stock Secured Loan Account.

4.    **Michael Brody**, 600  Midland Avenue, Rye, NY 10580; contacts with plaintiff

particularly on September 8, 1998 regarding the default in plaintiff's Stock

Secured Loan Account.

**B.** A copy of, or description by category and location of, all documents, data

compilations, and tangible things that are in possession, custody, or control of the party that are

relevant to disputed facts alleged with particularity in the pleadings.

RESPONSE:

Copies of documents in the possession, custody or control of USAlliance and/or Affina

that may be used to support defendants' defenses to the complaint are annexed hereto as Exhibits

A through F.

**C.** A computation of any category of damages claimed by the disclosing party, making

available for inspection and copying, as under Rule 34 of the Federal Rules of Civil Procedure,

the documents or other evidentiary materials, not privileged or protected from disclosure, on

which such computation is based, including materials bearing on the nature and extent of injuries

suffered.

RESPONSE:

Neither USAlliance nor Affina claim any damages.

**D.**    For inspection and copying, as under Rule 34 of the Federal Rules of Civil

Procedure, any insurance Agreement under which any person carrying on an insurance business

2

may be liable to satisfy part or all of a judgment that may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

RESPONSE:

There are no relevant insurance agreements covering USAlliance or Affina.

Dated: New York, New York
    June 21, 2001

                          Defendants USAlliance Federal Credit Union and
                          Affina Brokerage Services, Inc.

                          By: _____
                             Martin P. Unger
                             Federal Bar No. ct 22624
                          BLANK ROME TENZER GREENBLATT LLP
                             The Chrysler Building
                             405 Lexington Avenue
                             New York, New York 10174
                             (212) 885-5000
                             and

                             Frederick S. Gold
                             Federal Bar No. ct 03560
                             Andrew M. Zeitlin
                             Federal Bar No. ct 21386
                          SHIPMAN & GOODWIN LLP
                             One Landmark Square
                             Stamford, CT 06901-2676
                             (203) 324-8111

3

# EXHIBIT B

Gary W. Horst
Associate Counsel
Office of General Counsel
Voice/TDD: 800/356-2644, Ext. 6051
FAX: 608-236-8098
E-Mail Address: gary.horst @ cunamutual.com



CUMIS Insurance Society, Inc.

May 24, 2001

John E. Torpey, VP Facilities & Purchasing
USAlliance Federal Credit Union
600 Midland Ave
Rye, NY 10580-3999

**Re:** **Victor T. Conte v. USAlliance Federal Credit Union, Affina Brokerage Services, Inc., Robert Ambrose and John Walsh; U S District Court for the District of Connecticut; Case No. 301CV463SRU; CUMIS Claim No. 573839**

Dear Mr. Torpey:

This will confirm your recent telephone conversation with Bob Konop with respect to the above-referenced lawsuit.

The plaintiff has basically asserted that certain of his stocks which were reportedly pledged as collateral on various loans were improperly sold by the credit union causing him a substantial loss. In his complaint, the plaintiff has made the following allegations against the credit union: Breach of Fiduciary Duty, Negligence, Fraud, Conversion, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Violation of New York General Business Law Section 349, and Violation of CGS 42-110 et seq. These allegations do not fall within the insuring clauses of the credit union's Business Liability Policy, CUMIS Credit Union Bond, or any other contract of insurance issued by CUMIS to the credit union. Thus, there is no coverage available to the credit union regarding this matter. However, as you know, we will be providing a defense to the individual defendants named in this case under the credit union's Directors, Volunteers, and Employees Coverage.

In the event that any new claims are asserted by Victor Conte, please contact me immediately. Also contact me if you have any additional questions.

Sincerely,

Gary W. Horst

GWH:lc

[573839]

P.O. Box 1084  ·  5910 Mineral Point Road  ·  Madison, WI 53701-1084
Business  608/238-5851  ·  Voice/TDD: 800/937-2644  ·  Fax: 608/238-0830

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing AFFIDAVIT OF MARTIN P. UNGER was served via Federal Express on May 5, 2004:

Elisabeth Seieroe Maurer, Esq.
871 Ethan Allen Highway, Suite 202
Ridgefield, CT 06877

Attorney for Victor T. Conte

_____
Martin P. Unger, Esq.