UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR T. CONTE, | : |
| Plaintiff, | : Civil Action No. |
| v. | : 3:01 CV 463 (EBB) |
| US ALLIANCE FEDERAL CREDIT UNION, AFFINA BROKERAGE SERVICES, INC., ROBERT AMBROSE AND JOHN WALSH | : July 2, 2004 |
| Defendants | : |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE

Law Offices of Elisabeth Seieroe Maurer, P.C.
Attorneys for Plaintiff Victor Conte
871 Ethan Allen Highway, Suite 202
Ridgefield, Connecticut 06877
(203) 438-1388

## TABLE OF CONTENTS

|      |                                                                                  | Page |
|------|----------------------------------------------------------------------------------|------|
| I.   | PORTIONS OF THIS COURT'S RULINGS ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT...  | 3, 4, 5 |
| II.  | DLJ PRINTOUTS ...................................................................| 5 |
| III. | RECORDS GENERATED BY US ALLIANCE IN ITS REGULAR COURSE OF BUSINESS ............. | 6 |
| III. | DOCUMENTS THAT US ALLIANCE RECEIVED FROM VICTOR CONTE ........................... | 7 |
| IV.  | DOCUMENTS PRODUCED BY THIRD PARTIES PURSUANT TO SUBPOENA ........................ | 8 |
|      | CONCLUSION.......................................................................| 13 |

Plaintiff Victor Conte respectfully submits this memorandum of law in support of its Motion <u>In Limine</u> for the following relief:

(1) Permitting Plaintiff to offer or solicit evidence or testimony, and make statements, directly and indirectly, at trial regarding the following documents produced to Plaintiff pursuant to various subpoenas issued during this proceeding:

    a. Documents produced by the National Association of Securities Dealers, Inc. ("NASD") regarding the NASD's regulatory examinations of US Alliance / Affina Brokerage Services ("Affina") and related findings that Defendant US Alliance Federal Credit Union ("US Alliance" or "Defendant") / Affina Brokerage violated various statutes, rules and regulations applicable to the financial industry (Plaintiff's Exhibit Nos. 657A, 657B, 658-662 for identification);

    b. Documents produced by the NASD regarding the National Credit Union Administration ("NCUA")'s regulatory examinations of US Alliance / Affina and related findings that US Alliance / Affina violated NCUA rules and regulations (Plaintiff Exhibit Nos. 690-695 for identification);

    c. Documents produced to Plaintiff by Dorsa & Associates, Inc., consisting of draft policies & procedures that Dorsa provided to US Alliance / Affina as a result of the determination of the NCUA and NASD regulatory examinations (Plaintiff Ex. Nos. 696-699 for identification).

(2) Pursuant to Rule 5 of the United States District Court, District of Connecticut Local Rules of Civil Procedure, permitting Plaintiff to file under seal the Plaintiff's Ex. Nos. 691 through 694 for identification, referenced in paragraph 1b above, without submitting those documents to the Clerk, so that the confidentiality of those documents is protected.

(3) Permitting Plaintiff to offer or solicit evidence or testimony, and make statements, directly and indirectly, at trial regarding the remainder of Plaintiff's proposed exhibits objected to by Defendant US Alliance, specified in further detail herein.

This case is very fact intensive, and involves over seven hundred and forty exhibits of documentary evidence generated during the parties' long relationship of over thirty years. Defendant has asserted objections to most of Plaintiff's over seven hundred and forty exhibits on the grounds of "relevancy and materiality" and "hearsay". (See Affirmation of Eva M. Puorro ("Puorro Aff.) accompanying this memorandum, Exhibit "A" thereto, which contains a copy of e-mails by which Defendant asserted its objections to most of Plaintiff's exhibits. See also Puorro Aff., Exhibit "C" thereto, a chart which contains in summary form of the types of exhibits to which Defendant has asserted objections, the objections asserted thereto and a list of some of the reasons why such exhibits are relevant, admissible evidence.)

Plaintiff communicated by letter with Defendant's counsel in an effort to explain why Defendant's objections to Plaintiff's exhibits have no merit. (See Puorro Aff., ¶5, and Exhibit "B" thereto). Plaintiff's counsel received no response to that letter. (Puorro Aff., ¶5.) Despite Plaintiff's efforts to explain the meritless nature of Defendant's objections to its counsel Martin Unger, Esq., Defendant persists in maintaining its objections.

Rather than waiting to have the Court address each of those objections at trial, which would take an inordinate and unreasonable amount of time, Plaintiff respectfully submits this Memorandum of Law and Affirmation of Eva M. Puorro ("Puorro Aff.") in support of its Motion In Limine so that the Court may consider and rule upon these matters before trial, thereby using this Court's scarce resources more efficiently.

