# EXHIBIT A

**Elisabeth Maurer**

| | |
|---|---|
| **From:** | MARTIN UNGER [munger@certilmanbalin.com] |
| **Sent:** | Monday, June 21, 2004 2:43 PM |
| **To:** | esmaurer@esmlaw.net |
| **Cc:** | esmith@ltke.com |
| **Subject:** | conte v us alliance |

   please be advised that defendant will be objecting to the intorduction into evidence of
the following documents contained on plaintiff's exhibit list (revised) on grounds of
relevancy and materiality: 1-6, 10-79, 95, 96, 109-115, 154-156, 163-165, 208, 212-219,
286, 313-314P, 315-381, 387, 389-391, 393-399, 412-448, 456-459, 469, 472-474, 507, 529-
544, 551, 552, 573-580, 586-592, 600-605, 613-618, 621A, 640-699, 701-730, 732-742.
                                                                as to defendants
exhibits, as faxed to you today,  iassume you have no problem with exhibit b(1).  exhibit
g was sent to you. as to any of the otheres you object to, we will mark them for id only
and offer those we determine to at trial.                           i will sign your
proposed confidentiality stip with one change-  the redactions provided for in par 3 will
be done by plaintiff with a copy forwarded to defendant for approval.  with that change i
will sign it and forward the docs to you.

1

**Elisabeth Maurer**

| | |
|---|---|
| **From:** | MARTIN UNGER [munger@certilmanbalin.com] |
| **Sent:** | Monday, June 21, 2004 2:53 PM |
| **To:** | esmaurer@esmlaw.net |
| **Cc:** | esmith@ltke.com |
| **Subject:** | conte v usalliance |

with regard to your fax today, you are in error as to what is required. the parties are required to file a joint trial memo which contains material by plaintiff and by defendant. the form is prescribed by the court. the only things we need agree on are stipulated facts and estimated trial time. i will forward to you my proposed stipulated facts by thursday. you can add subtract etc. we will agree on whatever we can. the rest will be fact contentions. i will accomodate your schedule and send you defendant's portions of the required joint trial memo on june 29 which you need only incorporate with yours and file on june 30. i of course expect to see it before it is filed. if it is ok i will authorize you to sign for me to expedite matters. please let me know if this is agreed to.

**Elisabeth Maurer**

| | |
|---|---|
| **From:** | MARTIN UNGER [munger@certilmanbalin.com] |
| **Sent:** | Thursday, June 24, 2004 9:44 AM |
| **To:** | esmaurer@esmlaw.net |
| **Cc:** | esmith@ltke.com |
| **Subject:** | conte v. usalliance |

with respect to your revised exhibit list-june 23, 2004 and further to my e-mails of june 21, 2004, which remain effective, defendant will be objecting additionally to plaintiff's proposed exhibits 382, 383, 384, 388, 392A, 531A, 535A, 537A, 539A, 543A, 543B,544A, 643A, 649A, 652A, 656A.                   i am still waiting to hear from you as to the number of trial days you estimate.  this is required in the joint trial memorandum we must submit under judge burns rules as well as the local rules.  do you still intend to file on june 30.  i will assume this is so unless i hear to the contrary from you.  we have until july 6 under the court order which is near what you had requested.

**Elisabeth Maurer**

| | |
|---|---|
| **From:** | MARTIN UNGER [munger@certilmanbalin.com] |
| **Sent:** | Monday, June 21, 2004 3:09 PM |
| **To:** | esmaurer@esmlaw.net |
| **Cc:** | esmith@ltke.com |
| **Subject:** | conte v usalliance |

   fruther to my e-mail today regarding plaintiff's exhibits  we will object to the
introduction of the followiing exhibits  on hearsay grounds but will permit their
introduction solely for purposes of showing how conte followed his portoflio , the dates
and handwriting on the exhibits:  80-94,97-108, 116-153, 157-162, 166-207, 209-211, 220-
234, 266-269, 275, 275A, 276, 280-281, 287-289, 291-312.

# EXHIBIT B

LAW OFFICES OF
**ELISABETH SEIEROE MAURER, PC**

ELISABETH SEIEROE MAURER: CT, NY, IL
EVA M. PUORRO: CT, NY, NJ

DANIEL P. HUNSBERGER
Of Counsel

Paralegals
GLORIA A. STEARNS
RITA L. CONCEPCION

871 ETHAN ALLEN HIGHWAY, SUITE 202
RIDGEFIELD, CT 06877

TEL: 203-438-1388
FAX: 203-431-0357
e-mail: esmaurer@esmlaw.net

June 25, 2004


Martin P. Unger
Attorney at Law
Certilman Balin
90 Merrick Avenue
East Meadow, NY  11554

**Re:  Victor T. Conte v USAlliance Federal Credit Union, et al
       Case No. 3:01 CV 463 (EBB)**

Dear Attorney Unger:

I have received your emails containing Defendant's objections to most of Plaintiff's seven hundred plus proposed exhibits.  We are writing to respond to your objections and in an effort to resolve issues raised by your e mails and avoid unnecessary motion practice.

For the reasons stated below, Defendant's hearsay objections, and objections "on grounds of relevancy and materiality" are without merit.[1]  Once you have reviewed our response to your objections, please let us know as soon as possible whether you will reconsider any of your objections.

