*Joint Pretrial Memorandum*

B.      (1) Secured Loan Application, dated October 11, 1994, executed by Conte**
        - and -

Secured Loan Revolving Credit Plan and Disclosure Agreement, marked as
Defendant's Deposition Exhibits 7A and 7C respectively on October 22, 2002;

- and -

(2) Member Agreement Governing Security Transactions marked as
Defendant's Deposition 7B on October 22, 2002.

As indicated above, Mr. Conte has no objection to the authenticity or admissibility
of the "Secured Loan Application dated October 11, 1994", contained in subparagraph
(1) of this exhibit.

Mr. Conte's Objections to Defendant's Exhibit B:   By letter to Martin Unger, Esq.
dated June 11, 2004, Mr. Conte informed Defendant US Alliance of his objections to this
exhibit on admissibility and authenticity grounds.  No foundation has been presented
establishing that all of the documents contained in this exhibit belong together, are from
the same time frame or are related to each other in any way.  Moreover, US Alliance
has not provided any evidence establishing that the two documents contained in
subparagraph (1) of this exhibit belong together, are from the same time frame, or are
even related to each other in any way.  Moreover, US Alliance has presented no
evidence establishing that Plaintiff Conte ever was presented with, or signed, the
document in subparagraph (2) of this exhibit (described by Defendant as a "Member
Agreement Governing Security Transactions marked as Defendant's Deposition 7B on
October 22, 2002").

29

*Joint Pretrial Memorandum*

**C.    US Alliance Membership correction Update Form executed by Conte and attendant infograms

D.    Tickler file, dated July 15, 2002, relating to Conte's account marked as Defendant's Deposition Exhibit 17 on October 22, 2002.

<u>Plaintiff Conte's Objections to Defendant's Exhibit D:</u>    Mr. Conte objects to this exhibit on the grounds that its authenticity and admissibility has not been established. The data within this "tickler file", which is essentially a computer printout, is not in chronological order.  No explanation has been given how the information contained in this exhibit was created or generated, or whether the data contained therein is capable of being deleted or changed after it has been entered.

**E.    Form Cue-10 for Conte's account, dated September 8, 1998, marked as Defendant's Deposition Exhibit 14, on October 22, 2002.

**F.    Various documents relating to the satisfaction of Conte's realty line dated in mid-1998 marked as Defendant's Deposition Exhibit 3 on October 22, 2002.

**G.    Portions of Conte's Portfolio Performance Records marked as part of Defendant's Deposition Exhibit 8 on October 22, 2002.

While Mr. Conte has no objection to this exhibit's admissibility or authenticity, Mr. Conte's counsel by letter dated June 11, 2004 requested that Defendant's counsel specify the exact portions of Conte's portfolio performance records to which this exhibit refers, and provide copies for review by Mr. Conte's counsel.

**H.    Same as Plaintiff's Exhibit  7

30

*Joint Pretrial Memorandum*

**I.    Same as Plaintiff's Exhibit 8.

**J.    Same as Plaintiff's Exhibit 9.

**K.    Same as Plaintiff's Exhibit 732.

L.    Order tickets concerning securities in Conte's Stock Secured Loan Account for trade date September 10, 1998 marked as Mr. Conte's Deposition Exhibit 3 on October 23, 2002.

Mr. Conte objects to this exhibit on admissibility and authenticity grounds. Defendant has suggested that the entry time stamped on those tickets is a "mistake ". Also, Mr. Conte cannot agree to the accuracy of the execution times contained in these order tickets, because those times were entered by hand, in violation of industry rules and regulations. Specifically, NASD Rules require that its members' trade tickets be stamped with the specific time and date of each trade's entry and execution, through use of a specific machine used by the industry for such purpose. See e.g., NASD Rule 5430, "Transaction Reporting", (a)(7) (requiring that "All trade tickets for transactions in eligible securities shall be time-stamped at the time of execution"). See also, SEC Rule 10b-10, "Confirmation of Transactions". Without that reliable time stamp, the handwritten execution times on these order tickets are inherently unreliable and questionable, at best.

