*Joint Pretrial Memorandum*

Here we are talking about common sense. Again, this does not mean you should add up the number of witnesses or the number of exhibits on each side and actually balance them. The test is not the quantity of the evidence, but, rather, its quality. Nor does it depend on who called the witnesses to testify. It is not who called a witness, but what that witness' testimony proves, that is important. Finally, it is not how long the lawyers spent introducing evidence on a particular subject,  or arguing on that subject, but rather what the evidence proves about the claims in this case that is relevant. Simply because I have permitted certain items of evidence or subjects of evidence to be introduced does not mean that I have decided on their importance or significance. That is for you to decide.

58

*Joint Pretrial Memorandum*

## **Charts and Summaries**

In addition to all the other evidence, plaintiff and defendant have presented exhibits in the form of transcripts of testimony from audio recordings. I have decided to admit these transcripts in order to save time and permit you to give them such weight as you think appropriate. However, as I told you, they are no better than the audio recordings upon which they are based. Therefore, you are to give no greater consideration to these transcripts than you would give to the evidence upon which they are based.

It is for you to decide whether the transcripts correctly present the information contained in the audio recordings on which they were based, and to the extent you find such audio recordings persuasive on the relevant issues in this case to give those transcripts corresponding weight. You are entitled to consider the transcripts if you find they are of assistance to you in analyzing and understanding the evidence. You should use them to the extent you think they are relevant.

59

*Joint Pretrial Memorandum*

## Credibility of Witnesses

Now for the important subject of evaluating testimony.

How do you evaluate the credibility or believability of the witnesses? The answer is that you use your plain common sense. Common sense is your greatest asset in the fulfillment of your obligation as a juror. You should ask yourselves, did the witness impress you as honest, open and candid? Or did the witness appear evasive or as though he or she were trying to hide something? How responsive was the witness to the questions asked on direct examination and on cross—examination?

There are three ways in which you may decide a witness' testimony is not credible. First, the way a witness testifies may persuade you that the witness is being inaccurate or untruthful. Second, you may conclude that the testimony of a witness fails to conform to the facts as indicated by the other evidence you have seen —— including the testimony of other witnesses. Third, you may be persuaded by the evidence you have heard regarding discrepancies between the trial testimony of a witness and something done or said at some earlier time by that witness. You may reach any of these conclusions for any number of reasons, for example, because a witness' recollection is wrong, because a witness did not accurately see or hear what he or she testified about, because a witness was nervous or confused or because he or she didn't express him or herself clearly. Or, a witness may be intentionally testifying falsely. If you find that a witness is intentionally telling a falsehood, that is always a matter of importance that you should weigh carefully.

60

*Joint Pretrial Memorandum*

However, few people recall every detail of every event precisely the same way. A witness may be inaccurate, contradictory or even untruthful in some respects and yet entirely believable and truthful in other respects. It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept some and reject the balance of the testimony any witness. You are not required to accept testimony even though the testimony is uncontradicted and the witness' testimony is not challenged. You may decide because of the witness' bearing or demeanor, or because of the inherent improbability of the testimony, or for other reasons sufficient to yourselves that the testimony is not worthy of belief. On the other hand, you may find, because of a witness' bearing and demeanor and based upon your consideration of all the other evidence in the case, that the witness is truthful.

Similarly, it is for you to determine whether a prior statement was inconsistent, and if so how much, if any, weight to give to an inconsistent statement or a discrepancy in testimony in determining whether to believe all or part of a witness' testimony. However, you may consider such evidence of a witness' prior inconsistent statements only insofar as it relates to that witness' credibility. Evidence of a prior inconsistent statement must not be considered by you as affirmative evidence in determining liability, except for statements that have been received in evidence. Otherwise, evidence of a prior inconsistent statement was placed before you for the limited purpose of helping you decide whether, and how much, to believe the trial testimony of the witness who contradicted him or herself.

