**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

|  |  |
|---|---|
| **VICTOR T. CONTE,** | : |
| **Plaintiff,** | : |
| **v.** | : |
|  | : |
| **US ALLIANCE FEDERAL CREDIT UNION,** | : |
| **AFFINA BROKERAGE SERVICES, INC.,** | : |
| **ROBERT AMBROSE, and JOHN WALSH,** | : |
| **Defendants.** | : |

JUL 12  3 48 AM '04

**Civil Action No.**
**3:01 CV 463 (EBB)**

**SUR-REPLY**
**AFFIRMATION**

**July 9, 2004**

Elisabeth Seieroe Maurer, being duly sworn, hereby affirms under penalties of perjury:

1.    I submit this affirmation with the Court's permission in further support of Plaintiff Victor Conte's Motion in Limine dated April 7, 2004 and Motion for Sanctions dated May 7, 2004.[1] As indicated below, Defendant and Defendant's counsel have repeatedly presented and used a document in significantly altered form, in its submissions to this Court in various pleadings, and as a proposed trial exhibit. Such conduct evidences a pattern of willful misconduct that should be considered by this Court in issuing a decision on Plaintiff's Motion in Limine dated April 7, 2004 and Motion for Sanctions dated May 7, 2004.

2.    The document as presented is titled "Member Agreement Governing Security Transactions". <u>See</u> **Exhibit "A".** That document in its altered form,

---

[1] Plaintiff submitted its Motion in Limine dated April 7, 2004 on the grounds that US Alliance failed to safeguard, and destroyed / permitted to be destroyed and/or otherwise permitted to become 'unavailable', crucial tape recorded evidence of conversations between Mr. Conte and US Alliance. Plaintiff submitted its Motion for Sanctions due to US Alliance's willful, continuing failure to comply with this Court's Orders dated April 23, 2004 and April 27, 2004, and with the insurance disclosure requirements of Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure.

consists of two pages, is dated October 1, 1990 (on page 2), and as indicated on page two thereto was published in or about July, 1996. See id., bottom right portion of page 2.

3.    While preparing for trial on Saturday June 26, 2004, I discovered in a large stack of original US Alliance / IAG Federal Credit Union documents that Mr. Conte had provided to me, an IAG brochure titled "***Brokerage Services    IAG Credit Union***" ("Brokerage Services brochure"), the entirety of which is attached hereto as **Exhibit "B"**.

That Brokerage Services brochure when completely opened, consists of 8 columns on two pages.

The middle two columns on each page of that "Brokerage Services" brochure contains the "Member Agreement Governing Security Transactions" that has up until now been produced and presented by Defendant and its counsel as a complete document without the outside two columns on each side. At no point has Defendant or its counsel ever produced this document in its complete, unaltered form.

4.    The following information contained in the remaining columns of that brochure was cut off and is relevant, essential evidence that directly pertains to material issues in this case:

(1) FRONT PAGE, Column one: titled "Brokerage Services":

This column describes in detail the types of brokerage services that US Alliance offered to its members in 1998. This column contains crucial evidence that US Alliance's relationship with its members extended

2

beyond a bank – debtor relationship into that of a firm offering brokerage services. This Court held in its ruling on US Alliance's motions for summary judgment, that such evidence is relevant and essential to prove that US Alliance established a fiduciary relationship with Mr. Conte, breached that duty and committed negligence.

This column begins as follows:

**Brokerage Services**

**Astute Credit Union investors who follow the market need brokerage services that provide convenience, dependability, direct access and low commissions.**
**And that's what you get. Services designed exclusively for Credit Union members. To meet your investment needs.**

See id., column one, ¶1 titled "Brokerage Services" (emphasis added).

This column also contains promises and representations from US Alliance to its brokerage customers regarding the brokerage services it offered, such as:

**You can count on Affina's specialized skills along with the high caliber of service that you've come to expect from your Credit Union (see ¶ 1 titled "Professional Skills, Credit Union Service") (emphasis added);**

**...we charge low commissions for your stock trades" (see ¶ 2 titled "Low Costs) (emphasis added);**

**...We contain costs by offering only hose investments that have proven most popular amount Credit Union members, including New York, American and NASDAQ stocks, equity options. (see ¶ 3 titled "Specialized Investments")(emphasis added);**

**...You can count on personal attention to your financial needs and professional assistance in carryout out your directives. This service is designed for members who know what they**

3

want, and how need action, not advice" (see ¶ 4 titled "Personal Attention") (emphasis added).