The exhibits objected to by Defendant may be divided into four different categories: 1) Donaldson, Lufkin & Jenrette ("DLJ") Printouts[1] created by Victor Conte by use of a DLJ program, containing "portfolio performance" and "market summary charts" (collectively, the "DLJ printouts"); 2) US Alliance records created in the regular course of its business; 3) documents that Victor Conte submitted to US Alliance;
4) documents received by subpoena from third parties. (Puorro Aff., ¶7.)

A brief summary of the reasons why the exhibits at issue are relevant and admissible is contained in the chart attached to the Puorro Aff. as Exhibit "C" thereto. The Puorro Aff. also contains a discussion of the reasons why Defendant's objections thereto have no merit.

As illustrated below and in the Puorro Aff. accompanying this memorandum, many of the exhibits at issue directly pertain to Mr. Conte's breach of fiduciary duty and negligence claims, in light of specific rulings that this Court made on Defendant's summary judgment motions. Some of those rulings are as follows (citations have been omitted):

a) "This Court holds that the Credit Union owed a fiduciary duty to Plaintiff. To liquidate his entire stock portfolio of $2,000,000, when he was undersecured by only 4.8%, leaving him with capital gains of nearly $200,000 and a capital loss in his stock portfolio in excess of $3,000,000, was a breach of the credit union's fiduciary duty to Conte…For the same reason, Plaintiff has pleaded a viable cause of negligence". See Court's

---

[1] These DLJ printouts were generated by Mr. Conte at a DLJ web site, which draws publicly available information about stock prices and market performance from the stock market, and combines that public information with a math function. (Puorro Aff., ¶8, note 1.) That combination allows investors to use the DLJ web site for tracking the status of their portfolios on a daily basis and for tracking market performance over time. Id.

3

March 28, 2002 Ruling on Defendant's Motion for Summary Judgment, pp. 1, 2.

b) "The duty to notify Conte arises from industry standard and past practices of the Credit Union. Furthermore, a Federal Reserve System Board of Governors regulation, incorporated into the NYSE rules, provides that a broker must give a client a margin call when the value of his collateral drops below certain limits and they may allow a customer up to seven days to meet a margin call. Regulation T., 12 C.F.R. Section 220.4(3). Considering the fact that Conte was only 4.8% undersecured, the Credit Union owed him a duty to fully apprise him of this situation and give him a reasonable time to correct the deficiency, which he had sufficient savings and equity with which to do so". See id., p. 2.

c) "[C]ourts will find that a fiduciary duty was created where the bank's conduct exceeds the usual credit-debtor relationship." Court's Amended Ruling dated March 11, 2004 on Defendant's Summary Judgment Motion, p. 13.

d) "…[A] fiduciary relationship will arise between a bank and a customer of there is a confidence placed in the bank that gives it an advantage in dealing with the customer who places his trust in the bank.", Id., at pp. 13-14.

e) "…New York Courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first". Id., at p. 14.

f) "New York Courts have made clear that 'it is not mandatory that a fiduciary relationship be formalized in writing,' and 'the ongoing conduct between the parties may give rise to a fiduciary relationship that will be recognized by the courts,' regardless of a contractual relationship. Therefore, the fact that Conte signed a secured loan agreement providing that US Alliance had a right to sell his stock in the event that he became under-collateralized is not dispositive as to whether or not a fiduciary duty existed". Id., at p. 15.

g) "Conte had been a member of US Alliance for over 30 years, using a broad range of the Credit Union's banking and brokerage services. A reasonable person may find Cone's previous dealings with US Alliance created a fiduciary duty". Id.

h) "Further, one circumstance where courts have recognized that a fiduciary relationship can develop between bank and borrower is where a bank employs 'dual employees' that work for a bank and broker-subsidiary…Therefore a bank can be found to owe a fiduciary duty to its

4

customer, based on the principal-agent status of the bank and brokerage affiliate...Accordingly, a jury could find that Affina and US Alliance had an agency relationship, and any duty owed by Affina was also owed by US Alliance." <u>Id.</u>, at pp. 16-17, at 18.

As indicated below and in the accompanying Puorro Aff., these rulings should be considered when analyzing the relevance and admissibility of the exhibits to which Defendant objects.