The documents to which you object may be divided into four different categories, and are discussed in further detail below:  1) DLJ printouts created by Victor Conte by use of a DLJ program, containing "portfolio performance" and "market summary charts"; 2) US Alliance records created in the regular course of its business;  3) documents that Victor Conte submitted to US Alliance; 4) documents received by subpoena from third parties.

---

[1] This letter will describe some purposes for which the documents at issue may be offered.  However, such descriptions are not intended and should not be interpreted as an exclusive list of the purposes for using those documents at trial.

## 1) DLJ Printouts

The DLJ printouts included in Plaintiff's exhibit list include (1) charts showing Mr. Conte's daily portfolio performance[2] for the period of June – December 1998 and (2) market summary charts[3] that illustrate stock market performance over time. (Collectively, "DLJ printouts").

Defendant has objected on relevancy and materiality grounds, to Plaintiff's use of DLJ portfolio performance printouts from June 1998 and October through December 1998, and market summary charts from June 1998 and October 1998. Contrary to what Defendant asserts, all of these documents illustrate that it was Mr. Conte's habit and regular practice to not only monitor his account, but to perform calculations on his loan to asset ratio based on information available from the market.

These documents are also relevant to the issues of damages and mitigation. Defendant has asserted all along that it was Mr. Conte's obligation to manage his account, and that Mr. Conte failed to mitigate his losses. The DLJ printouts covering the period after September 10, 1998 illustrate directly the manner in which Mr. Conte made efforts to monitor his account and minimize his losses.

---

[2] Portfolio performance records from June 1998: Plaintiff Ex. ("Pl. Ex.") Nos. 13-14, 16-17; 23-24, 26-27, 29-30, 32-33, 35-36, 38-39, 41-44, 46-49, 51, 51A, 53-54, 56-57, 59-60, 62-63, 65-66, 68-69, 74-75, 77-78.
Portfolio performance records from July through September 9, 1998: Pl. Ex. Nos. 80-81, 83-84, 86-87, 89-90, 92-93, 97-98, 100-101, 103-104, 106-107, 116-117, 119-120, 122-123, 125-126, 128-129, 131-132, 134-135, 137-138, 140-141, 143-144, 146-147, 149-152, 157-158, 160-161, 166-167, 169-170, 172-173, 175-176, 178-179, 181-182, 184-185, 187-188, 190-191, 193-194, 196-197, 199-200, 202-203, 205-206, 209-210, 220-221, 223-224, 226-227, 229-230, 232-233. Portfolio performance records from September 10, 1998: Pl. Ex. Nos. 266-269, 275-275A, 276. Portfolio performance records from September 11, 1998 through September 30, 1998: Pl. Ex. Nos. 280, 287-288, 291-292, 295, 297, 299, 301, 303, 305, 307, 309, 311.
Portfolio Performance records from October 1998 through December 1998: Pl. Ex. Nos. 313, 314P, 315, 316, 317, 318, 319A, 320, 322-326, 328-332, 334, 336-337, 339-350, 351-381.

[3] Market summary charts from June 1998: Pl. Ex. Nos. 15, 18, 25, 28, 31, 34, 37, 40, 45, 50, 52, 55, 58, 61, 64, 67, 70, 76, 79.
Market summary charts from July through September 9, 1998: Pl. Ex. Nos. 82, 85, 88, 91, 94, 99, 102, 105, 108, 118, 121, 124, 127, 130, 133, 136, 139, 142, 145, 148, 153, 159, 162, 168, 171, 174, 177, 180, 183, 186, 189, 192, 195, 198, 201, 204, 207, 211, 222, 225, 228, 231, 234.
Market summary charts from September 11, 1998 through September 30, 1998: Pl. Ex. Nos. 281, 289, 293, 296, 298, 300, 302, 204, 306, 308, 310, 312.
Market summary charts from October 1998: Pl. Ex. Nos. 314, 319, 321, 327, 333, 335, 338.

All of the DLJ printouts included in Plaintiff's exhibit list are also relevant and material to Plaintiff's claims of breach of fiduciary duty and negligence. They illustrate that Mr. Conte was forced to perform calculations on an almost daily basis to determine the status of his account and his loan to collateral ratio because US Alliance did not and could not provide Mr. Conte with timely access to accurate information about this account and was incapable of handling an account of this magnitude competently and in compliance with applicable law, and industry rules and regulations.

Defendant also asserts a hearsay objection to the DLJ printouts from July through September 9,1998, and states it will "permit their introduction solely for the purposes of showing how Mr. Conte followed his portfolio, [and for the purposes of showing] the dates and handwriting on the exhibits". Defendant's objection to and attempt to limit the purposes for which we may use those documents is unreasonable and unwarranted, particularly when one considers the many purposes (see above) for which these documents would and could be used at trial. Moreover, Defendant has waived its objections to the DLJ printouts from July 1998 through September 9, 1998 by including them in its own exhibit list --- Defendant's Exhibit G.[4]

## 2) Records Generated By US Alliance in Its Regular Course of Business

Many of the documents included in Plaintiff's exhibit list are US Alliance's own business records. For the reasons stated below, Defendant's objection to these documents on the grounds of "relevancy and materiality" are without basis.[5] These documents pertain to matters directly at issue in this case.

a) US Alliance Account Statements from Victor Conte's account: Plaintiff's Exhibit Numbers ("Pl. Ex. Nos.") 1-6 (Jan – July 1998); and 10-12 (October- December 1998). The account statements from Victor Conte's US Alliance account are relevant to Mr. Conte's claims. They illustrate the type of relationship that existed Mr. Conte and US Alliance. Judge Burns held in her most recent decision on the Motion for Summary Judgment that the relationship of US Alliance and Mr. Conte over time, and their ongoing conduct during their thirty year relationship, is relevant in determining whether they had a fiduciary relationship and whether US Alliance committed breached fiduciary duties owed to Mr. Conte. The parties' behavior over time, as evidence in these documents, is therefore relevant here.