The actual entry or execution time of the trades at issue can therefore only be verified if Defendant provides Plaintiff with NASD trade reports (e.g.,"Form T" reports, "ACT" report and/or other reports used at the time). Those reports would conclusively verify the actual execution time of the trades in these order tickets. Please provide us

31

*Joint Pretrial Memorandum*

with those reports immediately.  Moreover, by correspondence dated June 11th, Plaintiff

requested that Defendant indicate which order tickets to which this exhibit refers and

provide Plaintiff with a copy of same.


    M.    Form Que-10 for Conte's Account dated September 11, 1998 and attached
           adding machine tape.

    Plaintiff's Objections to Defendant's Exhibit M:  Mr. Conte objects to this

proposed exhibit on authenticity and admissibility grounds.  As Mr. Conte's counsel

informed Defendant's counsel by letter dated June 11, 2004, Defendant US Alliance has

not presented any evidence establishing who created the adding machine tape and

whether it was created in the normal course of business.  As also stated in that

correspondence, Defendant US Alliance has presented no evidence establishing that

the form and adding machine tape contained in this exhibit belong together or are

related in any way.  Furthermore, Mr. Conte's records indicate that the correct date of

the adding machine tape is September 10, 1998, not September 11, 1998 as Defendant

indicates.  Mr. Conte's counsel thus requested in that correspondence that Defendant's

counsel produce a copy of this exhibit for review.


    N.    Undercollateralized Stock Loan Reports (redacted) dated September 1, 1998,
           September 2, 1998 and September 4, 1998 marked as Mr. Conte's
           Deposition Exhibit 2 on October 23, 2002.

    Mr. Conte's counsel informed Defendant's counsel that it will not object to the

authenticity and admissibility of Defendant's Exhibit N, provided Defendant enters into

*Joint Pretrial Memorandum*

the a stipulation that Mr. Conte's counsel sent to Defendant's counsel, which contains

an agreement by the parties to keep these documents confidential, and provides for

limited redactions of "other" member account information contained therein.

     O.     Undercollateralized Stock Loan Report (redacted) dated September 8, 1998.

     Mr. Conte's counsel informed Defendant's counsel that it will not object to the

authenticity and admissibility of Defendant's Exhibit O, provided Defendant enters into

the a stipulation that Mr. Conte's counsel sent to Defendant's counsel, which contains

an agreement by the parties to keep these documents confidential, and provides for

limited redactions of "other" member account information contained therein.

     P.     Undercollateralized Stock Loan Report (redacted) dated September 9, 1998.

     Plaintiff's counsel informed Defendant's counsel that it will not object to the

authenticity and admissibility of Defendant's Exhibit P, provided Defendant enters into

the a stipulation that Mr. Conte's counsel sent to Defendant's counsel, which contains

an agreement by the parties to keep these documents confidential, and provides for

limited redactions of "other" member account information contained therein.

     Q.     Undercollateralized Stock Loan Report (redacted) dated September 10, 1998.

     Mr. Conte's counsel informed Defendant's counsel that it will not object to the

authenticity and admissibility of Defendant's Exhibit Q, provided Defendant enters into

*Joint Pretrial Memorandum*

the a stipulation that Mr. Conte's counsel sent to Defendant's counsel, which contains

an agreement by the parties to keep these documents confidential, and provides for

limited redactions of "other" member account information contained therein.


    R.  Undercollateralized Stock Loan Report (redacted) dated September 11, 1998.

       Mr. Conte's counsel informed Defendant's counsel that it will not object to the

authenticity and admissibility of Defendant's Exhibit R, provided Defendant enters into

the a stipulation that Mr. Conte's counsel sent to Defendant's counsel, which contains

an agreement by the parties to keep these documents confidential, and provides for

limited redactions of "other" member account information contained therein.


    S.     Reports of securities prices for September 1998 for:  (a) Checkpoint, (b) AOL,
          (c) Microsoft, (d) Sun, (e) Cisco, (f) Dell and (g) General Electric.