61

_Joint Pretrial Memorandum_

      Thus, there is no magic formula by which you can evaluate testimony. You bring to this courtroom all your experience and all of the background that you have in your everyday life. You determine for yourself in many circumstances the reliability of statements that are made by others to you and upon which you are asked to rely and act. You may use the same tests here that you use in your everyday life. You may consider the interest of any witness in the outcome of this case and any bias or prejudice of any such witness, and this is true regardless of who called or questioned the witness.

      Now, this is certainly not to suggest that any witness with an interest in a case will necessarily testify falsely. It is simply a matter for you to consider as you review the credibility of witnesses.

62

*Joint Pretrial Memorandum*

## Interested Witnesses

The plaintiff, and officers and employees of the defendant, have testified before you. As parties to the action, they are interested witnesses.

An interested witness is not necessarily less credible than a disinterested witness. The fact that a witness is interested in the outcome of the case does not mean that the witness has not told the truth. It is for you to determine from the witness' demeanor on the stand and such other tests as your experience dictates whether or not the witness' testimony has been colored, intentionally or unintentionally, by the witness' interest. You may, if you deem it proper under all of the circumstances, disbelieve the testimony of such a witness, even though it is not impeached or otherwise contradicted. However, you are not required to disbelieve such a witness, and may accept whatever part of the witness' testimony you deem reliable, while rejecting whatever you deem unreliable.

63

*Joint Pretrial Memorandum*

## Claim for Breach of Fiduciary Duty

A securities broker does not in the ordinary course of business owe a fiduciary duty to a customer i.e., a purchaser or seller of securities.  Davantzis v. PaineWebber Incorporated, 2001` N.Y. Misc. Lexis 536 (Sup. Ct. Nassau Co. 2001); Levitin v. PaineWebber, Inc., 933 F.Supp. 325 (S.D.N.Y. 1996), aff'd, 159 F.3d 698 (2d Cir. 1998), *cert denied*, 525 U.S. 1144, 119 S. Ct. 1039 (1999).

64

*Joint Pretrial Memorandum*

Similarly, a lender-borrower or creditor-debtor contractual relationship (in this case a written contract between plaintiff and defendant) does not give rise to a fiduciary obligation on the part of either the lender or the creditor. Bank Leumi v. Block 3102 Corp., 180 A.D.2d 588, 589, 580 N.Y.S.2d 299, (1st Dept 1992), *lv. denied* 80 N.Y.2d 754, 587 N.Y.S.2d 906, (1992); Landes v. Sullivan, 235 A.D.2d 657, 660, 651 N.Y.S.2d 731 (3d Dept 1997 ); Banque Nationale de Paris v. 1567 Broadway Ownership Associates, 214 A.D.2d 359, 360, 625 N.Y.S.2d 152) (1st Dep't 1995); Frutico, S.A. de C.V. v. Bankers Trust Co., 833 F. Supp. 288 (S.D.N.Y. 1993), *aff'd* 23 F.3d 396 (2d Cir. 1994).  Generally, banking relationships are not viewed as special relationships giving rise to a heightened duty of care.  Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 158 (2d Cir. 1995); Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 122 (2d Cir. 1984); Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, 01 Civ. 2946 (DLC), 2004 U.S. Dist. Lexis 2777 (S.D.N.Y. 2004). Nor is the mere communication of confidential information sufficient in and of itself to create a fiduciary relationship between a bank (here a federal credit union, USAlliance) and its customers. At the same time, however, it is not mandatory that a fiduciary relationship be formalized in writing, and any inquiry into whether such obligation exists is necessarily fact-specific to the particular case. Beyond what may be memorialized in writing, a court will look to whether a party placed confidence in another and reasonably relied on the other's superior expertise or knowledge (*see,* Chester Color Separations v. Trefoil Capital Corp., 222 A.D.2d 276, 636 N.Y.S.2d 613 (1st Dept 1995); Manufacturers

65

*Joint Pretrial Memorandum*

Hanover Trust Co. v. Yanakas, 7 F.3d 310, 318 *motion to vacate denied,* 11 F.3d 381 (2d Cir. 1993).