Finally the last part of that column instructs members that **"[t]o take advantage of Credit Union Brokerage Services, complete the** *Member Services Agreement Governing Security Transactions* **and return it to the Credit Union"** (see ¶ titled "Sign Up Today"). It thus makes clear that in order for Mr. Conte to be bound by that agreement, he had to complete and sign the attached form. Defendant has never produced a copy of that form with Mr. Conte's signature, despite Plaintiff's requests for same, while all along insisting that Mr. Conte is bound by the Member Agreement to which it was attached.

(2) FRONT PAGE, Column four (last column on right) titled "Member Agreement Governing Security Transactions…IAG Federal Credit Union":

This column illustrates that the Credit Union was actively soliciting its members to take advantage of its brokerage services. This form is to be filled out, signed and returned to the Credit Union. It asks for information from the Credit Union member, just as a brokerage firm would be required to do under the NYSE and NASD "know your customer" rules by what is commonly referred to in the brokerage business as a "new account form" or "new account application". Like many new account forms/applications in use by brokerage firms, this column asks for credit union members to provide information relating to their investment and employment history, and to state if the member, or any person in the

4

member's immediate family, is employed by a financial or brokerage firm, or any securities regulatory organization (such as the NASD, etc).

This column also contains crucial evidence illustrating that a member must take certain affirmative steps in order to be bound by the terms of the "Member Agreement Governing Security Transactions" to which it is attached. Specifically, the bottom of this column contains a one-paragraph "agreement" to be signed by the member, by which the member, among other things, acknowledges receipt of and agrees to the terms of the "Member Agreement Governing Security Transactions" attached to the left of this column. Once this form is signed, it must then be detached and mailed back to the Credit Union. (See sub paragraph (3) of this section, immediately below). As this information illustrates, in order for Mr. Conte to be bound by that "Member Agreement Governing Security Transactions", he must first fill out this form, sign the bottom and mail it back to the Credit Union. Defendant has never produced a copy of this form signed by Mr. Conte.

(3) <u>BACK PAGE: Column One</u> (back page to column containing form titled "Member Agreement Governing Security Transactions...IAG Federal Credit Union"): This column provides instructions on how a customer filling out the form contained on the reverse side of this page, should send it back to IAG Federal Credit Union. Once again, this relates to the Credit Union's involvement in the brokerage arena, beyond that of a typical bank-customer relationship. This column also illustrates that a member must

5

take certain affirmative steps before being bound by the "Member

Agreement Governing Security Transactions".

(4) <u>BACK PAGE:  Column Four titled "Brokerage Services...IAG Federal
Credit Union</u>: (column farthest on the right; the back page to the column
described in sub paragraph (1) above titled "Brokerage Services"):

This column contains crucial evidence that US Alliance's relationship with

its member extended beyond a bank – debtor relationship into that of a

firm offering brokerage services, which is exactly what this Court held is

relevant and essential evidence in considering whether US Alliance

established a fiduciary relationship with Mr. Conte and breached any

fiduciary duty owed to Mr. Conte.  This column sets the theme of this

brochure, which was to explain the "brokerage services" offered by the

Credit Union.

5.    Defendant and its counsel have produced that "Member Agreement

Governing Security Transactions" (contained in Exhibit "A" hereto) in that same

significantly altered form document to Plaintiff during discovery and used that

same document in its significantly altered form as an exhibit to motions and other

pleadings submitted to this Court.  As those pleadings illustrate (see below),

Defendant and its counsel have deleted parts of that document that illustrate the

Credit Union's involvement in the brokerage realm of its business, and that a

member would have to take <u>affirmative </u>steps, i.e., fill out, sign and return a form

to the Credit Union, in order to be bound by the Member Agreement Governing

Security Transactions" attached thereto.