\* \* \*

FRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence".

a) <u>DLJ Printouts</u> [2]

As indicated in further detail in the Puorro Aff. accompanying this memorandum, the DLJ Printouts that Plaintiff seeks to use at trial are relevant and material for the following reasons: (1) they illustrate that it was Mr. Conte's regular habit to not only monitor his account, but to perform calculations on his loan to asset ratio based on public information available from the market; (2) they show Mr. Conte's effort to mitigate his losses, and serve to illustrate Mr. Conte's damages; (3) they relate to Mr. Conte's breach of fiduciary duty and negligence claims, by illustrating that US Alliance did not and could not provide Mr. Conte with timely access to accurate information about his account and was incapable of handling an account of this magnitude, and that Mr. Conte was thus forced to

---

[2] See note 1, <u>supra</u>.

5

perform daily calculations to determine his account status. (See Puorro Aff., ¶¶13-17 for a detailed discussion of the relevance of the DLJ Printouts.)

Notwithstanding the relevance of these documents, Defendant objects to these documents on the grounds of hearsay and relevance. Puorro Aff., ¶¶14, 17. Defendant has also attempted without basis to limit the purposes for which these documents can be used. Id. These documents fall within the hearsay exception of Rule 803(17) of the Federal Rules of Evidence as a market report relied upon by the public.

Moreover, Defendant also arguably waived any objection to these documents. Defendant agreed without objection to Plaintiff's use of its PowerPoint presentation at trial, knowing full well that the presentation was based, to a large extent, on these same DLJ printouts. Moreover, Defendant included the DLJ printouts from July 1998 through September 9, 1998 in its own exhibit list. Thus Defendant has thus waived any objection to these documents.[3]

b) Records Generated By US Alliance in Its Regular Course of Business

Defendant has objected on "relevancy and materiality" grounds, to Plaintiff's use of certain records that were generated by US Alliance in the regular course of its business. (See Puorro Aff., ¶¶18-34, and Exhibit "C" thereto, which identify these documents by exhibit number.)

---

[3] See Puorro, Aff., Exhibit "D" thereto, which contains a letter from Elisabeth Seieroe Maurer letter to the Court dated May 14, 2004 by which Plaintiff informed the Court and Defendant in detail about the format and contents its PowerPoint presentation, including its use of these DLJ documents in that presentation. By letter dated May 24, 2004, Defendant's counsel agreed to Plaintiff's use of that PowerPoint presentation at trial, without objection. (See Puorro Aff., Exhibit "E" thereto.)

6

Those objections have no basis whatsoever. These records are relevant, material and admissible for the following reasons: (1) they illustrate and define the breadth and scope of the relationship between Mr. Conte and US Alliance, and their ongoing conduct during that time; (2) they relate to whether a fiduciary relationship developed between the parties; (3) they illustrate that it was Mr. Conte's regular habit to not only monitor his account, but to perform calculations on his loan to asset ratio based on public information available from the market; (4) they pertain to Mr. Conte's claims of breach of fiduciary duty and negligence, by illustrating an ongoing pattern of errors and misinformation by US Alliance in its handling of Mr. Conte's account. (See Puorro Aff., ¶¶18-34 for a detailed discussion of the reasons why Defendant's objections have no basis.)

Moreover, Defendant has arguably waived any objection to these documents. Defendant agreed, without objection, to Plaintiff's use of its PowerPoint presentation at trial, knowing full well that the presentation was based, to a large extent, on these US Alliance records. Defendant has thus waived any objection to Plaintiff's use of these documents at trial.[4]

c) <u>Documents that US Alliance Received from Victor Conte</u> [Pl. Ex. Nos. 154, 208 and 394A]

Defendant has objected on "relevancy and materiality" grounds, to Plaintiff's use of certain canceled checks and a letter that US Alliance received

---

[4] Like the DLJ Printouts, Defendant waived its objections to Plaintiff's use of documents generated by US Alliance in the regular course of business. After being informed that Plaintiff would base its PowerPoint presentation on these, and other, documents, Attorney Unger informed Plaintiff that Defendant has agreed to Plaintiff's use of its PowerPoint presentation at trial. (See Puorro Aff., Exhibit "D" thereto, which contains Elisabeth Seieroe Maurer's letter to the Court dated May 14, 2004, and Exhibit "E" hereto, which contains Attorney Unger's response thereto dated May 24, 2004, by which Defendant agrees to Plaintiff's use of its PowerPoint presentation at trial.)

7

from Mr. Conte. (See Puorro Aff., ¶¶35 and 36, and Exhibit "C" thereto, which identify and discuss these documents.)