---

[4] Moreover, being that you have agreed to our use of the powerpoint presentation at trial, which is based to a great extent on these DLJ printouts, you have waived any objection to these documents.

[5] Moreover, being that you have agreed to our use of the powerpoint presentation at trial, which is based to a great extent on these US Alliance records, you have waived any objection to these documents.

Account statements from Victor Conte's US Alliance account after September 10, 1998 also illustrate transactions performed by Mr. Conte to mitigate his losses. Defendant has asserted all along that it was Mr. Conte's obligation to manage his account, and that Mr. Conte failed to mitigate his losses. These documents refute that assertion by illustrating efforts that Mr. Conte made to mitigate.

b) <u>US Alliance Account Statements from Victor & Doris Conte's IRA account:</u>   Pl. Ex. Nos. 701-730 (IRA statements March 1995 –June 1998); 732-738 (July 1998 through December 1998); and 740-742 (January – December 1995, January – December 1996, and January – December 1997). These documents illustrate the extent to which Mr. Conte had other assets to pledge toward maintaining his loan to collateral ratio. These documents are also directly relevant to Mr. Conte's breach of fiduciary duty claim. As Judge Burns held in her most recent decision on Defendant's Summary Judgment Motion, the relationship of US Alliance and Mr. Conte over time, and their ongoing conduct during their thirty-year relationship, is relevant in determining whether they had a fiduciary relationship and whether US Alliance committed breached fiduciary duties owed to Mr. Conte. Being that these documents illustrate and define the parties' ongoing relationship, they are relevant to matters directly at issue.

c) <u>Infograms</u>   Pl. Ex. Nos. 19-22 (Jun 98); 71-73 (Jun 98); 95-96 (July 98), 109-115 (Jul 98); 155-156 (Aug 98); 163-165 (Aug 98); 212-219 (Sep 1, 98); 314A-314O (Oct 1, 98); 315A (Oct. 5, 1998); 317A-317C (Oct. 7, 1998), 318A (October 8, 1998); 394 (Feb. 18, 2000), and 398 (October 17, 2003).

Defendant has objected to these documents on the grounds of "relevancy and materiality". As indicated below, those objections are not warranted. These infograms confirm trades that occurred in Mr. Conte's account. They illustrate that it was Mr. Conte's habit during his relationship with US Alliance to maintain his loan to collateral ratio.

Moreover, many of these infograms contain information confirming sales Mr. Conte made after September 10, 1998 in order to mitigate his losses. Defendant has asserted all along that it was Mr. Conte's obligation to manage his account, and that Mr. Conte failed to mitigate his losses. These documents illustrate that Mr. Conte did in fact manage his account and acted to mitigate his losses, and are thus relevant and material to this proceeding.

Certain infograms in Plaintiff's exhibit list also pertain directly to Plaintiff's claims of breach of fiduciary duty and negligence. For example, many infograms contain evidence of what will be shown at trial as an ongoing pattern of errors and misinformation by US Alliance in its handling of Mr. Conte's account. One such infogram (Ex. No.

394) provides notice to Mr. Conte that US Alliance charged Mr. Conte's account the incorrect rate of margin interest.

Other infograms (see e.g., Ex. No. 398) define and illustrate US Alliance and Mr. Conte's relationship over time, and their ongoing conduct during their thirty-year relationship. As Judge Burns held in her recent decision on Defendant's Summary Judgment motion, those matters are relevant and essential in determining whether US Alliance and Mr. Conte formed a fiduciary relationship, whether US Alliance breached fiduciary duties to Mr. Conte, and whether US Alliance was negligent in its handling of Mr. Conte's account. By way of example, Pl. Ex. No. 398 contains a notice from US Alliance to Mr. Conte of an undersecured loan. The bottom portion of that document defines and provides various choices providing Mr. Conte with an opportunity to cure his undersecured loan. This document, along with other documents that Plaintiff will use at trial, illustrate that during the parties' relationship US Alliance would provide Mr. Conte with notice and an opportunity to cure when his loan was undercollateralized.

d) Receipts  The receipts contained in Plaintiff's exhibit list serve several purposes. Some of the receipts contained in that list serve to illustrate that it was Mr. Conte's regular habit and practice to monitor his account, and act in good faith when his account was undersecured. For example, as illustrated by Pl. Ex. Nos. 390 and 391, Mr. Conte pledged real estate he owned as collateral to compensate for the shortfall caused by a sudden drop in the IBM shares he held in his account at the time. (See also, Ex. 387, 388, 389, relating to the drop in IBM's price). He pledged that real estate upon advice given to him by US Alliance representatives.