      <u>Plaintiff Conte's Objections to Defendant's Exhibit S</u>:  Mr. Conte objects to this

exhibit on authenticity and admissibility grounds.  This is a seven-page exhibit that

seems to contain computer printouts of stock prices. However, this exhibit does not

indicate that the information contained therein was obtained from public sources.  There

is no reliable way to tell whether the data contained in this exhibit was obtained from

public sources.  Moreover each page of this exhibit contains a disclaimer on the bottom

of each page, stating that the accuracy of the data on each page cannot be guaranteed.

34

*Joint Pretrial Memorandum*

T.    (1) Two cassette tapes containing conversations between Conte and personnel at US Alliance marked Defendant's Deposition Exhibits 15 and 16 on October 22, 2002.

(2) Transcripts of the conversations contained on these tapes.

(3) original audio cassettes from which the above cassette tapes are extracted.

Plaintiff Conte's Objections to Defendant's Exhibit T:  Mr. Conte has objected to this exhibit's admissibility and authenticity.  See Mr. Conte's Motion in Limine dated April 7, 2004, seeking an order from the Court barring Defendant US Alliance's use of these incomplete, unreliable and inadmissible tape recordings, and that the Court issue an adverse inference jury instruction on the grounds that Defendant US Alliance has destroyed and/or made "unavailable" crucial tape recorded evidence.

**U.    Form Cue-10 for Conte's account dated September 10, 1998.

**V.    CV of James L. Rothenberg, Esq.

**W.    Report of James L. Rothenberg, Esq. dated November 25, 2002.


12.    Deposition Testimony


a.    Plaintiff Conte does not at present intend to offer deposition testimony in lieu of in-person testimony at trial.

b.    DEPOSITION TESTIMONY THAT MAY BE OFFERED BY DEFENDANT
John Petrie taken July 16, 2002 and executed November 13, 2002

p. 9, l. 13 - p. 12 l.6
p.14, l. 12 - 25 - p. 18, l. 8
p. 21, l. 23 - p. 22, l. 23
p. 26, l. 11 - p. 27, l. 25

35

*Joint Pretrial Memorandum*

                    p. 32, l. 9 - 24
                    p. 33, l. 4 - l. 16
                    p. 34, l. 2 - l. 13
                    p. 34, l. 20 - p. 35, l. 16
                    p.37, l. 10 - 13
                    p. 39, l. 12 - p. 45, l. 9
                    p. 46, l. 25 - p. 47, l. 6
                    p. 54, l. 3 - p. 55, l. 5
                    p. 55, l. 6 - p. 56, l. 22


13.    Requests for Jury Instructions

        Plaintiff and Defendant were unable to agree on jury instructions.  Therefore

Plaintiff and Defendant each submit their own proposed jury instructions. (See

paragraphs a and b in this section below).

        Mr. Conte objects to Defendant US Alliance's jury instructions, as the vast

majority of Defendant's proposed jury instructions contain citation to no legal authority

or any other basis for their inclusion.

        Mr. Conte also objects to the section of Defendant's proposed jury instructions

titled "conclusively decided facts", and representations therein that the Court determined

in its partial summary judgment decisions that certain facts listed by Defendant in that

section "have been conclusively established".  The Court reminded the parties during

those rulings that when deciding a summary judgment motions, "the district court's role

is not to resolve disputed issues of fact itself, but rather to see if there are issues of fact

to be resolved by the fact-finder at trial" (citation omitted).  See Court's Amended Ruling

on Defendant's Motion for Summary Judgment, March 11, 2004, at p. 10.  The Court in

its rulings repeatedly reminded the parties that its rulings were not to resolve issues of

                                                                                            36

*Joint Pretrial Memorandum*

fact but rather to find whether disputed issues of fact exist. For example, the Court stated: "the issue before the Court is…whether..[Plaintiff]…has pled sufficient fact that may support a finding that such a duty existed between the parties, a fact specific inquiry reserved for a jury" (citations omitted). Id., at 12. The Court found that "[b]ecause there are issues of material fact with respect to whether a fiduciary relationship existed between US Alliance and Conte, we cannot find, as a matter of law, that US Alliance did not owe any duty of care to Conte independent of their contractual relationship", and that "[w]hether US Alliance owed a duty to employ reasonable care in the handling of Conte's Stock Secured Loan Account, and whether US Alliance breached that duty in the manner it liquidated his stocks, are factual questions appropriately left to the jury" . Id. at 19. Mr. Conte thus objects to the section of Defendant's proposed jury instructions titled "conclusively decided facts" in its entirety, as it misstates the Court's rulings on Defendant's summary judgment motions.