For example, in Scott v. Dime Savings Bank, FSB, 886 F. Supp. 1073, 1978 (S.D.N.Y. 1995), *aff'd,* 101 F.3d 107 (2d Cir. 1996), *cert. denied* 520 U.S. 1122 (1997) (i) the bank encouraged the plaintiffs to borrow substantially more money than they intended to resulting in substantial fees and interest to the bank; (ii) induced the plaintiffs to invest a substantial portion of the borrowed money through the bank's broker-dealer affiliate; and (iii) participated with plaintiff as he engaged in stock purchases and sales which resulted in commissions to the bank.  Under these circumstances it was found that the plaintiff had reposed trust and confidence in the bank and that the bank thereby gained a resulting superiority or influence over the plaintiff.

In essence, because the bank encouraged the borrowing and induced the plaintiff to invest through its broker-dealer affiliate, the arms length relationship between the bank and the plaintiff ceased and the bank assumed a fiduciary duty to the plaintiff.

66

*Joint Pretrial Memorandum*

A party who is found to have a fiduciary duty, has a duty to act in good faith in the best interest of the party on whose behalf they are acting. One acting in a fiduciary capacity owes an undivided and unqualified loyalty and may not act in any manner contrary to the interest of the individual upon whose behalf he is acting. A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom the fiduciary duty is owed, and the fiduciary is forbidden to obtain an improper advantage at the others expense. *New York Pattern Jury Instructions* 3:59.

In this case, plaintiff claims the existence of such a fiduciary relationship with defendant regarding the sale of his stock at a point in time when plaintiff's Stock Secured Loan Account had insufficient collateral to secure his outstanding loan with USAlliance. USAlliance on the other hand claims that it acted strictly in accordance with the terms of the written agreement between plaintiff and it, that it rendered no advice whatsoever to plaintiff, nor encouraged the plaintiff to borrow from it and that plaintiff's securities purchases and sales were all unsolicited *i.e.*, done purely by plaintiff without any action by USAlliance whatsoever; and accordingly, that its relationship with plaintiff in the circumstances here was as a lender and that there was no fiduciary relationship between them whatsoever.

You may also consider that ongoing conduct between parties may give rise to a fiduciary relationship that will be recognized by the court (*see, e.g.,* Kern v. Robert Currie Associates, 220 A.D.2d 255, 632 N.Y.S.2d 75 (1st Dept 1995)). This is precisely what plaintiff also claims occurred here.

67

*Joint Pretrial Memorandum*

      In this case plaintiff also claims that his past experience with USAlliance created a fiduciary relationship because in one previous dealing in 1993 when his account became undersecured USAlliance did not liquidate his stock. As I will more fully explain to you later, one incident does not constitute ongoing conduct.

68

*Joint Pretrial Memorandum*

Taking all the instructions that I have given to you, it is essential that you first determine whether a fiduciary relationship with USAlliance was established. It is only after you find that a fiduciary relationship was established that you can even consider whether USAlliance breached a duty under that relationship.

If you find that a fiduciary relationship did not exist between plaintiff and USAlliance then you need proceed no further. If you find that such a duty did exist, but USAlliance did not breach its fiduciary duty to plaintiff, you need proceed no further. If you find that a fiduciary relationship was established between USAlliance and plaintiff, then you should consider whether USAlliance did breach its fiduciary duty to plaintiff. If you so find then you must decide whether that breach was a substantial factor in causing plaintiff to sustain damages. If you find that it was a substantial factor in causing plaintiff to sustain damages, you must then decide the amount of damages plaintiff sustained. I will discuss damages with you later.