An example of some of the situations in which Defendant and its counsel have used that document in its significantly altered form are as follows:

a. July 10, 2001 Affidavit of Robert Ambrose dated July 10, 2001 submitted in Support of Defendant's Motion for Summary Judgment:

page 2, paragraph 3: Mr. Ambrose states: "Plaintiff also entered into a second agreement with US Alliance – Member Agreement Governing Security Transactions (See Exhibit A hereto). Under this agreement, plaintiff appoints US Alliance as his 'agent and attorney-in-fact' essentially for the sole purpose of transmitting unsolicited buy and sell market orders received from plaintiff to US Alliance employees to a securities broker for execution".
This Affidavit encloses a copy of the Member Agreement Governing Security Transactions contained in Exhibit A hereto in its significantly altered form.

b. July 13, 2001; Local Rule 9(c) Statement submitted by Defendant's counsel Martin Unger and Andrew Zeitlin: Attorney Unger and Zeitlin state, in paragraphs 12 and 13 of this document as follows: "Conte also entered into a Member Agreement Governing Securities Transactions with US Alliance. Under the terms of the Member Agreement Governing Securities Transactions, plaintiff appointed US alliance as his agent and attorney-in-fact essentially for the sole purpose of transmitting unsolicited buy or sell orders received from Conte to a securities broker for execution".

c. July 13, 2001 Memorandum of Law in Support of Defendants' US Alliance, Affina's Motion to Dismiss submitted by Defendant's counsel Martin Unger and Andrew Zeitlin:

1) Memorandum, Page 2: "Prior to opening the account, Plaintiff specifically agreed to the terms of the...a Member Agreement Governing Securities Transactions.", See Exhibit A to Ambrose Aff'd.". (citing the Ambrose Affidavit that encloses a substantially modified copy of that document).

2) Memorandum, Page 4: "While Plaintiff frames his various causes of action in allegations sounding in contract, tort and fraud, the relationship between the parties is governed by the agreements which Plaintiff received and acknowledged in conjunction with his secured loan application – the Member Agreement Governing Security Transactions and the Secured Loan Revolving Credit Plan and Disclosure Agreement. See Ambrose Aff'd, Exhibit A....[W]hile the Member Agreement

7

Governing Security Transactions provides that 'this agreement shall be governed by and construed in accordance with the Federal Credit Union Act and the laws of the State where the Credit Union's headquarters is located' US Alliance's headquarters are located in New York". (Again, Defendant's counsel <u>cite the Ambrose Affidavit, which encloses a the substantially modified version of the "Member Agreement Governing Security Transactions</u>".

3) <u>Memorandum, Page 29</u>: Defendant represents that "Plaintiff's relationship with US Alliance is governed by the terms of...the Member Agreement Governing Security Transactions...[among other documents, and ] not by any relationship resulting from his long-standing affiliation with that credit union".

d. <u>April 16, 2003 Affidavit of Martin Unger, submitted in support of Defendant's Motion for Summary Judgment:</u> Attorney Unger affirms on page 4, ¶C: the "Member Agreement Governing Security Transactions" are "authentic and business records", and asks the Court to conclude as such through what counsel claims were Plaintiff's "Admissions" of same. Counsel also affirms on page 4, ¶D: "Conte agreed to the Member Agreement Governing Security Transactions marked as Defendant's Deposition Exhibit 7B on October 22, 2002 (Admission 38)".

d. <u>April 16, 2003 Memorandum of Law in Support of Defendant's Motion for Summary Judgment submitted by Defendant's counsel Martin Unger and Andrew Zeitlin:</u> Defendant's counsel once again claims that "...the relationship between the parties is governed by the agreements which plaintiff received and acknowledged in conjunction with his secured loan application – the Member Agreement Governing Security Transactions and the Secured Loan Revolving Credit Plan and Disclosure Agreement".

e. <u>May 27, 2004 Memorandum of Law Submitted by Defendant's counsel Martin Unger and Andrew Zeitlin, in Reply / Opposition to Plaintiff's motion for an order to withdraw admissions or allowing Plaintiff to file response to US Alliance's requests for admissions:</u> Defendant's counsel once again refers to the Member Agreement and attempts to claim that Mr. Conte signed same. (<u>See</u> page 5, top paragraph).

f. <u>June 3, 2003 Affidavit of Martin Unger in Opposition to motion for an order to withdraw admissions or allowing Plaintiff to file response to US Alliance's requests for admissions:</u> Page 5: Attorney Unger claims that Mr. Conte "admits he entered into...the Member Agreement

Governing Security Transactions", and <u>encloses the incomplete, significantly altered version of same,</u> in Exhibit "D" thereto.