Defendant's objections have no basis whatsoever. As indicated in more detail in the accompanying Puorro Aff., these documents are indeed relevant and material evidence because (1) they illustrate that it was Mr. Conte's regular practice and habit to monitor and maintain the loan to collateral ratio within US Alliance's guidelines; and (2) they illustrate that US Alliance did not intend and was incapable of handling an account the size of Mr. Conte's. (See Puorro Aff., ¶¶35-36.)

### d) Documents Produced by Third Parties Pursuant to Subpoena

1) Documents produced by the NASD relating to the NASD's Regulatory Examination of Affina and related findings on Affina [Pl. Ex. Nos. 657A, 657B, 658-662] and the NCUA's Regulatory Examination of Affina and related findings on Affina [Pl. Ex. Nos. 690-695];

2) Documents produced by Dorsa & Associates, Inc., a consultant hired by Affina, consisting of draft policies and procedures manual [Pl. Ex. Nos. 696-699];

3) Documents produced by the NASD consisting of Form BD, amendments, for Affina Brokerage Services, LLC [Pl. Ex. Nos. 663-689.]

Defendant has objected on "relevancy and materiality" grounds, to Plaintiff's use of the above documents it received from third parties by subpoena. As discussed below, and in the Puorro Aff., Defendant's objections have no merit. (See also the Puorro Aff., ¶¶37-42 for a detailed discussion about why these documents are relevant and material evidence.)

8

These documents are relevant to Mr. Conte's breach of fiduciary duty and negligence claims. As indicated above, this Court held in its most recent decision on Defendant's motion for summary judgment that a bank's actions to take in functions and responsibilities beyond the usual debtor-creditor relationship into functions normally handled by a brokerage firm, and the fact that it shares "dual employees" and roles with its affiliate, are all relevant evidence that can be considered and used by the jury in determining that a fiduciary relationship developed. (See e.g., Court's Amended Ruling dated March 11, 2004 on Defendant's Summary Judgment Motion, p. 13, 16-17, and 18.) The findings made by the NASD and NCUA in their reports state that US Alliance and Affina did not have separate corporate existences, confirm that US Alliance was in fact acting as a broker dealer in its dealings with its members.

These documents are relevant to show that US Alliance failed to fulfill its duties to Mr. Conte. For example, this Court held in its first decision on Defendant's Summary Judgment motion that US Alliance had a duty to <u>fully</u> notify and fully apprise Mr. Conte about the exact situation existing circumstances during the period at issue during which his account was undercollateralized, so that Mr. Conte would have a fair opportunity to take action to cure such undercollateralization. (See Court's March 28, 2002 Ruling on Defendant's Motion for Summary Judgment, p. 2, which held that "Considering the fact that Conte was only 4.8% undersecured, the Credit Union owed him a duty to fully apprise him of this situation and give him a reasonable time to correct the deficiency, which he had sufficient savings and equity with which to

9

do so". See id., p. 2.) The documents produced by the NASD relating to the NASD and NCUA's audits and findings show that US Alliance failed to adopt and implement supervisory policies and procedures that would ensure that its members were fully informed about matters pertaining to their account, and violated other rules designed to ensure that adequate books and records are kept of what was occurring in its members' accounts.

The NCUA and NASD materials also show that there was a distinct pattern of the improper and incompetent handling of Mr. Conte's account by US Alliance.

These documents are relevant also because they can be used by the jury to conclude that US Alliance committed negligence *per se* in its handling of Mr. Conte's account, and can be considered as additional evidence of US Alliance's negligence in its handling of Mr. Conte's account.

It is firmly established in New York that where a statute imposes a specific duty, a party's violation of that statute may be considered by the jury to be negligence *per se*. See, e.g., Elliott v. City of New York, 95 N.Y.2d 730, 734 (2001). See also Loewy v. Stuart Drug & Surgical Supply, 1999 U.S. Dist. LEXIS 5208 (S.D.N.Y. 1999) (holding that the plaintiff use defendant's violation of Medical Device Amendments to the Federal Food, Drug and Cosmetic Act of 1938 to prove negligence *per se* because plaintiff was a member of the class that such statute was intended to protect.) New York Courts also allow a party's violation of an administrative rule or regulation, or an ordinance, to be considered and used by the jury as evidence of negligence. Elliott, 95 N.Y.2d at 734

10

(holding that violation of an administrative regulation may be considered by the jury as evidence of negligence).