Other receipts serve to illustrate and define the relationship between Mr. Conte and US Alliance and their ongoing conduct during that time. As Judge Burns held in her recent decision on Defendant's Summary Judgment motion, those matters are relevant in determining whether US Alliance and Mr. Conte formed a fiduciary relationship, whether US Alliance breached fiduciary duties to Mr. Conte, and whether US Alliance was negligent in its handling of Mr. Conte's account. By way of example, Pl. Ex. Nos. 396 and 397 serve to illustrate that US Alliance had in 2001 and 2003, as it had done before 1998, lent funds to Mr. Conte under the terms that any outstanding balance would be "callable on 7 days notice".

Finally, other receipts included in Plaintiff's exhibit list illustrate Mr. Conte's efforts toward mitigation. (See, e.g., Pl. Ex. Nos. 294 [Sep. 17, 1998 confirmation of deposit of IBM stock to pay off loan], 350A and 393 [November 1998 confirmations of stock sales funds transfers to pay off loan]. Defendant has asserted all along that it was Mr. Conte's obligation to manage his account, and that Mr. Conte failed to mitigate

his losses.    These documents illustrate that such allegations are indeed untrue.

Finally, other receipts (see e.g., Pl. Ex. No. 399) illustrate that it was Mr. Conte's regular habit and practice to act in good faith to pay his loans.

e) Letters:  Plaintiff has objected to Pl. Ex. No. 387, a letter from IBM Federal Credit Union to Mr. Conte dated January 1993, which advised Mr. Conte of a drop in the price of IBM shares, which is the only stock that Mr. Conte held in his credit union account at the time.  In response to this notice, Mr. Conte pledged as collateral real estate he owned at the time.  As the section above titled "Receipts" illustrates, evidence of this transaction illustrates that it was Mr. Conte's regular habit and practice to monitor his account, and take action in good faith when his account was undersecured.  [See section above titled "receipts", Ex. Nos. 390, 391 therein.]  Moreover, Pl. Ex. No. 389, a letter to Mr. Conte notifying him of the activation of his realty loan, is relevant for the same reasons.

f) Credit Union Reports that US Alliance filed with the NCUA:  Pursuant to the rules and regulations of the NCUA, US Alliance filed reports with the NCUA.    Plaintiff has included two of those reports, dated December 2002 and December 2003 (Pl. Ex. Nos. 441 and 441A), in his exhibit list.   Those reports contain evidence of US Alliance's financial condition and ability to pay, which are factors to be considered under New York Law when calculating punitive damages.

g) Marketing Material:  Plaintiff also included in his exhibit list marketing material that US Alliance presented to Mr. Conte.  (See Pl. Ex. Nos. 412-424 ([1992-1997]; 425-427 [Jan-Mar 1998]; 428 [Sept 1998]; 429-440 [Dec 1998-Feb 2001]; 442 [Jan 2004]; 443-448 [Oct. 1990-Mar. 1998].  Those documents pertain to Mr. Conte's claims of breach of fiduciary duty and negligence.    These documents illustrate, for example, the extent to which US Alliance marketed itself as a provider of brokerage and other services, the lack of separation between US Alliance's brokerage and banking functions, and serve as an example of one of the ways in which US Alliance made efforts during its relationship with Mr. Conte to gain Mr. Conte's trust and allegiance. As illustrated by Judge Burn's decision on Defendant's summary judgment motion, all of those matters are directly relevant to the issue of whether and in what manner a fiduciary relationship developed between the parties, whether US Alliance breached its fiduciary duties to Plaintiff, and to what extent US Alliance was negligent in the handling of Mr. Conte's account.

h) Documents Relating to Sales Made After September 10, 1998:
Plaintiff also included in his exhibit list the following documents
generated by US Alliance, all of which relate to sales that Mr. Conte
made after September 10, 1998 in an effort to mitigate his losses:

   1) Authorizations to Buy; Pl. Ex. Nos. 456 472 529 532 540 573,
      575 578 588 600, 602 615 640 644, 647 650 653]
   2) Infograms re: purchases: Pl. Ex. Nos. 457; 469; 473; 530; 533;
      536; 538; 541, 542; 551; 574, 576; 579; 586; 589, 590, 591;
      601, 603; 613; 616; 641; 645, 648; 651; 654.
   3) Letters: Pl. Ex. No. 458
   4) Receipts and notices reflecting stock split: Pl. Ex. Nos. 458;
      534; 604; 642; 646; 655.
   5) Infograms reflecting sales to secure loans: Pl. Ex. No. 459.
   6) Infograms and Notifications (1099-B) re: stock sales: Pl. Ex.
      Nos. 474; 531, 531A; 535 & 535A; 537 & 537A; 539 & 539A;
      543, 543A, 543B, 544, 544A; 552; 577; 580; 587; 592; 605; 614;
      617, 618; 621A; 643, 643A; 649, 649A; 652, 652A; 656, 656A.
   7) Execution Reports (a/k/a "order tickets"): Pl. Ex. No. 507.

These documents are also relevant to Mr. Conte's claims of breach of
fiduciary duty and negligence. For example, the credit union's
execution reports, "Notifications of sale", and Infograms, illustrate US
Alliance's continuing inability to provide Mr. Conte with timely, current
information about this account. As was revealed during discovery, the
process of a trade begins when US Alliance completes and sends an
execution report to its clearing broker. Once the trade is completed,
the clearing broker on Affina's behalf sends a "Notification of Sale"
(1099-B) to US Alliance. Those "Notifications" contain no information
about the account for which a trade was made. Therefore, in order for
US Alliance to calculate what trades occurred in which of their
members' accounts, and the extent to which any shortfall in
collateralization was resolved through those trades, US Alliance
representatives had to compare the execution reports, by hand, with
the Notifications. Once the execution reports and Notifications were
matched by hand, US Alliance then entered that trade information in its
computer system, which then generated and sent to its members an
"Infogram" confirming the completed trades.