Plaintiff will notify the Court of any additional objections to Defendant's proposed jury instructions, upon completion of its review of same.

    a.    <u>Plaintiff Conte's Proposed Jury Instructions:</u>  See **EXHIBIT "B"** attached hereto.

    b.    <u>Defendant's Proposed Jury Instructions:</u>

Defendant USAlliance Federal Credit Union requests this Court to give the following instructions to the jury in connection with the trial of the above-entitled action. If developments during trial necessitate revision of these instructions or submission of additional instructions, defendant respectfully reserves the right to seek permission to submit revised or additional proposed instructions to conform to the evidence presented or rulings made.

37

*Joint Pretrial Memorandum*

## Role of the Court

You have now heard all the evidence in the case as well as the final arguments of the lawyers for the parties.

It is my duty at this point to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. You will receive a copy of these instructions to take with you in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than the one I give you.

38

*Joint Pretrial Memorandum*

## **Juror Attentiveness**

Members of the jury, you are about to enter your final duty, which is to decide the fact issues in the case.

Before you do that, I will instruct you on the law. Please pay close attention to me now. I will go as slowly as I can and try to be as clear as possible.

I told you at the very start of the trial that your main function during the taking of testimony would be to listen carefully and observe each witness who testified. It has been obvious to me and to counsel that you have faithfully discharged this duty. Your interest never diminished and it is evident that you followed the testimony with close attention.

39

*Joint Pretrial Memorandum*

## Role of the Jury

Your role, as I have said is to consider and decide the fact issues that are in the case. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility or believability of the witnesses; you resolve whatever conflicts there may be in the testimony; and you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them. In doing so, you must weigh and consider the evidence without regard to sympathy, prejudice or passion for or against any party.

I shall later discuss with you how to pass upon the credibility -- or believability -- of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. In this connection you should bear in mind particularly that a question put to a witness is never evidence. It is only the answer that is evidence. Nor is anything I may have said during the trial or may say during these instructions with respect to a fact matter to be taken instead of your own independent recollection. What I say is not evidence.

If there is any difference or contradiction between what any lawyer has said and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence —— not the lawyers' and not mine —— that controls.

The evidence before you consists of the answers given by witnesses —— the testimony they gave, as you recall it —— and the exhibits that were received in evidence.

As I said, the evidence does not include questions. Only the answers are evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff or the defendant has presented the more convincing proof.

I also ask you to draw no inference from the fact that on occasion I asked questions of certain witnesses. These questions were only intended for clarification or to move things along, and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other witness. It is important that you understand that I have no opinion as to the verdict you should render in this case and that if I did have an opinion you would not be obliged in any way to follow it.

Also, anything I may have said during the trial or may say during the course of this charge with regard to any matter of evidence or testimony is not to be taken in place of your own recollection.

40

*Joint Pretrial Memorandum*

I may refer to evidence during the course of this charge. If I do so, I will try to refer to it as accurately as I can. If I should make a mistake, it is your recollection, and yours alone, that governs. You are not to take anything that I say as evidence or as controlling upon you in any way in your determination of the facts. It is your own independent recollection of the evidence that controls.

41

*Joint Pretrial Memorandum*

## **Conduct of Counsel**

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the Court. You should not bear any prejudice against an attorney or his or her client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence. Again, you are the sole judges of the believability of all witnesses and the weight and effect of all evidence.

42

*Joint Pretrial Memorandum*

## Nature of the Case

This case arises out of losses allegedly incurred by plaintiff arising out of loans he made in a Stock Secured Loan Account which he maintained at USAlliance. All transactions in the account were unsolicited and purchases and sales of securities out of or into the Stock Secured Loan Account were on plaintiff's initiative and instructions.