69

*Joint Pretrial Memorandum*

## **Fiduciary Obligations Based on Time**

Another element plaintiff also claims established a fiduciary relationship between plaintiff and defendant was his membership in defendant for about thirty (30) years and that he had used the broad range of the banking and brokerage services offered by defendant during that period.  Such a relationship in and of itself does not give rise to fiduciary duties owed by defendant to plaintiff.  See Compania Sud-Americana de Vapares, S.A. v. IBJ Schroder Bank & Trust Co., 785 F.Supp. 411 (S.D.N.Y. 1992); *see also* Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank Nat. Ass'n, 731 F.2d 112 (2d Cir. 1984).

70

*Joint Pretrial Memorandum*

## Claim for Negligence

A claim for negligence requires proof of: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff as a result of the breach. However, a cause of action in negligence "cannot be the basis of liability where [the defendant's] sole legal duties to [the plaintiff] arose entirely out of contract." The negligent performance of a contract is not considered a tort unless a legal duty "independent" of the contract itself has been violated. This legal duty must "spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, 01 Civ. 2946 (DLC), 2004 U.S. Dist. Lexis 2777 (S.D.N.Y. 2004). There are circumstances where a "legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship". For example, if a "defendant goes beyond a mere breach of contract and acts in such a way that a trier of fact could infer that it wilfully intended to harm the plaintiff," then the defendant may have breached an independent duty to the plaintiff. Whether an independent duty exists is a question of law to be decided by the Court. *Id.*

71

*Joint Pretrial Memorandum*

## Proximate Cause - In General

An act or omission is regarded as a cause of an injury if it was a substantial

factor in bringing about the injury, that is, if it had such an effect in producing the injury

that reasonable people would regard it as a cause of the injury.

*Joint Pretrial Memorandum*

## Custom - Course of Dealing

One incident on its own is insufficient to establish a custom or practice of course

of dealing. In fact, "custom and practice do not give rise to an independent legal duty."

Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, 01 Civ. 2946 (DLC), 2004 U.S. Dist. Lexis

2777 (S.D.N.Y. 2004).

Among other things that plaintiff claims establishes a fiduciary duty between him

and USAlliance, is the fact that when in 1993 the Stock Secured Loan Account became

undercollateralized, USAlliance's predecessor gave him notice and worked with him

over some period of time which eventuated in his pledging two condominiums that he

owned as collateral to secure that undercollateralization. However, one incident on its

own is insufficient to establish a custom or practice or a course of dealing between the

parties. *See* Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A., No. 01 Civ. 1047,

2002 U.S. Dist. LEXIS18115 (S.D.N.Y. Sept. 5, 2002); General Motors Acceptance

Corp. v. Clifton-Fine Cent. School Dist., 85 N.Y.2d 232, 237, 623 N.Y.S.2d 821 (1995).

A course of dealing is a sequence of previous acts and conduct between the parties to a

particular transaction which is fairly to be regarded as establishing a common basis of

understanding for interpreting their expressions and other conduct. In re Frederes, 98

B.R. 165, 168 (Bankr W.D. N.Y. 1989); Associated Metals & Minerals Corp. v. Sharon

Steel Corp., 590 F.Supp. 18 (S.D.N.Y. 1983), *aff'd* 742 F2d 1431 (2d Cir. 1983).

73

*Joint Pretrial Memorandum*

Because plaintiff points to only one incident, that in 1993 I have discussed with you, he has not established a pattern or practice or course of dealing between USAlliance and plaintiff under which USAlliance would give plaintiff notice and sufficient time for plaintiff to cure the undercollateralization either because the stock market improved, by depositing additional collateral and/or by selling sufficient collateral to cure the default.

74

*Joint Pretrial Memorandum*

## Course of Dealing - Not Alter Express Term of Contract

Further, a "course of dealing" does not alter the express terms of the Secured

Loan Application and Secured Loan Revolving Credit Plan and Disclosure Agreement

signed by plaintiff on October 11, 1994.  In re Frederes, 98 B.R. 165 (Bankr. W.D.N.Y.