6.    Defendant's counsel presented that document in its significantly altered form to Conte during his deposition (Exhibit 7B to Mr. Conte's deposition) as follows:

> Q:    Let me show you Defendant's Exhibit 7B.
>        Do you remember receiving this document before, "member agreement governing security transaction?" [sic]
>
>    MS. MAURER:    This exact agreement or an agreement with that title?
>
>    MR. UNGER:    This exact agreement.
>
> A:    No, I don't remember seeing this exact one, no.

<u>See</u> **Exhibit "C"** hereto, which contains a copy of the cover page and page 66 from Mr. Conte's deposition transcript, October 22, 2002.

7.    Defendant has also presented this document, in its significantly altered form, as one of its proposed trial exhibits (Defendant's proposed Exhibit "B").

8.    As indicated by the Memorandum of Law submitted to the Court in support of Plaintiff's Motion in Limine dated April 7, 2004 ("Pl.'s Mem., April, 7, 2004") and Memorandum of Law submitted in support of Plaintiff's Motion for Sanctions dated May 7, 2004 ("Pl.'s Mem., May 7, 2004"), a Court's power to impose sanctions upon a party for impose sanctions due to spoliation of evidence arises under a Court's inherent power to manage its own affairs.  <u>See</u> Pl.'s Mem., April 7, 2004, at 20, and Pl. Mem., May 7, 2004, at 6-7.  As those Memoranda make clear, a party's whole course of conduct in the context of a proceeding is relevant to a Court's determination of whether and what type of sanctions to impose upon

a party. See e.g., Pl.'s Mem., April 7, 2004, at 15 – 19, and 21 (illustrating that Courts will consider intentional, reckless or even negligent misconduct in deciding whether and what kind of sanctions to impose upon a party for misconduct in destroying and / or failing to produce relevant essential evidence).

9.     I believe that Defendant's repeated presentation and use of this document in significantly altered form, evidences a pattern of willful misconduct by Defendant and its counsel.  The above information, and the submissions made in support of Plaintiff's Motion in Limine and Motion for Sanctions clearly illustrate that Defendant and its counsel have, time and time again, engaged in a pattern of concealing evidence from Plaintiff and this Court, and destroying evidence, during the course of this proceeding in an attempt to prejudice Plaintiff.  Such conduct has severely impaired Plaintiff's ability to prosecute this case, and has compromised the integrity of this proceeding.

10.     Based on the foregoing, and the submissions that have been made in support of Plaintiff Conte's Motion in Limine dated April 7, 2004 and Motion for Sanctions dated May 7, 2004, Plaintiff Conte respectfully requests that such motions be granted in their entirety.

Dated:   July 9, 2004
             Ridgefield, Connecticut

_____
Elisabeth Seieroé Maurer (ct11445)

10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VICTOR T. CONTE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | 3:01 CV 463 (EBB) |
| | : | |
| US ALLIANCE FEDERAL CREDIT UNION, | : | |
| AFFINA BROKERAGE SERVICES, INC., | : | |
| ROBERT AMBROSE AND JOHN WALSH | : | July 9, 2004 |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff's Sur Reply Affirmation in further

support of Plaintiff's Motion in Limine and Motion for Sanctions was sent, via

Federal Express, on this 28th day of June 2004, to the following counsel:

U.S. Alliance Federal Credit Union
Martin P. Unger, Esq.
Certilman Balin
90 Merrick Avenue
East Meadow, NY 11554

U.S. Alliance Federal Credit Union
Eric P. Smith, Esq.
Lynch, Traub, Keefe and Errante, P.C.
52 Trumbull Street
New Haven, CT 06506

Eva M. Puorro

# EXHIBIT A

Union's cost for the transaction. We reserve the right to charge your account for the expenses of any special handling you request, including the issuance of stock certificates, or which we are required by law to perform.

**Settlement:** That we will charge your account for the purchase price, including all commissions and fees, of securities you buy and will credit your account with the net proceeds of securities you sell. That the obligation to deliver securities includes delivery of all rights that customarily accompany the sale of securities, such as cash or stock dividends or stock from a stock split which is paid or delivered to you after the settlement date. That if these dividends or stocks are not delivered within 3 business days or we are unable to settle a transaction because your securities are not fully nego- tiable or your securities are not on hand or for your account has insufficient funds, we may, at our discretion, take any actions deemed appropriate to make delivery or payment, including the right to borrow funds to you or purchase securities for delivery. You will reimburse us for all expenses we incur, including any market loss.