In their reports relating to their investigation of US Alliance / Affina, the NASD and NCUA state that US Alliance failed to comply with various federal statues, NASD Rules, and NCUA regulations, through the following conduct:

(1) SEC Rule 15c3-1 ("Net Capital Rule for Broker-Dealers") and NASD Rule 3020 ("Fidelity Bond Coverage") (by failing to comply with net capital requirements regarding required fidelity bond coverage);

(2) SEC Rule 17a-5(d)(5) ("Reports to be made by Certain Brokers and Dealers") (by failing an annual audit report late and failing to file a complete audit report);

(3) SEC Rule15c3-3 ("Customer Protection – Reserves and Custody of Securities") (by failing to file an adequate or complete audit report required therein);

(4) (4) NASD Rule 2230 and SEC Rule 10b-10(a)(2)(1)(A) (both of which address what confirmations to customers must contain) (by failing to disclose adequate information on its confirmations regarding its status as an agent among other things);

(5) NASD Rule 2860 (b)(20)(A)  (by failing to appoint one of its officers as a Senior Registered Options Principal);

(6) SEC Rule 17a-13(b)(1) and (d) (Quarterly Security Counts to be Made by Certain Brokers and Dealers) (by failing to have adequate supervision during examination, count, verification and comparison of all securities held);

(7) SEC Rule 17a-3(a)(4) ("Books and Records" rule) (by failing to maintain an keep adequate records of all securities counts);

(8) NASD Rule 2280(a) (which requires that certain information relating to investor education be provided to clients) (by failing to provide its customers at least annually with such information);

(9) SEC Rule 17f-2 ("Fingerprinting of securities personnel") (by failing to keep and maintain fingerprint records of personnel that signed checks and/or had access to books and records);

(10) NASD Rule 2340(a) ("Customer Account Statements')(by failing to send out customer statements);

(11) NASD Rule 3010 ("Supervision") (through its unawareness of, and failure to comply with requirements to supervise and monitor its records for limits on exercise of options and positions in options);

(12) NASD Rule 3010 ("Supervision") and 2860(b)(5)(A)(1) ("Reporting of Options Positions") (by failing to identify reportable options positions and failure to send required report);

(13) Part 712 of the NCUA Rules and Regulations (requiring that a credit union and its brokerage affiliate operate separately and establish a separate corporate existence) (by failing to operate in a manner that demonstrates a separate corporate existence and by being unable to provide a written legal opinion stating that Affina Brokerage is operated in a manner that limits the credit union's exposure to no more than the loss of funds invested in, or lent to, its the brokerage affiliate ("CUSO"); and

(14) NCUA Safe & Sound Business Practices (by failing to prepare financial statements based on the proper fiscal year, by failing to have the required contract Affina Brokerage Services LLC, and failing to draft and provide a management agreement that clearly outlines the terms and conditions of the credit union and Affina brokerage relationship).

See Plaintiff's Exhibit 657B for identification, containing the NASD's findings. (Plaintiff has requested in this Motion the Court's permission to submit the NCUA documents [Pl. Ex. No. 690-695] under seal, without their submission to the Clerk, in order to preserve their confidentiality, and thus does not enclose them with this motion pending the Court's decision on this request).

As indicated above, there is significant evidence that US Alliance violated statutes, rules and regulations applicable to the securities and financial industry, the purpose of which are to ensure, among other things, that clients and their assets are adequately protected against wrongdoing like that which US Alliance committed against Mr. Conte. As such, evidence of US Alliance's violation of

same can be used by the jury as proof of negligence per se, and evidence that US Alliance committed negligence in its dealings with Mr. Conte.

For similar reasons, the documents produced by Dorsa & Associates, Inc., a consultant hired by Affina in response to the NASD's and NCUA's findings, are relevant to matters at issue in this proceeding. They illustrate that US Alliance / Affina did not develop or implement sufficient policies and procedures as required by statutes, rules and regulations applicable to the financial industry.

Finally, Forms BD and amendments thereto, produced to Plaintiff by the NASD pursuant to subpoena, illustrate that it was indeed feasible for US Alliance and Affina to take precautionary measures to ensure that they were in compliance with statutes, rules and regulations governing the securities industry and applicable NCUA regulations.

## CONCLUSION

For the reasons stated above and in his prior pleadings, Plaintiff Victor Conte respectfully submits that this Motion In Limine is well taken and should be granted in its entirety.

```
                              PLAINTIFF
                              VICTOR T. CONTE

                    BY:     _____
                            Elisabeth Seieroe Maurer (ct11445)
                            Eva M. Puorro (ct25772)
                            Law Offices of Elisabeth Seieroe Maurer, PC
                            871 Ethan Allen Hwy., Suite 202
                            Ridgefield, CT 06877
                            Phone (203) 438-1388
                            Fax (203) 431-0357
                            e-mail: esmaurer@esmlaw.net
```