## 3) Documents that US Alliance Received from Victor Conte

a) Canceled checks from Mr. Conte's Bank: Pl. Ex. Nos. 154 and 208:
these checks are evidence of payments that Mr. Conte made in
August, 1998 to maintain his loan to collateral ratio. These documents
further illustrate that it was Mr. Conte's regular practice and habit to
monitor and maintain his credit union account.

b) <u>Letter to US Alliance from Mr. Conte dated June 13, 2000 (account statements from September, October, November and December 1998 attached thereto):</u>   Pl. Ex. No. 394A:  Mr. Conte sent a letter to US Alliance in order to inform US Alliance that its own account statements from October, November and December 1998 contained the incorrect amount of annual interest charged in Mr. Conte's account.  Those statements reveal that US Alliance's system was set up so that it could only communicate information about "year to date" interest charges up to $99,999.  The system was not intended to handle and could not display year to date interest charges of $100,000 or more.  Being that Mr. Conte's year to date interest figures exceeded $99,999 after the issuance of his September 1998 statement, US Alliance thereafter from October through December 1998 issued statements that communicated to Mr. Conte incorrect "year to date" interest figures. (For example, the account statement that US Alliance provided to Mr. Conte incorrectly shows Mr. Conte's year to date interest charges as "$2,389.99", rather than correctly stating "$102,389.99".   These documents illustrate that it was not US Alliance's intent to handle an account of Mr. Conte's size and that it was incapable of competently doing so.

## 4) Documents Produced by Third Parties Pursuant to Subpoena

a) <u>NASD / NCUA Documents produced by NASD pursuant to subpoena:</u> Pl. Ex. Nos. 657A, 657B, 658-662; 690-695; These documents are relevant to Mr. Conte's breach of fiduciary duty and negligence claims. They illustrate that during 1998 US Alliance violated NASD, NCUA rules and regulations by, among other things, failing to separate or distinguish itself from Affina in any manner, by conducting and controlling all brokerage services, and failing to draft and implement any policies and procedures that the securities rules and regulations require.

These documents also illustrate that US Alliance and Affina shared "dual employees", that is, US Alliance its officers and employees, also worked for and served Affina in various capacities.  Judge Burns held in her recent decision on Defendant's Motion for Summary Judgment that such conduct by a bank, where it acts beyond the usual debtor and creditor relationship and assumes a brokerage function, and shares "dual employees" with its brokerage affiliate, are all relevant proof that a fiduciary relationship developed between the bank and its customer, and that a breach of fiduciary duties and negligence occurred.  Thus, these documents are relevant to this proceeding.

These documents are also relevant for other reasons.  New York Law is clear that US Alliance's violations of the statutes, rules and regulations listed in these documents, can be used by the jury to

conclude that US Alliance committed negligence *per se*, and can be used as evidence of negligence.

b) <u>Information produced by Dorsa & Assoc. Inc.:</u>   Pl. Ex. Nos. 696-699: These documents illustrate that Affina did not develop or implement policies and procedures required by applicable laws rules and regulations governing the securities industry.  New York Law permits a jury to conclude from a party's violation of applicable statutes that it committed negligence *per se*, and to use violations applicable regulations as evidence of negligence.   These documents are thus relevant to Mr. Conte's claims of negligence and breach of fiduciary duty.

c) <u>SEC Uniform Application for BD Registration, Amended Form BDs:</u>  Pl. Ex. Nos. 663-689.  These documents illustrate that it was indeed feasible for US Alliance and Affina to take precautionary measures to ensure they were in compliance with the statutes, rules and regulations governing the securities industry, and NCUA regulations, which the NASD and NCUA found they failed to comply with, as per the above NASD, NCUA reports.

Please let us know whether you will reconsider your objections to any of these exhibits.

Very truly yours,

The Law Offices of Elisabeth Seieroe Maurer P.C.

Elisabeth Seieroe Maurer

cc:    Eric P. Smith, Esq. (via facsimile and first-class mail)

VIA FACSIMILE and First-Class Mail

# EXHIBIT C

| Plaintiff's Exhibit No. | Comments | Defendant's Objection |
|---|---|---|
| **I.** | **DLJ Printouts:**<br>(a) Portfolio performance records – show Conte's daily portfolio performance; and<br>(b) market summary charts – illustrate stock market performance over time.<br><br>• **Illustrate that it was Mr. Conte's habit to monitor his account and perform calculations on his loan to asset ratio based in publicly available information from the market;**<br><br>• **Illustrate Mr. Conte's damages, and his efforts to mitigate his losses;**<br><br>• **Relevant to Mr. Conte's breach of fiduciary duty and negligence claims, by illustrating that US Alliance did not and could not provide Mr. Conte with timely access to information about his account and was incapable of handling an account of Mr. Conte's size, and that Mr. Conte thus was forced to perform calculations to determine account status.** | |
| 13-14, 16-17; 23-24, 26-27, 29-30, 32-33, 35-36, 38-39, 41-44, 46-49, 51, 51A, 53-54, 56-57, 59-60, 62-63, 65-66, 68-69, 74-75, 77-78. | Portfolio performance records from June 1998 | "relevancy and materiality" |
| 313, 314P, 315, 316, 317, 318, 319A, 320, 322-326, 328-332, 334, 336-337, 339-350, 351-381. | Portfolio Performance records from October 1998 through December 1998 | "relevancy and materiality" |
| 15, 18, 25, 28, 31, 34, 37, 40, 45, 50, 52, 55, 58, 61, 64, 67, 70, 76, 79. | Market summary charts from June 1998 | "relevancy and materiality" |
| 314, 319, 321, 327, 333, 335, 338 | Market summary charts from October 1998 | "relevancy and materiality" |
| 80-81, 83-84, 86-87, 89-90, 92- | Portfolio performance records from July through September 9, 1998: | "Hearsay" |