The case involves a federal credit union, USAlliance, which is a not for profit member owned co-operative, of which plaintiff had been a member for over thirty years. Upon opening the Stock Secured Loan Account plaintiff entered into an agreement with the Credit Union which, among other things, provided in substance that the value of plaintiff's collateral, that is the security for the funds plaintiff was borrowing, had to be maintained at 15% of the amount of loan or better. If the value of the collateral as compared to the amount of the loan decreased below 15%, the Credit Union "at its sole option and without prior notice" could transfer funds from another account at the Credit Union or sell the collateral and apply the proceeds to the debt.

In terms of stock which plaintiff pledged to USAlliance as collateral, plaintiff granted USAlliance a security interest in such collateral and, again, specifically granted USAlliance the right in the event of default *i.e.*, in the event the collateral decreased below the 15% level that I had mentioned to you previously, at its sole option and without prior notice to sell the collateral and apply the proceeds against the debt. Although USAlliance had the right under the agreement to utilize any account balances plaintiff had at USAlliance for the purposes of curing a default in the Stock Secured Loan Account, there was one exception, plaintiff's IRA account. USAlliance could in no event take anything from that retirement account - only plaintiff could do that.

For some period of time in early September 1998, the value of plaintiff's collateral securing his loans decreased below the 15% level. Plaintiff took no action to cure his default. USAlliance eventually acted and commenced liquidation of securities plaintiff had pledged with it as collateral.

Although there is no dispute that USAlliance acted pursuant to its agreement with plaintiff, plaintiff nonetheless claims that due to special circumstances between USAlliance and plaintiff, a fiduciary duty was created by USAlliance and plaintiff such that USAlliance should not have liquidated any securities but, rather, should have given plaintiff more time to determine how to fix the situation.

USAlliance denies that any such special circumstances exist and claims that the loan between the plaintiff and USAlliance was an arms-length - lender *i.e.*, credit union, borrower *i.e.*, plaintiff, transaction, and that USAlliance followed the terms of the Secured Loan Agreement it had with plaintiff.

I will explain more about special circumstances and fiduciary duty later.

43

*Joint Pretrial Memorandum*

## Corporation to be Treated Equally

The defendant USAlliance is a federal credit union. A federal credit union is a cooperative association organized to promote thrift among its members and to create for them a source of credit at reasonable interest rates. A credit union is entitled to the same fair trial at your hands as a private individual. For your purposes a credit union is to be considered a person and all persons, including credit unions, stand equal before the law, and are to be dealt with as equals in this Court.

Fed. J.P. & I. 3rd, ¶ 71.05

44

*Joint Pretrial Memorandum*

## Plaintiff's Claims

Plaintiff's claims fall into two categories about each of which, regarding the securities he had deposited as collateral, h you will be given specific instructions.

1.    A claim for breach of fiduciary duty.  Essentially plaintiff claims that the following facts created a fiduciary duty between the USAlliance and plaintiff.

(a)  Plaintiff had been a member of USAlliance for about thirty years using the broad range of its banking and brokerage services.

(b)  On one occasion in 1993 plaintiff became undercollateralized and worked with USAlliance's predecessor to cure the undercollateralization, pledging two condominiums that he owned as collateral.  Plaintiff claims that he assumed that if a similar situation arose again, as it did here, USAlliance would carry out the same practice and not liquidate his securities without first giving him notice.  Plaintiff also claims that loan receipts he received for various loans always included the terms "demand loan - outstanding balance callable on 7 days notice" and thus assumed he would be notified before securities were liquidated if his Stock Secured Loan Account became undercollateralized.  You should be aware, however, that there is no claim in this action that USAlliance made any demand for payment of the outstanding balance of the Stock Secured Loan Account.  All that was required was for plaintiff to cure the undercollateralization by depositing additional collateral or on his own liquidating securities sufficient to effect a cure of the undercollateralization.  Plaintiff was not asked to pay the outstanding balance of the secured loan.

2.    A Claim of Negligence.  This claim is essentially the same as the claim for breach of fiduciary duty I have just discussed.

45

*Joint Pretrial Memorandum*

## USAlliance's Claims

USAlliance claims that it did nothing wrong, simply followed the terms of the Secured Loan Agreement it had with plaintiff, and that plaintiff is responsible for his own losses. USAlliance claims that it is a membership non-profit organization, that its responsibility is to its entire membership, that it accorded plaintiff as a member every consideration it could taking into account its obligations to the membership as a whole, and that plaintiff, disregarding the best interests of the other members, and hoping that the stock market would improve and thereby cure his undercollateralization, took no action, in breach of his agreement with, and obligations to, USAlliance.