1989); City of New York v. New York City Ry Co., 193 N.Y. 543, 548, 86 N.E. 565, 567

(1908); Associated Metals & Minerals Corp. v. Sharon Steel Corp., 590 F.Supp. 18

(S.D.N.Y. 1983), *aff'd* 742 F.2d 1431 (2d Cir. 1983).

75

*Joint Pretrial Memorandum*

## Margin Requirements Are Primarily
## for the Protection of the Broker

Margin requirements are, as a matter of law, established for the benefit of the broker, for the purpose of protecting it with respect to loans it makes to its customers, and these requirements are not established for the benefit of customers.

Carras v. Burns, 516 F.2d 251, 260 (4th Cir. 1975)

76

*Joint Pretrial Memorandum*

## No Prior Notice

"No provision of law or contractual provision between the parties required the plaintiff to give the defendant any prior notice of the sale of the pledged stock. The stock was 'collateral ... of a type customarily sold on a recognized market' and was therefore exempt from the notice requirements of U.C.C. § 9-504(3). The purpose of notice is to afford the debtor an opportunity to protect his interests at the sale, or to redeem prior thereto, to the end that the property be not sacrificed by a sale at less than its true value... But the reason and need for notice disappear where, as here, the property consists of investment securities having, at any given time, a current dollar value on a ready market.  The reason for exempting from the notice requirement a transaction where there is a recognized market is that the price on the recognized market represents the fair market value from day to day.  If there is a recognized market, theoretically, the bast [sic] price at any given time is the current market price."

Marine Midland Bank-Rochester v. Vaeth, 88 Misc.2d 657, 388 N.Y.S.2d 548, 550 (Sup. Ct., Monroe Co. 1976); Bankers Trust Co. v. J.V. Dowler & Co., Inc., 47 N.Y.2d 128, 417 N.Y.S.2d 47 (1979).

77

*Joint Pretrial Memorandum*

## Consider Damages Only If Necessary

If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages, if any, to which the plaintiff is entitled. You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

In the event that you do find that Defendants is liable for damages, you must understand that there are limits to the amount of damage that you may award.

For example, you can only consider damages regarding the stock owned by Plaintiff, which was actually liquidated by the Defendant, and further, of those stocks which Defendant liquidated you can only consider those stocks which the evidence shows that Plaintiff did not want to be sold anyway. So in essence you can only consider those stocks liquidated by Defendant that the evidence shows that Plaintiff did not want sold.

Only if you decide that the plaintiff is entitled to recover will you consider the measure of damages.

78

*Joint Pretrial Memorandum*

## Damages - Measure of Damages

If you find that the plaintiff is entitled to recover from the defendant, you must render a verdict in a sum of money that will justly and fairly compensate the plaintiff for the losses resulting from the injuries he sustained.

Plaintiff claims that he incurred damages in the amount of $_____ as a result of "capital gains tax" for which he was responsible due to the sale of certain stocks. Those stocks are only the stocks defendant liquidated and which plaintiff did not want to sell. First, you must determine the amount of capital gains tax incurred by defendant from the sale of these stocks. In so doing, you must take into account whether it is long term gain or short term gain. Second you must subtract any profits he realized from the sale of those stocks. To determine the profits realized from the sale of those stocks you must calculate the price at which defendant sold each such stock and then subtract the amount which plaintiff originally paid for each such stock. The amount of damages plaintiff incurred is the amount of capital gains tax on each such stock paid less the profit plaintiff earned on each such stock.

Plaintiff also claims that he incurred other damages as a result of the liquidation of certain stock by defendant. Again, you may only consider those stocks liquidated by defendant and not those sold by plaintiff. The measure of damages in a case of wrongful liquidation is a matter of law and the appropriate measure is the difference between the liquidation prices of the contracts and the highest intermediate price reached by the securities during a reasonable period after the wrongful sale.