That you will pay upon demand any amounts due under this agreement including any deficiency remaining in the event of liquidation. You will also pay any reasonable expenses, including attorney's fees, for the collection of such amounts.

**Dividends, Interest and Proxies:** That we may collect all dividends and interest payable on the securities on account, and will arrange for them to be credited to your account when received. We may receive proxy statements and other shareholder communications from the issuers of the securities on account and will transmit them to you. You can instruct us how to vote your proxies. We shall have no liability if proxies inadvertently do not reach you.

**Safekeeping Service:** That to safekeep the securities on account, we may register your securities in our name as nominee or in the name of any securities depository in which your securities may be held. We, and any other nominees we authorize, may sign your name and guarantee your signature in order to transfer securities or certify the ownership of the securities to tax or other government authorities. You agree that only acceptable securities, that are owned by you will be placed in your account.

**Disclosure of Identity:** That unless you object to us in writing, we may provide your name, address, and securities position to each requesting company in which you own securities held by us. You understand the requesting company is prohibited from using the information provided for any purpose other than corporate com- munications. Your objecting or non-objecting status will apply to all securities held by us for you now or in the future. You may change your status by giving us written notice.

**Confirmations, Statements and Notices:** That confirmations and account statements shall be conclusive if not objected to in writing within 10 days after mailing. We will mail confirmations, state- ments and notices to you at your address of record with us and these communications will be deemed delivered, whether actu- ally received or not.

**Applicable Rules and Regulations:** That all transactions shall be subject to the constitution, rules, regulations, customs, and usages of the exchange, market or clearing house where executed. They are also subject to our bylaws, rules and procedures, and to all applicable federal and state laws, rules, and regulations.

**Amendment and Termination:** That this Credit Union may amend this agreement at any time, without your consent, upon reasonable written notice to you. Any such amendment shall be effective immediately upon publication unless a later effective date is speci- fied. No employee is authorized to waive or amend any provision of this agreement except in writing signed by an authorized officer of the Credit Union.

That either you or the Credit Union can terminate this agreement by written notice to the other, but no cancellation will affect your obligation to pay all amounts owing under this agreement.

**Miscellaneous:** That this agreement shall be governed by and construed in accordance with the Federal Credit Union Act and the laws of the State where the Credit Union's headquarters is located. This agreement shall be binding on your heirs, executors, administrators, successors and assignos.

That you will not initiate any transaction unless every account owner and every security owner is at least 18 years of age.

That if your account is owned by more than one person, the obligations and liabilities of each shall be joint and several. That each owner agrees with each other and the Credit Union: that securities shall be registered in the name(s) of the account owner(s) except for qualified retirement accounts; all securities can be delivered and pledged for a Credit Union loan; that purchased securities shall be held by us in writing, two or more account owners shall hold title as joint tenants with rights of survivorship; that the first named account owner has the authority to pledge, sell, assign and transfer any securities and to direct the disposition of any sales proceeds on behalf of each tenant.

**Liability:** That we will endeavor to complete your instructions solely at our discretion and we shall not be liable for failure to complete any transaction. We will not be responsible for any transaction error, delay, default or neglect by any postal or telecom- munications firm or any loss or additional expense due to default, neglect, or malfeasance of any correspondent, agent or broker to whom delivery, draft or security may be entrusted. IN ANY EVENT, OUR LIABILITY SHALL BE LIMITED TO THE AMOUNT OF FEES AND COMMISSIONS PAID.

October 1, 1990





One Interstate Terrace, 800 Midland Avenue, Rye, NY 10580-3999
914-921-1750   617-647-9400   212-640-2095   800-431-2754

© 1990-1996, CU Services Corporation
PRINTED ON RECYCLED PAPER     401 - 7/96 - 10M



DEFENDANT'S
EXHIBIT
75

# Member Agreement Governing Security Transactions

(Please Detach for Your Records)

The Credit Union will not accept orders to buy or sell securities within the first 10 days after your Credit Union account is established. Neither the Credit Union nor the broker gives investment advice and you alone bear the risks of your transaction decisions. This agreement requires you to have funds and/or securities on account before you can initiate a transaction.