_Victor Conte v. US Alliance Federal Credit Union, et al._
3:01 CV 463 (EBB)

**Page 1 of 6**

| Plaintiff's Exhibit No. | Comments | Defendant's Objection |
|---|---|---|
| 93, 97-98, 100-101, 103-104, 106-107, 116-117, 119-120, 122-123, 125-126, 128-129, 131-132, 134-135, 137-138, 140-141, 143-144, 146-147, 149-152, 157-158, 160-161, 166-167, 169-170, 172-173, 175-176, 178-179, 181-182, 184-185, 187-188, 190-191, 193-194, 196-197, 199-200, 202-203, 205-206, 209-210, 220-221, 223-224, 226-227, 229-230, 232-233. | | |
| 82, 85, 88, 91, 94, 99, 102, 105, 108, 118, 121, 124, 127, 130, 133, 136, 139, 142, 145, 148, 153, 159, 162, 168, 171, 174, 177, 180, 183, 186, 189, 192, 195, 198, 201, 204, 207, 211, 222, 225, 228, 231, 234 | Market summary charts from July through September 9, 1998: | "Hearsay" |

| Plaintiff's Exhibit No. | Comments | Defendant's Objection |
|---|---|---|

**II. Records Generated by US Alliance in Its Regular Course of Business**

(a) account statements; (b) infograms; (c) receipts; (d) Letters; (e) Credit Union reports that US Alliance filed with the NCUA; (f) Marketing material and (g) documents relating to sales made in Victor Conte's account after September 10, 1998.

- Illustrate and define the breadth and scope of the relationship between Mr. Conte and US Alliance;

- Relate to whether a fiduciary relationship developed between the parties;

- Illustrate that it was Mr. Conte's regular habit to not only monitor his account, but to perform calculations on his loan to asset ratio based on information available from the market;

- Pertain to Mr. Conte's claims of breach of fiduciary duty and negligence, by illustrating an ongoing pattern of errors and misinformation by US Alliance in its handling of Mr. Conte's account

| Plaintiff's Exhibit No. | Comments | Defendant's Objection |
|---|---|---|
| 1-6 and 10-12 | US Alliance Account Statements from Victor Conte's account: Jan – July 1998, October-December 1998. | "Relevancy and materiality" |
| 701-730, 732-738 and 740-742 | US Alliance Account Statements from Victor & Doris Conte's IRA account:  March 1995 – June 1998; July 1998 through December 1998; January – December 1995, January – December 1996, and January – December 1997. | "relevancy and materiality" |
| 19-22, 71-73, 95-96, 109-115, 155-156, 163-165, 212-219, 314A-314O, 315A, 317A-317C 318A, 394, and 398. | Infograms:  June 1998; July 1998, August 1998, September 1, 1998, October, 1998, February 2000 and October 2003 | "relevancy and materiality" |
| 390 and 391 | Receipts | "relevancy and materiality" |
| 396 and 397 | Receipts | "relevancy and materiality" |

*Exhibit to Plaintiff's Motion In Limine, June 30, 2004*

*Victor Conte v. US Alliance Federal Credit Union, et al.*
*3:01 CV 463 (EBB)*

**Page 3 of 6**

| Plaintiff's Exhibit No. | Comments | Defendant's Objection |
|---|---|---|
| 294, 350A and 393 | Receipts | "relevancy and materiality" |
| 399 | Receipts | "relevancy and materiality" |
| 387, 389 | Letters | "relevancy and materiality" |
| 441 and 441A | Reports that US Alliance filed with NCUA: | "relevancy and materiality" |
| 412-424, 425-427, 428, 429-440, 442, 443-448 | Marketing Material: 1992-1997, January – March 1998, September 1998, December 1998 through February 2001, January 2004, Oct. 1990-Mar. 1998. | "relevancy and materiality" |
| 456, 472, 529 532 540 573, 575 578 588 600, 602 615 640 644, 647 650 653 | Documents Relating to Sales Made in Plaintiff's Account After September 10, 1998<br>1) Authorizations to Buy: | "relevancy and materiality" |
| 457; 469; 473; 530; 533; 536; 538; 541; 542; 551; 574, 576; 579; 586; 589, 590, 591; 601; 603; 613; 616, 641; 645, 648; 651; 654 | *[cont'd...] Documents Relating to Sales Made in Plaintiff's Account After September 10, 1998*<br>2) Infograms re: purchases | "relevancy and materiality" |
| 458 | *[cont'd...] Documents Relating to Sales Made in Plaintiff's Account After September 10, 1998*<br>3) Letters | "relevancy and materiality" |
| 458; 534; 604; 642; 646; 655. | *[cont'd...] Documents Relating to Sales Made in Plaintiff's Account After September 10, 1998*<br>4) Receipts and notices reflecting stock split | "relevancy and materiality" |