46

*Joint Pretrial Memorandum*

## **Stipulations**

Stipulations as to certain facts have been entered into by counsel and will be reported to you. A stipulation is an agreement between counsel as to what certain facts were or what the testimony would be if certain persons testified before you. These stipulations are equivalent for your purposes to the presentation of evidence or live testimony. You should consider the weight to be given to these stipulated facts just as you would any other evidence.

47

*Joint Pretrial Memorandum*

## Partial Summary Judgment

Certain issues and facts involved in the lawsuit have been determined by the Court in partial summary judgment rulings. A partial summary judgment ruling is an interlocutory ruling; since it is not appealable, it does not have the effect of a final judgment until all matters in the case are decided. In giving such ruling, the Court has determined certain matters leaving only disputed facts for trial. In re Diamond Door Co., 505 F.2d 1199 (9th Cir. 1974). As Rule 56(d) of the Federal Rules of Civil Practice prescribes, "Upon the trial of the action, the facts so specified shall be deemed established and the trial shall be conducted accordingly." Such ruling establishes the "law of the case," that is, once a court has settled a particular issue in a case, it need not consider again what has been decided in the same action. Once an issue is litigated and decided, that should be the end of the matter. United States v. United States Smelting, Refining & Mining Co., 339 U.S. 186 (1950). A partial summary judgment establishes the law of the case on the issues decided. United States v. Horton, 622 F.2d 144 (5th Cir. 1980).

Here the Court entered a ruling on March 28, 2002 granting summary judgment to USAlliance as to several of plaintiff's claims. On February 23, 2004 the Court granted further partial summary judgment to USAlliance dismissing other of plaintiff's claims, and leaving only the claims of negligence and beach of fiduciary duty involved here. On March 11, 2004 the Court added an addendum to the latter ruling correcting a factual error. Those matters decided by the Court in its orders granting USAlliance partial summary judgment are settled. See 1B Moore's Federal practice, ¶0.404[1].

## Conclusively Decided Facts

In its partial summary judgment decisions, this Court determined that the following facts have been conclusively established. Therefore, you must accept the following facts as true. Fed. R. Evid. 102(g).

1. The plaintiff is a resident of the State of Connecticut and a member of USAlliance.
2. USAlliance is a federally regulated credit union that provides many different financial services.
3. Affina Brokerage Services, Inc., (hereinafter "Affina") was the brokerage arm and a fully owned subsidiary of USAlliance, sharing employees and office space.
4. Conte first joined the IBM Credit Union, which was a corporate predecessor of USAlliance, in 1970.
5. Since about 1970, plaintiff has taken advantage of multiple services of USAlliance, including loans, banking services and brokerage services.
6. Conte signed a Secured Loan Application and a Stock Secured Loan Agreement on October 11, 1994, in order to set up a Secured Loan Revolving Credit Plan with USAlliance, which I shall call the Stock Secured Loan Account.
7. The Secured Loan application signed by Conte includes the following relevant terms:

48

*Joint Pretrial Memorandum*

Security Collateral:  The value of your collateral, as determined by the Credit Union, must remain greater than the principal balance plus accrued finance charges you owe.  Should the loanable value of your securities decline, the Credit Union may, at its sole option and without prior notice, transfer funds from another account or loan of yours to pay down your loan, or sell you collateral and apply the proceeds to this and any other debts you may owe the Credit Union.

Stock Sales:  When necessary, Credit Union members can sell securities to repay an outstanding Credit Union loan, in whole or in part, in accordance with federal accounting procedures.

8.          Similarly, the Secured Loan Revolving Credit Plan and Disclosure Agreement provides:

Security Interest;  That to protect the Credit Union in the event of default, you grant the Credit Union a security interest in any shares of Capital Stock or other stocks or bonds which have been endorsed, delivered and/or pledged to the Credit Union as collateral.  You also pledge and grant a security interest in and/or right to offset against all Credit Union account balances on which you are an account owner except qualified retirement accounts...