79

*Joint Pretrial Memorandum*

A reasonable period under the facts and circumstances here would be one trading day.  <u>Cauble v. Mabon Nugent & Co.</u>, 594 F. Supp. 985, 996 (SDNY 1984).

80

*Joint Pretrial Memorandum*

Next you must determine if plaintiff properly mitigated his damages because securities were wrongfully liquidated by defendant that subsequently increased in price.

81

*Joint Pretrial Memorandum*

## **Mitigating of Damages**

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate – to avoid or minimize those damages. If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort such as buying back the stocks which USAlliance liquidated. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of any opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. Therefore defendant must show that plaintiff could have purchased the stock that was sold, and by doing so, he would have avoided part of the damages which he claims were caused by the sale of his stock. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

82

*Joint Pretrial Memorandum*

## Closing Comment

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact. It is for you, and you alone, to decide whether the plaintiff has sustained his burden of proof and shown that the defendant has not met its burden of proof.  I know you will try the issues that have been presented to you according to the oath that you have taken as jurors. In that oath you promised that you would well and truly try the issues joined in this case and a true verdict render.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard. No one juror should hold the center stage in the jury room and no one juror should control or monopolize the deliberations. If, after listening to your fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

I will give you a verdict form to be filled in by the jury. The purpose of the questions on the form is to help us —— the Court, and counsel for plaintiff and defendant -- to understand what your findings are. I will hand this form, which contains a set of questions to the clerk, who will give it to you so that you may record the decision of the jury with respect to each of those questions.

83

No inference is to be drawn from the way the questions are worded as to what the answer should be. The questions are not to be taken as any indication that I have any opinion as to how they should be answered. I have no such opinion, and even if I did it would not to be binding on you.

Before the jury attempts to answer any question you should read the entire set, and make sure that everybody understands each question. Before you answer the questions, you should deliberate in the jury room and discuss the evidence that relates to the questions you must answer. When you have considered the questions thoroughly, and the evidence that relates to those questions, record the answers to the questions on the form I am giving you. Before you can record an answer, all six jurors must agree to it; your answers must be unanimous.

If at any time you are not in agreement, you are instructed that you are not to reveal the standing of the jurors, that is, the split of the vote, with respect to any questions, to anyone, including the Court, at any time during your deliberations. Finally, I say this, not because I think it is necessary, but because it is the custom in this courthouse, you should treat each other with courtesy and respect during your deliberations.

During your deliberations, you will have the exhibits available to you. You may also ask to have testimony read back.  But please remember that we do not have a transcript available, so if you do ask for testimony, the reporter must search through his or her notes and the lawyers must agree on what portions of testimony may be called for, and if they disagree I must then resolve those disagreements. That can be a time—

84

consuming process. So please try to be as specific as you can in requesting testimony, if in fact you do want to hear any.

If you have questions for the Court, just send me a note. As I said, I will provide you with a copy of this set of instructions to take with you into the jury room.

Before you actually begin deliberating, please select a foreperson. The foreperson has no greater voice or authority than any other juror but should be selected as the person who will communicate with the Court when questions arise.

All litigants stand equal in this room. All litigants stand equal before the bar of justice. All litigants stand equal before you. Your duty is to decide between these parties fairly and impartially, to see that justice is done, all in accordance with your oath as jurors.

Members of the jury, I ask your patience for a few moments longer. It is necessary for me to spend a few moments with counsel and the reporter at the side bar. I will ask you to remain patiently in the jury box, without speaking to each other, and we will return in just a moment to submit the case to you.

Thank you.

85

*Joint Pretrial Memorandum*

     c.     <u>Plaintiff Conte's Proposed Verdict Form</u>:  Mr. Conte respectfully requests that the Court issue the following verdict form to the jury for its deliberations.  If developments during trial necessitate revision of this Verdict Form, Mr. Conte respectfully reserves the right to seek permission to submit a revised Verdict Form to conform to the evidence presented or rulings made.