In consideration of the Credit Union and broker accepting orders for the purchase, sale and holding of securities, you agree with the Credit Union and broker:

**Definitions:** That throughout this Agreement, the terms you and your refer to the individual signing this Agreement and any other person(s) initiating transactions with your permission.

That the term Credit Union refers to the IAC Federal Credit Union.

That the term broker refers to Affina Brokerage Services, Inc., or such other firm as selected by the Credit Union to execute your trading instructions.

That the terms we, us and our refer to the Credit Union and broker.

That the term securities refers to your Credit Union Account(s).

That the term securities refers to publicly traded stocks, bonds, mutual funds, money market funds, other negotiable instruments and annuities held on account. Securities on account are not deposits and are not insured by the National Credit Union Administration or the National Credit Union Share Insurance Fund (NCUA).

**Service Provided:** That the Credit Union may accept your written or telephoned orders for the purchase and/or sale of securities and transmit them to the broker. That the Credit Union will hold your securities on account. That the Credit Union will mail statements and confirmations.

**No Investment or Tax Advice:** That we cannot provide investment or transaction advice. Credit Union has the unsolicited. We will not advise you on the suitability of any order or offer any opinion concerning the nature, growth, potential value, or suitability of any particular security. Nor will we offer any tax advice or offer an opinion on the proper tax treatment of any transaction.

That assets held in your IRA can be invested only as allowed under the Internal Revenue Code and other applicable law.

**Designation of Agents and Brokers:** That you hereby appoint the Credit Union as your agent and attorney-in-fact with specific authority limited to transmitting buy and sell orders to the broker; safekeeping your securities; executing documents on your behalf pertaining to your transactions; and, if deemed necessary, opening a brokerage account in your name by forwarding information contained in your Credit Union records. This appointment shall remain in full force and effect until you terminate this agreement by

written notice to the Credit Union. But any such closure shall not affect transactions initiated before we received your notice.

**Buying or Selling Securities:** That all directions to buy or sell securities will come from you in a manner acceptable to us, consistent with the terms of your account.

That we will not accept buy transactions for you when the available funds in your account are less than the total transaction cost including fees, taxes and brokerage commissions. We will not accept sell transactions from you unless the securities are on account in fully negotiable form.

That we may restrict the transferability of funds or securities on account pending settlement of any transaction and/or require that you maintain a minimum balance in your account.

That unless you specifically instruct us otherwise, and we have confirmed your instructions, all orders will be treated as market orders; that is, as orders to be executed under current market conditions.

That you cannot sell controlled or restricted securities until you have provided us with all notices required by law and such information and evidence as we may request to substantiate that sales of restricted and controlled securities are made in compliance with law.

**Third Party Trading Instructions:** That you may authorize in writing, on a form acceptable to us, to follow the trading instructions of any third party whose name you give us who is an individual (not a corporation or partnership) and who is not a broker. Such a person shall act as your attorney-in-fact to act as fully as you could with respect to your account, and you ratify and confirm all his or her trading instructions. You will give us written notice if you revoke the authority of your attorney-in-fact, but we may continue to follow his or her trading instructions until receipt of your written notice. Any power of attorney you give us will not be affected by your subsequent disability or incompetence.

**Oral and Electronic Instructions:** That subject to our rules and procedures, you may give us oral transaction instructions. You agree to the recording of your telephone calls to us in order to provide a record of instructions. Or you may use our audio response service or any other electronic communications or facsimile service which provides access to us to give us electronic instructions. We will follow any such instructions we receive just as if you had given them to us in person, regardless of whether or not you personally initiated electronic instructions which we receive from any person claiming to be you, provided we have followed our normal verification procedures.

**Commissions and Fees:** That you hereby agree to our schedule of commissions and fees in effect now and any subsequent changes. We will give you written notice of any change in the schedule of commissions or fees by posting a notice in the Credit Union's office, by publishing the schedule in the Credit Union newsletter or by mailing you a notice. You understand that the total of commissions and fees you will be charged may be higher or lower than the Credit

Continued on reverse

# EXHIBIT B

For easy mailing, clip on the fold and insert in a standard window envelope with the Credit Union's address showing.

Case 1:04-cv-00858-SLR   Document 139   Filed 07/12/2004   Page 16 of 19



**LAG**
FEDERAL CREDIT UNION

Attn: Brokerage Services
600 Midland Avenue
Rye, NY 10580-3999

Union's cost for the transaction. We reserve the right to charge your account for the expenses of any special handling you request, including the issuance of stock certificates, or which we are required by law to perform.