| Plaintiff's Exhibit No. | Comments | Defendant's Objection |
|---|---|---|
| 459 | *[cont'd...] Documents Relating to Sales Made in Plaintiff's Account After September 10, 1998*<br><br>5) Infograms reflecting sales to secure loans | "relevancy and materiality" |
| 474; 531, 531A; 535 & 535A; 537 & 537A; 539 & 539A; 543, 543A, 543B, 544, 544A; 552; 577; 580; 587; 592; 605; 614; 617, 618; 621A; 643, 643A; 649, 649A; 652, 652A; 656, 656A. | *[cont'd...] Documents Relating to Sales Made in Plaintiff's Account After September 10, 1998*<br><br>6) Infograms and Notifications (1099-B) re: stock sales | "relevancy and materiality" |
| 507 | *[cont'd...] Documents Relating to Sales Made in Plaintiff's Account After September 10, 1998*<br><br>7) Execution reports (a/k/a order tickets) | "relevancy and materiality" |

III.  **Documents that US Alliance Received from Victor Conte**
     (a) canceled checks from Mr. Conte's bank
     (b) Letters

- **Illustrate that it was Mr. Conte's regular practice and habit to monitor and maintain his account;**

- **Illustrate that US Alliance was not intended to handle and was incapable of handling an account of Mr. Conte's size and magnitude.**

| | | |
|---|---|---|
| 154 and 208 | Canceled Checks from Mr. Conte's Bank | "relevancy and materiality" |
| 394A | Letter from Mr. Conte to US Alliance dated June 13, 2000 (with account statements dated September, October, November and December 1998 attached thereto): | "relevancy and materiality" |

*Exhibit to Plaintiff's Motion In Limine, June 30, 2004*    *Victor Conte v. US Alliance Federal Credit Union, et al.*
3:01 CV 463 (EBB)

**Page 5 of 6**

| Plaintiff's Exhibit No. | Comments | Defendant's Objection |
|---|---|---|
| IV. | **Documents Produced by Third Parties to Plaintiff Pursuant to Subpoena**<br>(a) NASD / NCUA Documents Produced by NASD<br>(b) Affina "Form BD"s Produced by NASD<br>(c) Documents Produced by Dorsa & Associates, Inc. | |
| | • Relate to Mr. Conte's breach of fiduciary duty claim by illustrating that US Alliance failed to separate itself in any manner from Affina Brokerage, that US Alliance and Affina shared "dual employees" and were one and the same; | |
| | • Relate to Mr. Conte's negligence claim because US Alliance's violations of statues rules and regulations can be used to conclude that US Alliance committed negligence *per se* and can be used as evidence of negligence; | |
| | • Illustrate that it was indeed feasible for US Alliance / Affina to take precautionary measures to ensure they complied with NCUA regulations, and statutes, rules and regulations applicable to the securities industry. | |
| 657A, 657B, 658-662 | Documents produced by the National Association of Securities Dealers, Inc. ("NASD") regarding the NASD's regulatory examinations of US Alliance / Affina Brokerage Services ("Affina") and related findings that US Alliance / Affina Brokerage violated various statutes, rules and regulations applicable to the financial industry | "relevancy and materiality" |
| 690-695[1] | Documents produced by the NASD regarding the National Credit Union Administration ("NCUA")'s regulatory examinations of US Alliance / Affina and related findings: | "relevancy and materiality" |
| 696-699 | Documents Produced by Dorsa & Associates, Inc. [a consultant hired by Affina. Documents consist of draft policies and procedures manual] | "relevancy and materiality" |
| 663-689 | Form BDs, Amendments, for Affina Brokerage Services | "relevancy and materiality" |

[1] Ex. Nos. 691 through 694 are not being submitted to the Court at this time. Plaintiff in his motion has requested that the Court's grant Plaintiff permission to file these records under seal, in order to preserve their confidentiality.

*Exhibit to Plaintiff's Motion In Limine, June 30, 2004*

*Victor Conte v. US Alliance Federal Credit Union, et al.*
*3:01 CV 463 (EBB)*

Page 6 of 6

# EXHIBIT D

LAW OFFICES OF
ELISABETH SEIEROE MAURER, PC

871 ETHAN ALLEN HIGHWAY, SUITE 202
RIDGEFIELD, CT 06877

TEL: 203-438-1388
FAX: 203-431-0357
e-mail: esmaurer@esmlaw.net

.ISABETH SEIEROE MAURER: CT, NY, IL
/A M. PUORRO: CT, NY, NJ

ANIEL P. HUNSBERGER
f Counsel

aralegals
LORIA A. STEARNS
ITA L. CONCEPCION

May 14, 2004

The Honorable Ellen Bree Burns
United States District Court Senior Judge
United States District Court of Connecticut
141 Church Street
New Haven, CT 06510

RE:    **Victor T. Conte v. US Alliance Federal Credit Union, et al.
Civil Case No. 301 CV-463 (EBB)**

Dear Judge Burns:

We represent Plaintiff Victor Conte in the above matter. We submit this letter to request prior approval of a demonstrative aid in the form of a PowerPoint presentation that Plaintiff would like to use at trial.