[T]he Credit Union's responsibility for your collateral in its possession is to use reasonable care for the custody and preservation of your collateral...

[I]n the event of default, the Credit Union may, at its sole option and without prior notice,....sell or transfer your collateral and apply the proceeds to this or any other debts you may owe the Credit Union.

9.          Plaintiff had knowledge that, under the terms of his agreement, he could

borrow up to 85% of the value of the assets in his portfolio that were on deposit

at USAlliance.

10.          Plaintiff, used the value of his assets on deposit at USAlliance to purchase

securities, with the understanding that if he was undersecured he would have to

make up the difference.

49

*Joint Pretrial Memorandum*

11.      Plaintiff maintained a large stock portfolio and large borrowings at

USAlliance.

12.      All securities transactions made and authorized by plaintiff before

September 9, 1998, were unsolicited, and no member of USAlliance or Affina

encouraged plaintiff to buy or sell stock.

13.      Plaintiff kept track of the value of his securities portfolio on a regular basis,

utilizing the automated dial-up telephone service provided by USAlliance to

check portfolio account balances as well as his own system through his

computer.

50

*Joint Pretrial Memorandum*

14.   In 1993 plaintiff became undersecured due to a drop in the value of his stock.

15.   USAlliance responded by placing a courtesy call to plaintiff, informing him of how much he was undersecured.  Plaintiff also received a letter that informed him of his undersecured status.

16.   On September 8, 1998, plaintiff received a courtesy call from David Brody, an employee of USAlliance's collections department, alerting him to the fact that he was undersecured in his loan account.

17.   On September 9, 1998 plaintiff and USAlliance did not communicate.

18.   On September 10, 1998 sales of securities held as collateral took place.

19.   Certain sales were initiated by USAlliance and others by plaintiff.

51

*Joint Pretrial Memorandum*

## **Depositions**

Some of the testimony before you is in the form of depositions that have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

52

*Joint Pretrial Memorandum*

## Use of Deposition for Impeachment

A witness may be discredited or "impeached" by contradictory evidence, thereby a showing that he testified falsely concerning a material matter, or by other evidence inconsistent with the witness' present testimony.  Testimony given in the form of depositions would be one such example of evidentiary conflict.  Depositions consist of sworn recorded answers to questions put to witnesses before the trial.  If you believe that the testimony given in the depositions conflicts with that given by the same witness at trial, then you may give that evidence or weight you think it merits in that matter or any other matter.  Lewis v. Baker, 526 F.2d 470 (2d Cir. 1975).  II Wigmore Evidence, § 902 et seq. (3d ed. 1940).

53

*Joint Pretrial Memorandum*

## Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict. One type of evidence is direct evidence. One kind of direct evidence is a witness' testimony about something he knows by virtue of his own senses, something he has seen, felt, touched or heard. Direct evidence may also be in the form of an exhibit. The other type of evidence is circumstantial evidence.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts. There is a simple example of circumstantial evidence that is often used.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you cannot look outside.

As you are sitting here, someone walks in with an umbrella that is dripping wet. Somebody else then walks in with a raincoat that is also dripping wet.

Now, you cannot look outside the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of the facts that I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.

54

*Joint Pretrial Memorandum*

Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.

55

*Joint Pretrial Memorandum*

Circumstantial evidence is of no less value than direct evidence; it is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury, decide the facts in accordance with the preponderance of all the evidence, both direct and circumstantial.

56

*Joint Pretrial Memorandum*

## **Preponderance of the Evidence**

I have used the term "preponderance of the evidence" to describe the burden on the plaintiff to prove its claim. What does the term "preponderance of the evidence" mean?

To establish by a preponderance of evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than that opposed to it. And here it is important for you to realize that this refers to the quality of the evidence and not to the number of witnesses or the number or variety of the exhibits.

In determining whether any fact in issue has been proved by a preponderance of evidence in the case, the jury may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have introduced them.

This means that you should consider all the evidence, that which supports the plaintiff's contentions and that which supports the defendant's contentions, and you should determine which has the more convincing weight or what seems to you to make more sense.

57