Settlement: That we will charge your account for the purchase price, including all commissions and fees, of securities you buy and will credit your account with the net proceeds of securities you sell.

That the obligation to deliver securities includes delivery of all rights that customarily accompany the sale of securities, such as cash or stock dividends or stock from a stock split which is paid or delivered to you after the settlement date. That if these dividends or stocks are not delivered within 5 business days or we are unable to settle a transaction because your securities are not fully negotiable or your account has insufficient funds, we may, at our discretion, take any actions deemed appropriate to make delivery or payment, including the right to borrow funds for your purchase securities for delivery. You will reimburse us for all expenses we incur, including any market loss.

That you will pay upon demand any amounts due under this agreement including any deficiency remaining in the event of liquidation. You will also pay any reasonable expenses, including attorney's fees, for the collection of such amounts.

Dividends, Interest and Proxies: That we may collect all dividends and interest payable on the securities on account and will arrange for them to be credited to your account when received. We may receive proxy statements and other shareholder communications from the issuers of the securities on account and or certify the ownership of the securities to tax or other government authorities. You agree that only acceptable securities that are owned by you will be placed in your account.

Safekeeping Service: That to safekeep the securities on account, we may register your securities in our name as nominee or in the name of any securities depository in which your securities may be held. We, and any other nominees we authorize, may sign your name and guarantee your signature in order to transfer securities and will transmit them to you. You can instruct us how to vote your proxies. We shall have no liability if proxies inadvertently do not reach you.

Disclosure of Identity: That unless you object to us in writing, we may provide your name, address, and securities position to each requesting company in which you own securities held by us. You understand the requesting company is prohibited from using the information provided for any purpose other than corporate communications. Your objecting or non-objecting status will apply to all securities held by us for you now or in the future. You may change your status by giving us written notice.

Confirmations, Statements and Notices: That confirmations and account statements shall be conclusive if not objected to in writing within 10 days after mailing. We will mail confirmations, statements and notices to you at your address of record with us and these communications will be deemed delivered, whether actually received or not.

Applicable Rules and Regulations: That all transactions shall be subject to the constitution, rules, regulations, customs, and usages of the exchange, market or clearing house where executed. They



# EXHIBIT C

1

2       UNITED STATES DISTRICT COURT

        EASTERN DISTRICT OF CONNECTICUT

3       - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

4       VICTOR T. CONTE,                              :

5                                     Plaintiff,      :

6                     -against-                       :

7       US ALLIANCE FEDERAL CREDIT UNION,             :

        AFFINA BROKERAGE SERVICES, INC.,

8       ROBERT AMBROSE AND JOHN WALSH,                :

9                                     Defendants.     :

10      - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11                              One Landmark Square

                                Stamford, Connecticut

12

                                October 22, 2002

13                              10:10 A.M.

14

15

16          EXAMINATION BEFORE TRIAL of VICTOR T.

17      CONTE, the Plaintiff herein, taken by the

18      Defendants, pursuant to Court Order.

19

20

21

22

23          NEW YORK REPORTING SERVICE

                192 Lexington Avenue

24          New York, New York 10016

                (212) 233-6797

25

1                              V.T. Conte

2          A.    This particular form?

3          Q.    It does not have to be exact.  Do you

4     remember filling out an application with that call

5     information on the top, that had some language

6     written on the bottom and had an agreement on the

7     reverse side?  That's all I am asking you.

8          A.    No, I don't remember.

9          Q.    Let me show you Defendant's Exhibit 7B.

10               Do you remember receiving this agreement

11    before, "member agreement governing security

12    transaction?"

13               MS. MAURER:  This exact agreement or an

14         agreement with that title?

15               MR. UNGER:  This exact agreement.

16         A.    No, I don't remember seeing this exact

17    one.  No.

18         Q.    You knew, did you not, that if your loan

19    to equity exceeded 85 percent, that the Credit

20    Union could liquidate securities in your account

21    to bring it even back to 85 percent?

22         A.    No, I didn't know that.  I would have --

23               MS. MAURER:  Answer his question.

24         A.    No.

25         Q.    What did you think was going to happen

              NEW YORK REPORTING SERVICE  (212) 233-6797