This case is very fact intensive, and involves well over 700 exhibits of documentary evidence generated during the parties' long relationship. The PowerPoint presentation that Plaintiff wishes to use at trial would enable the Court, parties and jury to better understand and much more easily digest the chronology of events and voluminous evidence to be presented in Plaintiff's case. Plaintiff would use a laptop at trial to make this presentation, and would set up separate viewing screens so that the Court, clerk, Defendant and the jury will be able to simultaneously view that presentation.

Specifically, Plaintiff's PowerPoint presentation will consist of the following:

(1)    A timeline that sets forth a factual history of Conte's thirty-year relationship with US Alliance and a detailed chronology of events occurring in 1998. We intend to include in that timeline details about matters such as:
    a. The nature of Conte's relationship with US Alliance over the years, such as, e.g., US Alliance products and services used by Conte;

The Honorable Ellen Bree Burns
United States District Court Senior Judge
United States District Court of Connecticut
May 14, 2004
Page 2 of 3

       b. The loan/collateral ratio that Conte had with US Alliance during
         their relationship, particularly during 1998;
       c. Interactions between Conte and US Alliance;
       d. Information about the performance of the Dow Jones and
         NASDAQ markets during the period of September 1998,
         particularly September 8-11, 1998;

(2)    A means to access and present over 700 exhibits of documentary
       evidence. That documentary evidence would be scanned, in
       Adobe format, into a laptop computer that Plaintiff will bring to trial.
       As Plaintiff accesses those documents by computer at trial, those
       documents would be simultaneously projected onto screens. That
       documentary evidence would include items such as:
       a. US Alliance business records (such as trade confirmations,
         trade tickets, agreements, account statements);
       b. correspondence between Conte and US Alliance;
       c. printouts used and notes made by Conte, which, among other
         things, serve to illustrate efforts made by Conte to monitor the
         status of his US Alliance account, the loan and asset levels in
         that account, and the value of the securities contained therein.

We have a number of questions for the Court's consideration:

a) Whether separate hard copies of all documentary evidence to be used
   in Plaintiff's case must be distributed to each juror and to the
   Defendant, or whether it would be sufficient to have one hard copy in
   the Courtroom at all times, for access by all participants. We would
   also provide Defendant with a disk containing a copy of all such
   evidence;

b) Whether we would be permitted to leave our equipment (laptop
   computers, projection screens, cables, and the like) in the Courtroom
   for the entire length of this trial;

The Honorable Ellen Bree Burns
United States District Court Senior Judge
United States District Court of Connecticut
May 14, 2004
Page 3 of 3

   c) Whether the Court would like to set up a conference with all parties to
      answer any questions the Court or Defendant may have.  Should the
      Court wish, Plaintiff would be happy to give the Court and Defendant a
      demonstration of the technology that it would like to use at trial.

   d) Whether Plaintiff would be permitted to provide the jury with a laptop
      computer for use during its deliberations.  That laptop would only
      contain the above PowerPoint timeline presentation and scanned
      copies of the documentary evidence admitted into evidence.  If the
      Court wishes, Plaintiff would also be willing to provide the jury with an
      assistant who could help the jury with its use and operation of that
      equipment during its deliberations.

Plaintiff respectfully requests the Court's guidance on these matters and
thanks the Court in advance for its assistance.

Respectfully submitted,
Law Offices of Elisabeth Seieroe Maurer, PC


Elisabeth Seieroe Maurer

cc: Martin P. Unger, Esq. (via facsimile 516-296-7111)
     Andrew M. Zeitlin, Esq. (via facsimile203-324-8199)
VIA FACSIMILE 203-773-2148

# EXHIBIT E

# CERTILMAN BALIN
### ATTORNEYS

90 MERRICK AVENUE
EAST MEADOW, NY 11554
PHONE: 516.296.7000 ▪ FAX: 516.296.7111
www.certilmanbalin.com

MARTIN P. UNGER
PARTNER
DIRECT DIAL: 516.296.7004
munger@certilmanbalin.com

May 24, 2004

**Via Federal Express and Facsimile**
Hon. Ellen Bree Burns, Senior Judge
United States District Court
District of Connecticut
141 Church Street
New Haven, CT 06510

     Re:  Case No. 3:01-cv-463
        Conte v. US Alliance Federal Credit Union

Dear Judge Burns:

   With respect to Elisabeth Seieroe Maurer's letter to you dated May 14, 2004, regarding her request for prior approval to use at trial a demonstrative aid in the form of PowerPoint presentations, if the Court has no objection we do not either. We only request that a hard copy of the material be provided to us, to the jury and to the Court as well. This is particularly important should a record on appeal be necessary. In this connection, the Court should be aware that I cannot even imagine the "well over 700 exhibits" plaintiff is referring to. We certainly have not seen anything close to that, let alone even 50 deposition exhibits during pre-trial discovery.

      Respectfully,

      Martin P. Unger

MPU:ed
enc.
cc: Elisabeth Seieroe Maurer, Esq. (Via Facsimile)
   Eric Smith, Esq.

iManage:1563912.1

CERTILMAN BALIN ADLER & HYMAN, LLP
SUFFOLK OFFICE: 1393 VETERANS MEMORIAL HWY., SUITE 301S. HAUPPAUGE, NY 11788 ▪ PHONE: 631.979.3000 ▪ FAX: 631.979.7070